**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| RONALD KINGSLEY, as parent and next Friend of ZOE JEAN KINGSLEY, a minor, and on behalf of all beneficiaries of LISA KELLY, decedent, | |
| Plaintiff, | |
| v. | 03-CV-208L |
| JEFFREY DERDERIAN, MICHAEL DERDERIAN, DERCO d/b/a The Station, MANIC MUSIC MANAGEMENT, JACK RUSSELL, MARK KENDELL, DAVID FILICE, ERIC POWERS, DANIEL BICHELE, PAUL WOOLNOUGH, KNIGHT RECORDS, INC., ANHEUSER-BUSCH, INC., MCLAUGHLIN AND MORAN, INC., LUNA TECH, INC., LUNA TECH PYROTECHNIK GmbH, AMERICAN FOAM CORPORATION, WHJY-FM, CLEAR CHANNEL COMMUNICATIONS, INC. and Does 1 Through 100, | |
| Defendants. | |

**DEFENDANTS JEFFREY DERDERIAN, MICHAEL DERDERIAN, and DERCO, d/b/a THE STATION'S MOTION TO REMAND**

Defendants Jeffrey Derderian, Michael Derderian, and Derco d/b/a The Station, by and through their undersigned counsel, file this Motion to Remand to State Court, and in support thereof, aver as follows:

1. On March 10, 2003, Plaintiff Ronald Kingsley, as parent and next of friend of Zoe Jean Kingsley, a minor, and on behalf of all beneficiaries of Lisa Kelly, decedent (hereinafter "Plaintiff") commenced this action by the filing of a Complaint in the Superior Court for the State of Rhode Island (hereinafter "state court action"). See Plaintiff's Complaint.

12

2. Plaintiff's Complaint names eighteen defendants, including Moving Defendants Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station (hereinafter "Moving Defendants"), as well as 100 John Doe defendants.

3. The state court action arises out of a fire that occurred at The Station nightclub in West Warwick, Rhode Island on February 20, 2003.

4. Plaintiff alleges that the negligence of the various defendants caused the fire. See Plaintiff's Complaint.

5. One hundred persons died as a result of the fire and approximately 111 others were injured. See List of Victims of the Station fire, and accompanying Affidavit of Domenic Marano, attached hereto as Exhibit "A". Seventy-seven (77) persons are believed to have escaped the fire without injury. Id.

6. One hundred forty-eight of the persons killed or injured in the fire, including Plaintiff's decedent, are/were residents of Rhode Island. Id.

7. The remaining persons are/were residents of the following states: (1) Massachusetts – fifty-seven people; (2) Connecticut – nine people; (3) California – two people; (4) Florida – one person; (5) Maine – one person; (6) Nevada – one person; and (7) Ohio – one person. Id. The residence of seventy-three victims is unknown. Id.

8. Plaintiffs have named eighteen defendants in this action.

9. According to the Complaint, six defendants reside and/or are incorporated in Rhode Island, eight defendants reside and/or are incorporated in California, and one defendant resides and/or is incorporated in each of the following jurisdictions: New York, Alabama, Germany, and Missouri. See Plaintiff's Complaint, ¶¶ 4-22.

10. On May 30, 2003, Defendant Anheuser-Busch, Inc. ("Anheuser-Busch") filed a Notice of Removal, thereby removing the state court action to this Court. See Notice of

Removal. Anheuser-Busch claims that jurisdiction is proper in this Court on the basis of the Multiparty, Multiforum Trial Jurisdiction Act, 28 U.S.C.A. § 1369. See Notice of Removal, ¶ 11.

11. Pursuant to 28 U.S.C.A. § 1447(c), the court may grant a motion to remand if the court finds it lacks subject matter jurisdiction over the suit or if removal was procedurally defective. 28 U.S.C.A. § 1447(c); Rosciti Construction, Inc. v. Lot 10 of the East Greenwich Town Assessor's Plat 14, 754 F. Supp. 14, 16 (D. R.I. 1991).

12. The burden of showing that removal is proper is always on the party who has removed the action. Giovanella v. Accessories Associates, Inc., 1993 WL 335144, *2 (D. R.I. July 22, 1993); Danca v. Private Health Care Systems, 185 F.3d 1, 4 (1st Cir. 1999).

13. When determining whether removal was proper, the court "should resolve any doubt in favor of remand, as the removal statute is to be narrowly interpreted." Chapmpagne v. Revco D.S., Inc., 997 F. Supp. 220, 221 (D. R.I. 1998).

14. It is a "fundamental precept that federal courts are courts of limited jurisdiction." Owen Equipment and Erection Company v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403 (1978); Browne & Sharpe Manufacturing Co. v. All Individual Members of Lodges 1088 and 1142 of District No. 64 of Int'l Assoc. of Machinists and Aerospace Workers, 535 F.Supp. 167 (D. R.I. 1982).

15. Federal courts only possess that power authorized by the Constitution or by Congress and the limits upon federal jurisdiction "must be neither disregarded nor evaded." Owen Equipment, 437 U.S. at 374.

16. The jurisdiction of federal courts cannot be expanded by judicial decree. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994); Lifetime Medical Nursing Services, Inc. v. New England Health Care Employees

Welfare Fund, 730 F. Supp. 1192 (D. R.I. 1990) ("[f]ederal courts should not widen the encincture of their jurisdiction without clear authority from the national legislature").

17. When examining a challenge to subject matter jurisdiction, it must be presumed that a cause lies outside of the limited jurisdiction of federal courts. Kokkonen, 511 U.S. at 377, 114 S.Ct. at 1675; Van Daam v. Chrysler First Financial Services Corp. of Rhode Island, 124 F.R.D. 32 (D. R.I. 1989).

18. Defendant Anheuser-Busch alleges that subject matter jurisdiction is proper pursuant to the Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA"), codified at 28 U.S.C.A. § 1369, was signed into law on November 2, 2002. See Notice of Removal, ¶ 11.

19. The MMTJA provides district courts with original jurisdiction over claims involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location. 28 U.S.C.A. § 1369(a).

20. The MMTJA does, however, provide an exception to this jurisdiction, which is applicable here, as a substantial majority of the plaintiffs are residents of Rhode Island, the "primary" defendants in this case are from Rhode Island, and Rhode Island law will govern Plaintiffs' claims. 28 U.S.C.A. § 1369(b).

21. The legislative history of the MMTJA reveals that Congress did not intend for the MMTJA to apply to claims such as the claims brought by Plaintiffs.

22. Alternatively, assuming arguendo that this Court finds that subject matter jurisdiction is proper, principles of comity, fairness, and judicial economy dictate remanding this action to state court.

23. Prior to the removal of this lawsuit, and prior to the filing of any lawsuits in the Rhode Island Superior Court, arising out of the Station nightclub fire, Presiding Judge

Joseph F. Rodgers, Jr. issued Administrative Order No. 2003-4, assigning all claims arising out of the fire to Honorable Alice Bridget Gibney in Providence for the purpose of managing, supervising, scheduling and disposing of any and all pre-trial motions pertaining to such causes. Ms. Justice Gibney was empowered to issue special orders for the due administration of these causes of action. See Administrative Order No. 2003-4, attached to Memorandum of Law as Exhibit "A".

24. Shortly after Judge Gibney received the assignment, two complaints were filed in the Superior Court, followed by various petitions filed by attorneys representing plaintiffs and defendants seeking to initiate efforts to preserve evidence located at the Station fire site.

25. Judge Gibney, acting on the authority of Administrative Order No. 2003-4, scheduled a preliminary hearing which resulted in a case management order (CMO) on March 24, 2003 which provided for the immediate "documentation and investigation of the fire site, including photography, video recording, and detailed measurements." See Case Management Order dated March 24, 2003, attached to Memorandum of Law as Exhibit "B".

26. A second CMO was issued on March 31, 2003 which pertained to the orderly photographing, removal, and safe storage of the evidence at the site. See Case Management Order dated March 31, 2003, attached to Memorandum of Law as Exhibit "C".

27. On May 9, 2003, pursuant to petitions filed by various attorneys, Judge Gibney issued a third preliminary CMO, Pre-trial Order No. 1, which effected the creation and maintenance of attorney service lists, the scheduling of pre-trial conferences, and the appointment of interim lead counsel and liaison counsel. See Case Management Order dated May 9, 2003, attached to Memorandum of Law as Exhibit "D".

28. Had it not been for Judge Gibney's early intervention, evidence would have been forever lost, adversely affecting the rights of each and every victim of the fire.

29. Remanding this case to state court is the only way in which the rights of all parties are fully protected and to ensure that all victims have equal standing, whereas permitting this action to remain in federal court while state actions involving the same issues are pending, or not yet even filed, may result in inconsistent results.

30. In addition, judicial economy will be served by having the issues arising out of the Station fire resolved in the same forum.

31. Moreover, Defendant Anheuser-Busch's removal petition is defective because not all defendants have consented to removal and therefore, this action must be remanded to state court. See Gorman v. Abbott Laboratories, 629 F. Supp. 1196. 1299 (D. R.I. 1986) (noting it is "beyond peradventure" that all defendants must join in a petition for removal).

WHEREFORE, for all the reasons stated above and in the accompanying Memorandum of Law, Defendants Jeffrey Derderian, Michael Derderian, and DERCO, d/b/a The Station respectfully request that this Honorable Court grant their Motion to Remand and enter an Order remanding this action to state court.

JEFFREY DERDERIAN, MICHAEL DERDERIAN, AND DERCO d/b/a THE STATION, by their attorney

Anthony F. DeMarco, Esquire, #0799
Reynolds DeMarco & Boland, Ltd.
Suite 200 170 Westminster Street
Providence, RI 02903-2196
401-861-5522
Fax 401-331-4861

Pro Hac Vice Admission Pending:

Christopher C. Fallon, Jr., Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

CERTIFICATION

I hereby certify that on the 30th day of June, 2003, I mailed a copy of the within to the following attorneys of record:

Marc DeSisto, Esquire
DeSISTO LAW
211 Angel Street
P.O. Box 2563
Providence, RI 02906

Thomas C. Angelone, Esquire
HODOSH, SPINELLA & ANGELONE, PC
One Turks Head Place, Suite 1050
Providence, RI 02903

Stephanie Larivee-DiMaio, Esquire
215 Broadway
Providence, RI 02903

Max Wistow, Esquire
WISTOW & BARYLICK, INC.
61 Weybosset Street
Providence, RI 02903

James Ruggieri, Esquire
HIGGINS, CAVANAGH & COONEY, LLP
123 Dyer Street
Providence, RI 02903

Randall L. Souza, Esquire
NIXON PEABODY, LLP
1 Citizens Plaza
Providence, RI 02903

Curtis R. Diedrich, Esquire
Edward T. Hinchey, Esquire
Sloane & Walsh
3 Center Plaza
Boston, MA 02108

Ann Scheeley, Esquire
Law Office of Donald E. Greene
2235 Washington Street
Roxbury, MA 02119

Mark S. Mandell, Esquire
MANDELL, SCHWARTZ & BOISCLAIR
1 Park Row
Providence, RI 02903

Howard A. Merten, Esquire
Eric M. Sommers, Esquire
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esquire
Kristin E. Rodgers, Esquire
BLISH & CAVANAGH
30 Exchange Terrace
Providence, RI 02903

James Reilly, Esquire
KELLY, KELLEHER, REILLY & SIMPSON
146 Westminster Street, Suite 500
Providence, RI 02903

Susan Auclair

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RONALD KINGSLEY, as parent and next Friend of ZOE JEAN KINGSLEY, a minor, and on behalf of all beneficiaries of LISA KELLY, decedent, | : | |
| Plaintiff, | : | |
| v. | : | 03-CV-208L |
| JEFFREY DERDERIAN, MICHAEL DERDERIAN, DERCO d/b/a The Station, MANIC MUSIC MANAGEMENT, JACK RUSSELL, MARK KENDELL, DAVID FILICE, ERIC POWERS, DANIEL BICHELE, PAUL WOOLNOUGH, KNIGHT RECORDS, INC., ANHEUSER-BUSCH, INC., MCLAUGHLIN AND MORAN, INC., LUNA TECH, INC., LUNA TECH PYROTECHNIK GmbH, AMERICAN FOAM CORPORATION, WHJY-FM, CLEAR CHANNEL COMMUNICATIONS, INC. and Does 1 Through 100, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JEFFREY DERDERIAN, MICHAEL DERDERIAN, and DERCO d/b/a THE STATION'S MOTION TO REMAND**

## I. INTRODUCTION

Defendants Jeffrey Derderian, Michael Derderian, and DERCO, d/b/a The Station (hereinafter "Moving Defendants"), move to remand this action to state court, as this Court does not have subject matter jurisdiction over Plaintiff's claims. Defendant Anheuser Busch, Inc.'s reliance on the Multiparty, Multiforum Jurisdiction Act, 28 U.S.C.A. § 1369, to confer subject matter jurisdiction is misplaced. While there is no case law interpreting this newly enacted statute, the legislative history of the Act reveals that Plaintiff's claims would not fall within the

Act. In addition, not all defendants have consented to removing this action to federal court and therefore, removal of this action is improper.

Consequently, for the following reasons, this matter must be remanded to state court.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On March 10, 2003, Plaintiff Ronald Kingsley, as parent and next of friend of Zoe Jean Kingsley, a minor, and on behalf of all beneficiaries of Lisa Kelly, decedent (hereinafter "Plaintiff") commenced this action by the filing of a Complaint in the Superior Court for the State of Rhode Island (hereinafter "state court action"). See Plaintiff's Complaint. Plaintiff's Complaint names eighteen defendants, including Moving Defendants Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station (hereinafter "Moving Defendants"), as well as 100 John Doe defendants.

The state court action arises out of a fire which occurred at The Station nightclub in West Warwick, Rhode Island on February 20, 2003. Plaintiff alleges that the negligence of the various defendants caused the fire. See Plaintiff's Complaint.

One hundred persons died as a result of the fire and approximately 111 others were injured. See List of Victims of the Station fire, and accompanying Affidavit of Domenic Marano, attached to Motion to Remand as Exhibit "A". Seventy-seven (77) persons are believed to have escaped the fire without injury. Id. One hundred forty-eight of the persons killed or injured in the fire, including Plaintiff's decedent, are/were residents of Rhode Island. Id. The remaining persons are/were residents of the following states: (1) Massachusetts – fifty-seven people; (2) Connecticut – nine people; (3) California – two people; (4) Florida – one person; (5) Maine – one person; (6) Nevada – one person; and (7) Ohio – one person. Id. The residence of seventy-three victims is unknown. Id.

Plaintiffs have named eighteen defendants in this action. According to the Complaint, six defendants reside and/or are incorporated in Rhode Island, eight defendants reside and/or are incorporated in California, and one defendant resides and/or is incorporated in each of the following jurisdictions: New York, Alabama, Germany, and Missouri. See Plaintiff's Complaint, ¶¶ 4-22.

On May 30, 2003, Defendant Anheuser-Busch, Inc. ("Anheuser-Busch") filed a Notice of Removal, thereby removing the state court action to this Court. See Notice of Removal. Anheuser-Busch claims that jurisdiction is proper in this Court on the basis of the Multiparty, Multiforum Trial Jurisdiction Act, 28 U.S.C.A. § 1369. See Notice of Removal, ¶ 11.

Moving Defendants have filed the instant motion, seeking to remand this action to state court based on lack of subject matter jurisdiction. Additionally, Anheuser-Busch failed to obtain the consent of all defendants in removing this action, and, therefore, the Notice of Removal is improper. For the following reasons, Moving Defendants' Motion to Remand must be granted.

## III. LEGAL ARGUMENT

### A. Standard for Motion to Remand.

Pursuant to 28 U.S.C.A. § 1447(c), the court may grant a motion to remand if the court finds it lacks subject matter jurisdiction over the suit or if removal was procedurally defective. 28 U.S.C.A. § 1447(c); Rosciti Construction, Inc. v. Lot 10 of the East Greenwich Town Assessor's Plat 14, 754 F. Supp. 14, 16 (D. R.I. 1991). The burden of showing that removal is proper is always on the party who has removed the action. Giovanella v. Accessories Associates, Inc., 1993 WL 335144, *2 (D. R.I. July 22, 1993); Danca v. Private Health Care Systems, 185 F.3d 1, 4 (1st Cir. 1999). When determining whether removal was proper, the court

"should resolve any doubt in favor of remand, as the removal statute is to be narrowly interpreted." Chapmpagne v. Revco D.S., Inc., 997 F. Supp. 220, 221 (D. R.I. 1998).

Defendant Anheuser-Busch cannot sustain its burden of showing that removal is proper in this case and therefore, this action must be remanded.

**B. This Court Does Not Have Subject Matter Jurisdiction Over Plaintiff's Claims.**

It is well-established that "the court must grant a motion to remand if it finds that it lacks subject matter jurisdiction over the suit." Champagne, 997 F. Supp. at 221. A defendant may remove a case in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C.A. § 1441(a). The proprietary of removal therefore depends on whether the case originally could have been filed in federal court.

It is a "fundamental precept that federal courts are courts of limited jurisdiction." Owen Equipment and Erection Company v. Kroger, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403 (1978); Browne & Sharpe Manufacturing Co. v. All Individual Members of Lodges 1088 and 1142 of District No. 64 of Int'l Assoc. of Machinists and Aerospace Workers, 535 F.Supp. 167 (D. R.I. 1982). Federal courts only possess that power authorized by the Constitution or by Congress and the limits upon federal jurisdiction "must be neither disregarded nor evaded." Owen Equipment, 437 U.S. at 374. The jurisdiction of federal courts cannot be expanded by judicial decree. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675 (1994); Lifetime Medical Nursing Services, Inc. v. New England Health Care Employees Welfare Fund, 730 F. Supp. 1192 (D. R.I. 1990) ("[f]ederal courts should not widen the encincture of their jurisdiction without clear authority from the national legislature").

When examining a challenge to subject matter jurisdiction, it must be presumed that a cause lies outside of the limited jurisdiction of federal courts. Kokkonen, 511 U.S. at 377, 114 S.Ct. at 1675; Van Daam v. Chrysler First Financial Services Corp. of Rhode Island, 124

F.R.D. 32 (D. R.I. 1989). This Court does not have jurisdiction based on 28 U.S.C.A. § 1332 (diversity) because of lack of complete diversity since Plaintiff is a resident of Rhode Island and has sued eighteen defendants, six of whom also reside in Rhode Island.

Defendant Anheuser-Busch alleges, however, that subject matter jurisdiction is proper pursuant to the Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA"), codified at 28 U.S.C.A. § 1369, was signed into law on November 2, 2002. See Notice of Removal, ¶ 11.

The MMTJA provides district courts with original jurisdiction over claims involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location. 28 U.S.C.A. § 1369(a). The MMTJA applies if (1) a defendant resides in a state and a substantial part of the accident took place in another state or location, regardless of whether that defendant is also a resident of the state where a substantial party of the accident took place, (2) any two defendants reside in different states, regardless of whether such defendants are also residents of the same state or states, or (3) substantial parts of the accident took place in different states. 28 U.S.C.A. § 1369(a)(1)-(3).

The MMTJA does, however, provide an exception to this jurisdiction. District courts are not permitted to hear a civil action in which the "substantial majority" of the plaintiffs are citizens of a single state of which the "primary" defendants are also citizens and where the claims asserted will be governed primarily by the laws of that state. 28 U.S.C.A. § 1369(b). The Act does not, however, define what constitutes a "substantial majority" of plaintiffs or provide guidance on identifying the "primary" defendants.

1. Legislative History of the MMTJA

Although there is no case law interpreting this newly enacted statute, the extensive legislative history of the MMTJA provides guidance. Beginning in the 95th Congress, during the Carter Administration, attempts were made to improve judicial machinery by abolishing diversity of citizenship jurisdiction and to delineate the jurisdictional responsibilities of state and federal courts. There was much opposition to such expansive change, so Congress narrowed its focus and began to concentrate on the problem of "dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries." See H.R. Conf. Rep. 107-685, p. 199 (Sept. 25, 2002).

Legislation on this more specific issue was introduced in both the 98th and 99th Congresses. During the 100th to 105th Congresses, several versions of legislation addressing jurisdiction in mass tort litigation resulting in multiple deaths were passed by the House, but not the Senate. During the 106th Congress, Representative F. James Sensenbrenner, Jr. (R-Wis.), Chairman of the House Committee on the Judiciary, presented H.R. 2112, the precursor to the MMTJA. It was during the 107th Congress that the MMTJA was passed, as part of the 21st Century Department of Justice Appropriations Authorization Act (H.R. 2215), and signed into law by President Bush. No hearings were held on the MMTJA during the 107th Congress, given the "ample legislative history that preceded it from the 95th Congress to the 106th" Congress. H.R. Conf. Rep. 107-685 at 200.

Thus, most of the legislative history, including testimony and reports, relates to H.R. 2112, an earlier version of the MMTJA, which was presented during the 106th Congress. Testimony was heard in June 16, 1999 from several individuals and House Report No. 106-276 was issued on July 30, 1999. In this report, the House took special note of the testimony from Thomas J. McLaughlin, Esquire of Perkins Coie, LLP, who has represented The Boeing

Company for many years. In his testimony, Mr. McLaughlin noted that mass tort accidents commonly result in numerous lawsuits filed in several different states, in both state and federal courts, leading to increased litigation costs, the burdening of witnesses and parties with duplicative discovery, inconsistent rulings, delay in resolution of lawsuits, and wasting of judicial resources.[1]

Of particular concern to the 106th Congress in debating H.R. 2112 were serious accidents, such as airline crashes, where multiple lawsuits are filed in different states, with varied sets of plaintiffs' lawyers and several different defendants. H.R. Rep. 106-276 at 6 (July 30, 1999). The House noted that "[t]he waste of judicial resources – and the costs to both plaintiffs and defendants – of litigating the same liability question several times over in separate lawsuits can be extreme." Id. Thus, H.R. 2112 was proposed to "streamline the process by which multidistrict litigation governing disasters are adjudicated." Id. at 4.

Although similar to the MMTJA of 2002, H.R. 2112 did contain different provisions. Under H.R. 2112, district courts would have original jurisdiction over civil actions involving minimal diversity between adverse parties that arises from a single accident, where at least 25 natural persons have either died or incurred injury in the accident at a discrete location and, in the case of injury, the injury has resulted in damages which exceed $75,000 per person, exclusive of interest and costs. There was no exception for cases in which a substantial majority of plaintiffs and the primary defendants are citizens of the same state and in which the claims

1 Testimony from other individuals also conveyed concerns with "complex litigation dispersed in multiple federal and state courts and arising out of single-event catastrophes such as airline accidents, hotel fires, train wrecks and other disasters in which many people are killed or seriously injured." See Testimony of Judge John F. Nangle, Chairman, Judicial Panel on Multidistrict Litigation, June 16, 1999; see also Testimony of Honorable Howard Coble, June 16, 1999 (noting the need for "necessary improvements to a specific type of multidistrict litigation – that involving mass torts, such as airline or train accidents in which several individuals from different states are killed or injured").

asserted are governed primarily by the laws of that same state. H.R. 2112.[2] H.R. 2112 was passed by the House by voice vote under suspension of the rules.

In March 2001, Chairman Sensenbrenner introduced H.R. 860, the Multidistrict, Multiparty, Multiform Trial Jurisdiction Act of 2001. In introducing this bill, Chairman Sensenbrenner noted that changes had been made since H.R. 2112, "in an effort to generate greater support for the bill." 147 Cong. Rec. E280-02 (March 6, 2001). First, H.R. 860 required that a plaintiff allege at least $150,000 in damages (up from $75,000). Second, H.R. 860 contained an exception to the minimum diversity rule where a "substantial majority" of the plaintiffs and the "primary" defendants are citizens of the same state and in which the claims asserted are governed "primarily" by the laws of the same state. Chairman Sensenbrenner noted that "only state courts may hear such cases." Id. In introducing H.R. 860, Chairman Sensenbrenner noted that it was designed to address "a particular specie of complex litigation – so-called 'disaster' cases, such as those involving airline accidents." 147 Cong. Rec. E280-02 (March 6, 2001).

House Report 107-14 on H.R. 860 was issued on March 12, 2001. The House Report noted the changes in H.R. 860 and stated that the "revisions should reduce litigation costs as well as the likelihood of forum-shopping in airline accident cases." H.R. Rep. 107-14 at p. 5 (March 12, 2001). With respect to the addition of the exception to minimum diversity for cases in which a substantial majority of the plaintiffs and the primary defendants are citizens of the

---

2 Another aspect of H.R. 2112 concerned amendments to the multidistrict litigation (MDL) statute, 28 U.S.C.A. § 1407. In 1998, the United States Supreme Court, in Lexecone v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), held that a transferee court conducting consolidated pretrial proceedings pursuant to the MDL rules, could not transfer a case to itself for trial purposes using the federal convenience statute. H.R. 2112 sought to overturn the Lexecone decision, by allowing a transferee court to retain jurisdiction over referred cases for trial. Ultimately, there was insufficient support for this provision and therefore, the MMTJA of 2002 was passed without an amendment to the MDL statute.

same state, the report notes that such change makes it "more difficult to file or remove to federal court." Id. at 8. The House Report reflects debates held in the House regarding H.R. 860. Several representatives expressed concerns over the scope of this jurisdiction. Chairman Sensenbrenner confirmed that H.R. 860 was "designed for a specific type of litigation, the airline crash litigation." H.R. Rep. 107-14 at 29.

In debates conducted on March 14, 2001, Chairman Sensenbrenner again expressed his concerns with "a common disaster case bringing about a huge plethora of lawsuits that would be filed in courts all over the country. Given where the plaintiffs would live who were injured or killed in the plane crash, or where the airline was located, where the crash occurred, or the manufacturer of the plane and its component parts were situated, we could have lawsuits on the same disaster going on in every court." 147 Cong. Rec. H893-01 (March 14, 2001). During these debates, Representative Howard Berman (D-Ca) expressed his support of the bill and reiterated that this jurisdiction would be conferred in "**very narrow, strictly circumscribed circumstances.**" Id. (emphasis added). H.R. 860 was passed under suspension of the rules on March 14, 2001.

Provisions of H.R. 860 were incorporated into H.R. 2215, the 21st Century Department of Justice Appropriations Authorization Act. There were no further hearings, given the ample legislative history. H.R. 2215 was passed by the House on July 23, 2001 and passed by the Senate on December 20, 2001. A House Conference Report (H.R. Conf. Rep. 107-685) was issued on September 25, 2002. According to this Report, changes were made to the bill, including requiring jurisdiction in actions where at least 75 people have died.[3] H.R. 2215, which included the MMTJA of 2002 was signed into law on November 2, 2002.

[3] The previous requirement was for actions in which 25 people were killed or injured.

2. The MMTJA Does Not Apply to Plaintiff's Claims

Defendant Anheuser-Busch claims that this Court has subject matter jurisdiction based on the MMTJA. The MMTJA, however, does not apply to Plaintiff's claims and therefore, this action must be remanded to state court.

As stated above, under the MMTJA, federal courts have original jurisdiction over claims involving minimal diversity that arise from a single accident where at least 75 persons have died in the accident at a discrete location, if one of the following apply: (1) a defendant resides in a state and a substantial part of the accident took place in another state or location, (2) any two defendants reside in different states, or (3) substantial parts of the accident took place in different states. 28 U.S.C.A. § 1369(a)(1)(2)(3). At first glance it appears that the MMTJA may apply because more than 75 people died in the Station fire and at least two defendants in this action reside in different states. The MMTJA, however, contains an exception to this grant of original jurisdiction, which is applicable here.

The exception to jurisdiction under the MMTJA provides that federal courts shall abstain from hearing actions in which the substantial majority of all plaintiffs are citizens of a single state of which the primary defendants are also citizens and the claims asserted will be governed primarily by the laws of that state. 28 U.S.C.A. § 1369(b). Under these circumstances, "only state court may hear such cases." 147 Cong. Rec. E280-02 (March 6, 2001). The MMTJA does not define "substantial majority" or offer any guidance in determining the "primary" defendants. Webster's dictionary defines "substantial" as "considerable in amount". Webster's Third New International Dictionary at 2280 (1993). "Primary" is defined as "first in rank or importance." Id. at 1800.

In the instant case, there is only one plaintiff, who is a resident of Rhode Island and thus, the "substantial majority" requirement is met. See Plaintiff's Complaint, ¶ 1. Even if

the Court is to consider the residency of other fire victims, who are not plaintiffs in this action, it is clear that a "substantial majority" of the victims are/were residents of Rhode Island. With respect to the victims whose residency is known, one hundred forty-eight are/were from Rhode Island and seventy-one are/were from other states. See Affidavit of Domenic Marano attached to Motion to Remand as Exhibit "A". Thus, substantially more than nearly half of the known victims are from Rhode Island, which clearly constitutes a "substantial majority."

In addition, the "primary" defendants in this case include Moving Defendants, as owners and operators of the Station nightclub, the site of the fire, American Foam Corporation, McLaughlin and Moran, Inc., and WHJY-FM, all of whom are citizens of the State of Rhode Island.

Finally, the claims asserted by Plaintiff are claims for negligence. See Plaintiff's Complaint, Counts One through Thirteen. In determining choice of law in tort actions, Rhode Island courts consider the place of the injury, the place where conduct causing the injury occurred, the domicile of the parties, and the place where the relationship between the parties is centered. Najarian v. National Amusements, Inc., 768 A.2d 1253, 1255 (R.I. 2000). Applying these factors to the case at bar, it is clear Rhode Island law will govern Plaintiffs' claims.[4]

As such, the MMTJA does not apply to the claims raised by Plaintiff, and this Court does not have subject matter jurisdiction over this case.

Congress' intent in enacting the MMTJA was to provide original jurisdiction in federal courts for cases involving mass disasters, such as airline crashes. See H.R. Rep. 107-14 at 29 (noting this legislation was "designed for a specific type of litigation, the airline crash litigation"). Throughout the entire legislative history of this Act, there are repeated references to

---

[4] The fire occurred in Rhode Island, the conduct allegedly causing injury occurred in Rhode Island, a majority of the parties are domiciled in Rhode Island, and the relationship between the parties is centered in Rhode Island.

airline crashes, where more often than not victims are from several different states, the accident occurs in a different state, and the defendants are from several different states. At the time this legislation was debated, there was serious concern that such cases would lead to multiple suits being filed in state and federal courts throughout the country, leading to increased costs and inconsistent results.[5]

What Congress did not intend to do in enacting the MMTJA was to open the floodgates to federal court. In fact, supporters of the bill reiterated throughout debates that this grant of jurisdiction would be applied only in "very narrow, strictly circumscribed circumstances." 147 Cong. Rec. H893-01 (March 14, 2001); H.R. Rep. 107-14 at 29 (noting the MMTJA "would only apply to a narrowly defined category of cases"). In addition, the exception to the MMTJA was added to make it "more difficult to file or remove to federal court." H.R. 107-14 at p. 8 (March 12, 2001).

In a recent article, Thomas McLaughlin of Perkins Coie, whose testimony, as mentioned above, is cited in the legislative history, discussed the exception to the MMTJA. See Thomas J. McLaughlin, "The Multiparty, Multiforum Trial Jurisdiction Act of 2002", presented at the American Bar Association's Aviation Litigation Seminar (June 5, 2003). Mr. McLaughlin refers to the Station nightclub fire and notes that this tragedy "illustrate[s] the sort of accident for which abstention may be required under this provision. For an accident occurring at a particular commercial establishment, legal claims will probably be governed by the State where that

---

5 See also Julie Kay, *Train, Airplane Disaster Suits Must be Filed in Federal Courts*, The Recorder, Nov. 22, 2002, noting that "[v]ictims and relatives of victims of major accidents involving airplane and train crashes and other mass disasters will only be able to file lawsuits in federal court" and that "[t]he only exception is if the 'substantial majority' of all plaintiffs live in the same state as the primary defendants, which is an unlikely situation. An example would be if an airliner owned by Dallas-based American Airlines crashed in Texas with mostly Texans aboard." Here, there was a fire in a Rhode Island nightclub owned by Rhode Island defendants, and a majority of the victims were from Rhode Island.

establishment is located, and the parties to such litigation will likely be citizens of that state." Under these circumstances, Mr. McLaughlin states a court may be required to abstain from hearing claims arising out of the Station fire.

It is clear that Congress did not intend for the MMTJA to apply to claims such as the claims brought by Plaintiff. The Plaintiff in this case is from Rhode Island,[6] the primary defendants are from Rhode Island, and Plaintiff has pleaded negligence claims that will be determined by Rhode Island state law. Moreover, this accident has not resulted in numerous lawsuits filed across the country. To the contrary, initially there were three lawsuits filed in Rhode Island state court, including the instant lawsuit.[7] One of the state court lawsuits remains pending in state court. The other state court lawsuit has also been removed to this Court by Defendant Anheuser-Busch and Moving Defendants have also filed a Motion to Remand that action to state court.

For all the above reasons, this Court does not have jurisdiction over this matter pursuant to the MMTJA, and this action must be remanded to state court.

### C. <u>Principles of Comity, Fairness, and Judicial Economy Dictate Remanding this Action to State Court.</u>

Assuming arguendo that this Court finds that subject matter jurisdiction may be proper, principles of comity, fairness, and judicial economy dictate remanding this action to state court. As stated above, there is one action arising out of the Station fire currently pending in state court. In situations involving the concurrent jurisdiction by federal and states courts, "principles of wise judicial administration, giving regard to conservation of judicial resources

---

6 Even if the Court looks beyond the named Plaintiff to all fire victims, a majority of the fire victims are/were from Rhode Island. <u>See</u> Affidavit of Domenic Marano attached to Motion to Remand as Exhibit "A".

7 Recently, a fourth lawsuit was filed in federal district court in Connecticut.

and comprehensive disposition of litigation may justify a district court to abstain" from hearing a case. Buy-Rite Costume Jewelry, Inc. v. Albin, 676 F. Supp. 433, 435 (D. R.I. 1988) (*citing* Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246 (1976)).

There are several circumstances in which it is appropriate for a federal court to decline to hear a case, even if jurisdiction is proper. For example, a federal court may decline supplemental jurisdiction of state claims where it has dismissed all claims over which it had original jurisdiction. 28 U.S.C.A. § 1367(c)(3); Bilda v. McCleod, 41 F.Supp.2d 142 (D. R.I. 1999). In determining whether to decline such jurisdiction, the court must take into account "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619 (1988).

Here, principles of comity, fairness, and judicial economy dictate dismissal of this federal action. Prior to the removal of this lawsuit, and prior to the filing of any lawsuits in the Rhode Island Superior Court, arising out of the Station nightclub fire, Presiding Judge Joseph F. Rodgers, Jr. issued Administrative Order No. 2003-4. The order states,

> All such causes of action filed in the Superior Court are assigned to the Honorable Alice Bridget Gibney in Providence for the purpose of managing, supervising, scheduling and disposing of any and all pre-trial motions pertaining to such causes.
>
> Ms. Justice Gibney is empowered to issue special orders for the due administration of these causes of action. (March 4, 2003).

See Administrative Order No. 2003-4, attached hereto as Exhibit "A". Shortly after Judge Gibney received the assignment, two complaints were filed in the Superior Court. The complaints were immediately followed by various petitions filed by attorneys representing plaintiffs and defendants seeking to initiate efforts to preserve evidence located at the Station fire

site. Judge Gibney, acting on the authority of Administrative Order No. 2003-4, scheduled a preliminary hearing which resulted in a case management order (CMO) on March 24, 2003 which provided for the immediate "documentation and investigation of the fire site, including photography, video recording, and detailed measurements." See Case Management Order dated March 24, 2003, attached hereto as Exhibit "B".

Again, on March 31, 2003, a second CMO was issued which pertained to the orderly photographing, removal, and safe storage of the evidence at the site. See Case Management Order dated March 31, 2003, attached hereto as Exhibit "C". On May 9, 2003, pursuant to petitions filed by various attorneys, Judge Gibney issued a third preliminary CMO, Pre-trial Order No. 1, which effected the creation and maintenance of attorney service lists, the scheduling of pre-trial conferences, and the appointment of interim lead counsel and liaison counsel. Had it not been for Judge Gibney's early intervention, evidence would have been forever lost, adversely affecting the rights of each and every victim of the fire. See Case Management Order dated May 9, 2003, attached hereto as Exhibit "D".

Remanding this case to state court is the only way in which the rights of all parties are fully protected and to ensure that all victims have equal standing. Permitting this action to remain in federal court while state actions involving the same issues are pending, or not yet even filed, may result in inconsistent results. In addition, judicial economy will be served by having the issues arising out of the Station fire resolved in the same forum. Likewise, the maintenance of these suits in state court will avoid duplicative discovery and reduce litigation costs to the parties.

For all these reasons, in the event this Court finds subject matter jurisdiction is proper, this matter must be remanded to state court based on principles of comity, fairness, and judicial economy.

**D. <u>Defendant Anheuser-Busch Failed to Obtain the Consent of All Defendants Prior to Removal and Therefore, Removal of This Action is Improper.</u>**

It is well-established that "[i]n a multi-defendant case, all defendants must join in the removal petition." Sansone v. Morton Machine Works, Inc., 188 F.Supp.2d 182, 184 (D. R.I. 2002) (*citing* Chicago R.I. & P. Ry. v. Martin, 178 U.S. 245 (1900)). Moving Defendants did not join in Anheuser-Busch's Notice to Remove and do not consent to the removal of the state court action. Since not all defendants have joined in the removal petition, removal was improper and this action must be remanded to state court.

The procedure for removal of actions pursuant to the MMTJA is governed by 28 U.S.C.A. § 1441(e). That section provides that removal of an action pursuant to the MMTJA must be made in accordance with 28 U.S.C.A. § 1446. 28 U.S.C.A. § 1441(e)(1). It is "beyond peradventure" that Section 1446(a) requires that all defendants join in a petition for removal. Gorman v. Abbott Laboratories, 629 F. Supp. 1196. 1299 (D. R.I. 1986). Thus, by incorporating Section 1446, Section 1441(e) requires the consent of all defendants with respect to removal.

One of the purposes of requiring consent of all defendants for removal is to "prevent one defendant from imposing his choice of forum upon other unwilling defendants and an unwilling plaintiff." Sansone, 188 F.Supp.2d at 184. While all defendants are not required to actually sign the removal notice, "consent must be manifested clearly and unambiguously to the Court within the statutorily prescribed thirty days." Id. A failure to do so is a defect in the removal procedure and constitutes grounds for remand. Id.

Here, not all defendants have consented to removing this action from state court. To the contrary, Moving Defendants did not join in the removal petition filed by Anheuser-Busch and do not consent to removing this action to federal court. As such, Anheuser-Busch's removal petition is defective and this action must be remanded to state court.

In its Notice of Removal, Anheuser-Busch states that consent is not required because Section 1441(e) refers to defendant in the singular and not the plural. See Notice of Removal, ¶ 20. This argument ignores the fact that Sections 1441(e) adopts the removal procedures set forth in Section 1446 which also refers to defendant in the singular and which has been interpreted by the United States Supreme Court, to require consent of all defendants. See Chicago R.I. & P. Ry. v. Martin, 178 U.S. 245 (1900); Sansone v. Morton Machine Works, Inc., 188 F.Supp.2d 182, 184 (D. R.I. 2002). In enacting the MMTJA, Congress could have eliminated the consent requirement for removal based on the MMTJA. Congress did not, however, and by incorporating Section 1446, it is clear that Congress intended that all defendants must consent to removing an action to federal court pursuant to the MMTJA.

Based upon the above, the Notice of Removal filed by Anheuser-Busch is improper and therefore, this action must be remanded to state court.

## IV. CONCLUSION

For all the reasons set forth above, Defendants Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station, respectfully request that this Honorable Court grant their Motion to Remand and enter an order remanding this action to state court.

Respectfully Submitted,

Anthony F. DeMarco, Esquire #0799
Reynolds DeMarco & Boland, Ltd.
Suite 200 170 Westminster Street
Providence, RI 02903-2196
401-861-5522
Fax: 401-331-4861

Pro Hac Vice Admission Pending:

Christopher C. Fallon, Jr., Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
(215) 665-2000

## CERTIFICATION

I hereby certify that on the 30th day of June, 2003, I mailed a copy of the within to the following attorneys of record:

Marc DeSisto, Esquire
DeSISTO LAW
211 Angel Street
P.O. Box 2563
Providence, RI 02906

Thomas C. Angelone, Esquire
HODOSH, SPINELLA & ANGELONE, PC
One Turks Head Place, Suite 1050
Providence, RI 02903

Stephanie Larivee-DiMaio, Esquire
215 Broadway
Providence, RI 02903

Max Wistow, Esquire
WISTOW & BARYLICK, INC.
61 Weybosset Street
Providence, RI 02903

James Ruggieri, Esquire
HIGGINS, CAVANAGH & COONEY, LLP
123 Dyer Street
Providence, RI 02903

Randall L. Souza, Esquire
NIXON PEABODY, LLP
1 Citizens Plaza
Providence, RI 02903

Curtis R. Diedrich, Esquire
Edward T. Hinchey, Esquire
Sloane & Walsh
3 Center Plaza
Boston, MA 02108

Ann Scheeley, Esquire
Law Office of Donald E. Greene
2235 Washington Street
Roxbury, MA 02119

Mark S. Mandell, Esquire
MANDELL, SCHWARTZ & BOISCLAIR
1 Park Row
Providence, RI 02903

Howard A. Merten, Esquire
Eric M. Sommers, Esquire
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esquire
Kristin E. Rodgers, Esquire
BLISH & CAVANAGH
30 Exchange Terrace
Providence, RI 02903

James Reilly, Esquire
KELLY, KELLEHER, REILLY & SIMPSON
146 Westminster Street, Suite 500
Providence, RI 02903

Susan Aucclair