IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RONALD KINGSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | C.A. No. 03-208-L |
| | ) | |
| JEFFREY DERDERIAN, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT ANHEUSER-BUSCH, INC.'S MEMORANDUM OF LAW IN SUPPORT OF REMOVAL AND IN OPPOSITION TO MOTIONS TO REMAND OF AMERICAN FOAM CORPORATION AND DERDERIAN DEFENDANTS**

NOW COMES Defendant Anheuser-Busch, Inc. ("Anheuser-Busch"), by its undersigned attorneys and respectfully submits this Memorandum of Law In Support of Its Notice of Removal and In Opposition to (1) Defendant American Foam Corporation's ("American Foam") Motion to Dismiss and Remand to State Court; and (2) Defendants Jeffrey Derderian, Michael Derderian, and DERCO d/b/a The Station's ("the Derderians") Motion to Remand, (collectively "Abstention Defendants").

BLISH & CAVANAGH
COUNSELLORS AT LAW
COMMERCE CENTER
30 EXCHANGE TERRACE
PROVIDENCE, RI 02903-1765
(401) 831-8900
FAX (401) 751-7542

31

## INTRODUCTION

This action arises from the February 20, 2003 fire at The Station nightclub in West Warwick, Rhode Island. The fire claimed victims from at least eight states, killing 100 and allegedly injuring an estimated 180 more. The fire was ignited by the band Great White when it used pyrotechnics indoors at The Station that night. Plaintiff Ronald Kingsley seeks recovery for the death of Lisa Kelly, a Massachusetts citizen who perished in the fire. Mr. Kingsley is a Rhode Island citizen and the father and guardian of Lisa Kelly's minor child Zoe Kingsley. Complaint at ¶¶ 1-2.

The Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA") confers jurisdiction upon this Court to adjudicate this action. *See* Multiparty, Multiforum Trial Jurisdiction Act of 2002, Public Law 107-273, § 11020, 116 Stat. 1828 (2002).[1] The MMTJA resulted from Congress' multi-year efforts to adopt comprehensive legislation to allow all state and federal actions arising from accidents resulting in multiple deaths involving minimally diverse parties to be consolidated in a single federal court.[2] Because jurisdiction clearly lies under this Act, Anheuser-Busch timely removed this action. Defendant McLaughlin & Moran, Inc. subsequently filed a joinder in the removal.

On June 30, Abstention Defendants moved to remand. Conceding that the jurisdictional requirements of 28 U.S.C. § 1369(a) are satisfied, they argue that abstention is required under 28 U.S.C. § 1369(b). The Derderians also argue that removal was

---

1 The provisions of the MMTJA are codified at various sections of the Judicial Code. *See* 28 U.S.C. § § 1369, 1441(e), 1697, 1785, and 1391(g).

2 For a list of pending actions seeking recovery for injuries related to the fire, see Anheuser-Busch Inc.'s Supplemental Notice Of Pendency Of Other Actions Or Proceedings filed contemporaneously herewith pursuant to Local Rule 31.

improper because Anheuser-Busch failed to obtain the consent of all defendants.

This Court must exercise its subject matter jurisdiction conferred by § 1369(a) and deny the remand motions because Abstention Defendants have not established (because they cannot) that abstention is required under § 1369(b). Furthermore, removal was proper because Anheuser-Busch needed no consent from any other party as a precondition of exercising its removal rights.

## ARGUMENT

### I. The MMTJA Governs This Action

#### A. Purpose and Legislative History of The MMTJA

Enacted by Congress in November 2002, the MMTJA is the culmination of a legislative process initiated years ago to craft comprehensive legislation to consolidate actions arising from deadly accidents into a single federal forum.[3] This Act and its legislative history leave no doubt Congress intended the MMTJA to apply to an event just like The Station fire – one that produces "dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries." H.R. Conf. Rep. No. 107-685, at *199 (2002), *reprinted in* 2003 U.S.C.C.A.N. 1120, 1151 (Appendix, Exhibit A, at 9-10); *see also* H.R. Rep. No. 102-373, at *4 (1991) (legislation intended to deal with "problems

---

[3] Legislation aimed at providing original federal court jurisdiction over actions arising from deadly accidents was first introduced during the 98th Congress of 1983-1984. The Conference Report accompanying the MMTJA notes that there is "ample legislative history that preceded [the Act] from the 95th Congress through the 106th." H.R. Conf. Rep. No. 107-685, at *200 (2002), *reprinted in* 2003 U.S.C.C.A.N. 1120, 1152 (that portion of the Conference Report related to the MMTJA is attached as Exhibit A, at 10, to the Appendix filed herewith). As the legislative history is lengthy, only portions of that legislative history are cited herein. Copies of the cited material are attached as Exhibits to the Appendix filed herewith, and bates stamped for the convenience of the Court.

of dispersed and complex litigation arising out of airline accidents, hotel fires and *other disasters in which many people are killed or seriously injured in a single accident*") (emphasis added) (attached as Appendix, Exhibit B, at 16); H.R. Rep. No. 101-515, at 6 (1990) (noting legislation would apply to "limited context of cases arising out of single accidents in which many people are killed or injured") (attached as Appendix, Exhibit C, at 33).

Keenly aware that "[a]ccidents of this nature can give rise to a multitude of suits[4] in Federal and State courts," Congress concluded that "under existing law, a variety of impediments exist to effective consolidation of these closely related cases." (App. Ex. C, at 32). For example, "in the case of state court systems, the main impediments to effective consolidation are constitutional in nature," with "no single state forum in which the contacts with all relevant parties [would be] sufficient to permit consolidation of all related litigation." *Id.* at 33. In the federal system, "[t]he requirement of complete diversity among the parties will frequently prevent all parties from getting into Federal court." *Id.* Congress determined that the critical public interests of conserving judicial resources, decreasing litigation costs, and reducing the risk of inconsistent adjudications would best be served by consolidation of these actions. *Id.* at 34. Congress ultimately discerned that "full consolidation cannot occur in the absence of federal legislative redress." (App. Ex. A, at 11).

---

4 The Conference Report accompanying the MMTJA states: "It is common after a serious accident to have many lawsuits filed in several states, in both state and federal courts, with many different sets of plaintiffs' lawyers and several different defendants." (App. Ex. A, at 10).

The MMTJA is that redress. It achieves full consolidation for qualifying cases through a series of related jurisdictional, removal, service and venue provisions which became law when Congress passed the MMTJA. First, 28 U.S.C. § 1369(a) expands the federal court's original subject matter jurisdiction to actions involving minimal diversity arising from a single accident resulting in the deaths of at least 75 persons. Second, 28 U.S.C. § 1441(e) authorizes the removal of § 1369 actions "both to invoke the proposed jurisdiction . . . and to join actions within the jurisdiction pending in the federal court." (App. Ex. B, at 21). Specifically, § 1441(e) authorizes *a defendant* (singular) to remove an action which could have been brought in federal court under § 1369. *See* 28 U.S.C. § 1441(e)(1)(A). Congress expressly expanded the reach of removal by declaring that a defendant may also remove an action, regardless of whether it could have been brought originally in federal court, provided the defendant is a party to an action which is or could have been brought under § 1369 and arises from the same accident as the action in state court. *See* 28 U.S.C. § 1441(e)(1)(B). Third, 28 U.S.C. § § 1697 and 1785 respectively authorize nationwide service of process and nationwide service of subpoenas in actions governed by § 1369. Finally, 28 U.S.C. § 1391(g) fixes venue in an action brought under § 1369 "in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place." 28 U.S.C. § 1391(g).

Congress passed the MMTJA to remove all impediments to full consolidation of cases arising out of qualifying accidents and thereby advance the critical public interests of conserving judicial resources, decreasing litigation costs and diminishing the

risk of inconsistent adjudications. Concluding that federal court is the only forum where full and effective consolidation is achievable, Congress included provisions for nation-wide service of process, nationwide service of subpoenas and expanded venue so that all parties could be joined and all evidence could be obtained in a single federal forum. Congress, therefore, intended not only to confer subject matter jurisdiction but also took affirmative steps to make the exercise of that jurisdiction likely. The MMTJA thus acts as a virtual magnet, drawing all civil actions arising from a qualifying accident into federal court, via the original subject matter jurisdiction conferred by § 1369, via a defendant's removal of a state court action which could have been brought under § 1369, and/or via a defendant's removal of an action based on that defendant's status as a defendant in a federal court action arising from the same accident.[5]

### B. This Action Was Properly Removed Because It Fits Squarely Within The Jurisdictional Prerequisites of § 1369(a)

Removal was proper under § 1441(e)(1)(A) because this case could have been brought originally in federal court under § 1369. Removal was also proper under § 1441(e)(1)(B) because at the time of removal Anheuser-Busch was (and remains) a defendant in the *Passa* action which is currently before the Court under § 1369 and also arises from The Station fire. Removal was timely under § 1441(e) because Anheuser-Busch removed before being served with process, making the removal timely within the 30-day period provided in 28 U.S.C. § 1446(b). Removal was also timely because it was

---

[5] As the MMTJA took effect on January 31, 2003, litigation arising out of The Station fire appears to be the first to invoke its provisions. Accordingly, Anheuser-Busch has found no reported decisions interpreting § 1369 or the other provisions of the MMTJA.

effectuated within 30 days after the date on which Anheuser-Busch first became a party to *Passa.* 28 U.S.C. § 1441(e).

All of § 1369(a)'s jurisdictional requirements are satisfied because (1) this action arises from a single accident that resulted in the deaths of at least 75 natural persons, *see* Complaint at ¶ 43 ("As a result of the fire at The Station nightclub, 99 people died[6] . . . and over 180 people were injured."); (2) minimal diversity between adverse parties exists as plaintiff and his daughter are citizens of Rhode Island and at least one of the defendants is not, *see id.* at ¶¶ 1-2, 8-16, 18-19, 22; and (3) both sections 1369(a)(1) and (2) are satisfied (although only one need be). Section 1369(a)(1) is satisfied because at least one defendant resides in a state other than Rhode Island, the state where a substantial part of the accident took place. *See id.* at ¶¶ 8-16, 18-19, 22. Section 1369(a)(2) is also satisfied because at least two defendants reside in different states. *Id.* Conceding that § 1369(a)'s jurisdictional requirements are satisfied, Abstention Defendants instead seek remand on abstention grounds, citing § 1369(b).

### C. Abstention Is Not Required Under § 1369(b)

#### 1. Abstention Defendants Have Not Met And Cannot Meet Their Burden Of Showing That § 1369(b) Abstention Is Required

As the parties urging this Court to abstain from exercising its jurisdiction, Abstention Defendants bear the burden of showing that § 1369(b) requires abstention. *See Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 14 (S.D.N.Y. 2002) (party seeking mandatory abstention under bankruptcy statute must show that all statutory

[6] According to media reports, one more individual, Pamela Gruttadauria, died from fire-related causes after this Complaint was filed.

requirements have been satisfied). That burden is a heavy one because abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Company*, 360 U.S. 185, 188 (1959) (holding district court could not abstain from exercising properly invoked diversity jurisdiction in state eminent domain case); *see also Buy-Rite Costume Jewelry, Inc. v. Albin*, 676 F. Supp. 433, 435-436 (D.R.I. 1988) (court has a "virtually unflagging obligation" to exercise its jurisdiction) (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Consonant with the history and purpose of the MMTJA, § 1369(b) abstention must also be interpreted narrowly and invoked rarely, with any doubts about its interpretation or invocation resolved in favor of the court exercising subject matter jurisdiction under § 1369(a).

This case presents no doubts for the Court to resolve, however, because Abstention Defendants have not met, and indeed cannot meet, their burden.[7] Section 1369(b) only applies to that narrow category of cases in which: "the substantial majority of all plaintiffs are citizens of a single state of which the primary defendants are also citizens."[8] 28 U.S.C. § 1369(b) (2003). These statutory terms must be construed so as to give effect to Congress' intent. *United States v. American Trucking Associations*, 310 U.S. 534, 542 (1940); *Cablevision of Boston, Inc. v. Public Improvement Commission of the City of Boston*, 184 F.3d 88, 101 (1st Cir. 1999). As Congress intended that all civil

---

7 The Derderians have also failed to meet their burden of establishing that principles of comity warrant abstention. *See* Derderians' Memorandum at p. 13.

8 Section 1369(b) also requires that the claims asserted will be governed primarily by the law of that same state.

actions arising out of a qualifying accident be heard in a single federal forum, § 1369(b) can only be invoked when litigation ensues from a uniquely local accident. Abstention Defendants must therefore show that the "primary defendants" are citizens of the same state *and* are also citizens of the same state as a "substantial majority of all plaintiffs." They can do neither.

**2. <u>The Primary Defendants are Not Citizens of the Same State</u>**

Though undefined in the MMTJA, the phrase "primary defendants" must be interpreted in a manner consistent with common understanding and effectuation of Congressional intent to provide full consolidation of qualifying cases absent a uniquely localized controversy. *Atlantic Fish Spotters Ass'n v. Evans*, 321 F.3d 220, 223 (1st Cir. 2003) ("In discerning Congress's intent from the statute itself, [the court] attributes to words that are not specially defined in the text their ordinary usage . . . ."); *American Trucking Associations*, 310 U.S. at 542 (statute should be interpreted to give effect to Congressional intent). In another context, the United States Supreme Court defined a "primary defendant" as one with a "dominant relationship to the subject-matter of a controversy." *United States of America v. American Tobacco Company*, 221 U.S. 106, 142 (1911). As the subject matter of the controversy here is The Station fire, the primary defendants are those with the dominant relationship to the events leading to the fire. At a minimum, those defendants include: (1) the parties responsible for starting the fire with their indoor pyrotechnics – the four surviving members of the band Great White and their tour manager Daniel Biechele ("Great White Defendants"); and (2) the owners of The Station – the Derderians and DERCO.

Plaintiff alleges that Biechele, "as part of his duties in setting up the stage for Great White, put in place certain pyrotechnic devices," "prepared the pyrotechnic device for later activation," and "activated the pyrotechnic device that he previously prepared and placed on the stage." Complaint at ¶¶ 35- 37. The sparks from the pyrotechnic device "ignited the sound insulation on the ceiling above the stage and the back wall of the stage," thereby causing the deadly blaze. *Id.* at ¶¶ 38-39. Plaintiff further contends that Biechele and the band members were negligent in their "use, operation, supervision, management and installation of the pyrotechnics." *Id.* at ¶¶ 58(a), 61(a). Based on these allegations, the Great White Defendants, all California citizens, *id.* at ¶¶ 9-13, are primary defendants because of their dominant relationship to the subject matter of the controversy – they started the fire.

Jeffrey and Michael Derderian are also primary defendants under § 1369(b). As the owners of the nightclub, they owed a duty of care to their patrons which plaintiff alleges was breached by allowing the use of pyrotechnics in the club without proper permits, by failing to ensure that the foam insulation was fire resistant, and by failing to install emergency lighting and lighted exit signs. *Id.* at ¶¶ 46, 49. They are, therefore, parties with a dominant relationship to the subject matter of the controversy. The Derderians are citizens of Rhode Island. *Id.* at ¶¶ 4-5.

Abstention Defendants agree that the Derderians are primary defendants, but their analysis stops short of its logical conclusion. Abstention Defendants' failure to include the Great White Defendants as "primary defendants" is a transparent attempt to avoid federal court by arguing that the parties responsible for starting the fire do not

qualify as "primary defendants." The Court must reject this argument, as it lacks any logical or factual support.

The phrase "primary defendants" in this particular case also includes defendants with no culpability for causing the fire at The Station. Given the magnitude of the harm resulting from the fire, the practical reality is that the Derderians and the Great White Defendants lack the resources necessary to satisfy judgments likely to be entered against them in fire-related litigation. Plaintiffs asserting joint and several liability theories under Rhode Island law will ultimately seek to recover their damages from the remaining defendants named herein, including many non-Rhode Island corporate defendants. Thus, though not primary in terms of culpability, these defendants will likely be pursued as primary sources of recovery. Classifying these defendants as "primary" serves the MMTJA's goals by ensuring that litigation implicating the rights and interests of multiple out-of-state defendants remains in a federal forum. Therefore, those defendants likely to be pursued as primary sources of recovery should be deemed "primary defendants" for purposes of § 1369(b) in this case.

The classification of "primary defendants" as those parties who are primary litigation targets (based on culpability or ability to pay, or both) is further supported by the House Judiciary Committee's interpretation of a similar abstention provision contained in the Class Action Fairness Act of 2002 ("CAFA") which was under consideration at the same time and by the same Congressional committee as the MMTJA. Though CAFA has not been enacted by Congress, the committee report provides insight about Congress' view of "primary defendants" as "those who are real 'targets' of the suit;

that is, the parties that would be expected to incur most of the loss if liability is found." H.R. Rep. No. 107-370, at *30 (2002) (a copy of the relevant portions is attached as Exhibit D, at 47, to the Appendix filed herewith).

In summary, the primary defendants in culpability terms – the Great White Defendants (California citizens) and the Derderian defendants (Rhode Island citizens) – are not citizens of the same state. The defendants most likely to be pursued as primary sources of recovery under theories of joint and several liability include many non-Rhode Island corporations. Therefore, Abstention Defendants cannot show that the primary defendants are citizens of the same state and § 1369(b) abstention cannot be invoked.

### 3. The Substantial Majority of All Plaintiffs Are Not Citizens of the Same State

Should Abstention Defendants somehow meet their burden of establishing that the primary defendants are all citizens of the same state, they must also establish that a "substantial majority of all plaintiffs" are citizens of that same state. The phrase "substantial majority of all plaintiffs" is not defined in the MMTJA and the Court must again look to the common usage of the terms and Congressional intent to guide its interpretation. *Atlantic Fish Spotters Ass'n v. Evans*, 321 F.3d at 223.

The history and purpose of the MMTJA establish that Congress intended the phrase "substantial majority of all plaintiffs" to mean *virtually all plaintiffs*. The MMTJA and its legislative history evince overarching Congressional intent to consolidate *all* civil actions arising out of a qualifying accident into a single federal court. The

abstention provision was a last minute addition[9] to the MMTJA, and the clear inference from the text of the Act and the circumstances surrounding its passage is that Congress intended the abstention provision to apply only to those rare instances where the governing law, the situs of the accident, the victims and the targets of the litigation all share the same state. Interpreting § 1369(b) to require that less than virtually all of the plaintiffs be citizens of the same state would circumscribe the subject matter jurisdiction conferred by § 1369(a) in a manner not intended by Congress. Such an interpretation would squarely conflict with the well established principle that abstention is a narrow exception to the court's "virtually unflagging responsibility" to exercise its jurisdiction.[10] *See Buy-Rite Costume Jewelry, Inc.*, 676 F. Supp. at 436.

The Judiciary Committee's Report on CAFA is further evidence in support of this interpretation. The Committee explained that under CAFA's proposed abstention provision, the "substantial majority of the members of the proposed plaintiff class" requirement must be read to mean "virtually all." (App. Ex. D, at 46-47). By way of example, the report provides that "a proposed class of 1000 persons . . . presumably

---

9 The abstention provision was added "in an effort to develop greater [Senate] support . . . in the waning days of the 106th Congress." (App. Ex. A, at 11).

10 This interpretation is also consistent with the principle of statutory construction whereby, when a statutory term is undefined, "[c]ourts are free to use standard dictionary definitions to assist in determining the ordinary meaning of statutory language." *Riva v. Commonwealth of Massachusetts*, 61 F.3d 1003, 1007 (1st Cir. 1995) (*citing FDIC v. Meyer*, 510 U.S. 471, 476 (1994)). "Substantial" ordinarily means "considerable in quantity" and "significantly large." A "majority" is defined as "a number greater than half of a total," *Webster's Ninth New Collegiate Dictionary* (1986). Thus, taken together, a "substantial majority" must refer to an amount that is significantly larger than half of a total.

would fit this exception if 997 of those persons were . . . [citizens of the same state.]" *Id.* at 47. Thus, under CAFA, a "substantial majority of all proposed class members" translates to 99.7%.

In this action, a "substantial majority of all plaintiffs" are not citizens of the same state. Abstention Defendants contend that the phrase "all plaintiffs" must be construed to include "all persons with claims arising out of the disaster." American Foam's Memorandum at p. 10; *see also* Derderians' Memorandum at p. 10.[11] Assuming this to be correct, Abstention Defendants cannot meet their burden of showing that virtually all plaintiffs are citizens of Rhode Island, as they contend. The Station fire claimed victims from at least eight states. Of the 100 people killed, 41 were citizens of states other than Rhode Island. Plaintiff alleges that over 180 more were injured in the fire and it is undisputed that many of the injured are also from states other than Rhode Island. Multiple Connecticut citizens have already filed suit in federal court there seeking recovery for injuries allegedly sustained by eight Connecticut citizens in The Station fire. *See Henault, et al. v American Foam Corp., et al.* The plaintiffs in the recently dismissed *Kinan* action (who will undoubtedly refile that case) are Massachusetts citizens seeking

---

[11] In this action and in *Passa*, where plaintiffs are allegedly Rhode Island citizens, the Derderians initially contend that the phrase "all plaintiffs" means the plaintiffs in a particular action, and that the substantial majority of "all plaintiffs" are citizens of Rhode Island. However, in the recently dismissed *Kinan* action, where the plaintiffs were allegedly Massachusetts citizens, the Derderians argued instead that "all plaintiffs" meant *all* fire victims, presumably because under the interpretation they initially put forth here and in *Passa*, the Derderians could not argue for abstention. To interpret "all plaintiffs" to mean only the plaintiffs in a particular action is inconsistent with the MMTJA's intent to consolidate *all* actions arising from a qualifying accident in a single federal court.

recovery for injuries allegedly caused by the fire. *See Kinan* Complaint at ¶¶ 1, 2. American Foam and the Derderians identify at least 30 additional injured victims who are citizens of states other than Rhode Island; 23 from Massachusetts; 4 from Connecticut; 1 from Maine, 1 from Nevada; and 1 from Ohio. The Derderians also identify another 73 individuals whose citizenship is alleged to be unknown. *See* Derderians' Memorandum at p. 2.

On the basis of this record, Abstention Defendants cannot show that the substantial majority of all plaintiffs are citizens of Rhode Island. Indeed, the record demonstrates that litigation arising from The Station fire is " . . . dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries," *see* App. Ex. A, at 10 – exactly the type of litigation Congress intended the MMTJA to consolidate into a single federal court. This Court should therefore find that § 1369(b) does not require abstention and deny the remand motions.

## II. Anheuser-Busch's Removal Was Appropriate And Timely Under The Governing Removal Authority

The Derderians argue that Anheuser-Busch needed consent of all named defendants prior to removal. This argument ignores the plain language of § 1441(e), which expressly vests the right of removal in a single defendant, and also ignores the indisputable Congressional intent to achieve full consolidation in federal court of § 1369 qualifying cases. Congress obviously did not intend to allow a single defendant in multiparty, multiforum litigation to thwart its intent to achieve full consolidation by empowering that party to withhold consent to removal. Nonetheless, assuming that the

Court were to interpret § 1441(e) to require consent, it is well settled that a removing defendant need only obtain the consent of those defendants properly served at the time of the removal, which in this case was none.

**A. 28 U.S.C. §1441(e) Authorizes a Single Defendant to Remove an Action Without Consent of Other Defendants**

Section 1441(e) is a special removal statute, made law as part of the MMTJA to specifically allow removal of all state court actions arising out of an accident described in § 1369(a). The language of 1441(e) provides that " . . . a *defendant* . . . may remove the action . . . ." 28 U.S.C. § 1441(e) (emphasis added). This singular language stands in sharp contrast to the plural language of the general removal statute of § 1441(a), which provides that an action "may be removed by the defendant or *defendants*," which language has been interpreted to require consent of all properly joined and served defendants. 28 U.S.C. § 1441(a) (emphasis added); *see, e.g., Gorman v. Abbott Laboratories, Inc.*, 629 F. Supp. 1196, 1199 (D.R.I. 1986). This plain language interpretation of § 1441(e) is confirmed by the MMTJA's legislative history:

> *Any* defendant meeting the requirements of subsection (e)(1) may effect the removal . . . . Thus, the general all-defendants requirement for removal contained in subsection (a) of 1441 . . . would not apply to the removal of such actions.

(App. Ex. B, at 11) (emphasis added); *see United States v. Meade*, 175 F.3d 215, 218 (1st Cir. 1999) (noting that even where plain language prevails, courts may "employ such secondary sources as a means of confirmation").

This interpretation similarly comports with that of other special removal statutes wherein consent of all defendants is not necessary. *See e.g., Linden v. Chase*

*Manhattan Corp.*, 52 F. Supp. 2d 387, 388 (S.D.N.Y. 1999) (no consent necessary for FDIC to remove under 12 U.S.C. § 632); *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 33 (D.P.R. 2002) (removal allowable under 28 U.S.C. § 1442(a)(2) "regardless of whether any other defendants join in the petition."); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985) (no consent necessary for 28 U.S.C. § 1452 removal). The closest analogue to § 1441(e)'s "a defendant may remove" is found in 28 U.S.C. § 1452, which provides that "a *party* may remove" a bankruptcy-related action. Numerous courts have held that the language in § 1452 empowers "an individual defendant in a multi-defendant case to remove an action from state court without the joinder or consent of the other defendants . . . ." *Sommers v. Abshire*, 186 B.R. 407, 408-09 (E.D. Tex. 1995).[12]

---

[12] *See also Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985); *Schulman v. California (In re Lazar)*, 237 F.3d 967, 973 at n.2 (9th Cir.), *cert denied, California v. Schulman*, 534 U.S. 992 (2001); *In re Worldcom Secs. Litig. v. Ebbers*, 2003 U.S. Dist. LEXIS 2790, (S.D.N.Y, March 4, 2003); *Abner v. Mate Creek Loading, Inc. (In re Mid-Atlantic Res. Corp.)*, 283 B.R. 176, 2002 U.S. Dist. LEXIS 16462 (S.D.W.Va. 2002); *Beasley v. Pers. Fin. Corp.*, 279 B.R. 523, 2002 U.S. Dist. LEXIS 15297 (S.D. Miss. 2002); *Plowman v. Bedford Fin. Corp.*, 218 B.R. 607, 616 (Bankr. N.D. Ala. 1998); *In re Eagle Bend Dev.*, 61 B.R. 451, 456-57 (Bankr. W.D. La. 1986); *Joe Conte Toyota, Inc. v. Howell*, 1997 U.S. Dist. LEXIS 5890, 1997 W.L. 222410, at *1 (E.D. La. Apr. 30, 1997); *Holman v. Honeywell Int'l, Inc.*, 2002 U.S. Dist. LEXIS 23329 at *2 (E.D. Mo, January 17, 2002); *Ret. Sys. of Ala. v. Merrill Lynch & Co.*, 209 F. Supp. 2d 1257 (MD Ala. 2002) (May 31, 2002); ***but see*** *Ret. Sys. of Ala. v. J. P. Morgan Chase & Co.*, 285 B.R. 519, 525 (MD Ala. 2002); *Hills v. Hernandez*, 1998 U.S. Dist. LEXIS 7475 at *5 (E.D. La. May 11, 1998); *Whitney Nat'l Bank v. Bunch*, 2001 U.S. Dist. LEXIS 1424, at *7 n.9 (E.D. La. Jan. 31, 2001); *Ross v. Thousand Adventures of Iowa, Inc.*, 178 F. Supp. 2d 996 (S.D. Iowa 2001).

Reading a consent requirement into the plain language of § 1441(e) would frustrate the purpose of the MMTJA, as a consent requirement would empower a single defendant to defeat consolidation by withholding its consent, or permit a plaintiff to avoid removal of his action by manipulating the order of service of process. The Derderians' argument for a consent requirement is an example of the former. As an example of the latter, the Court should consider the posture of the *Kinan* action. As the Court may be aware, a Notice of Dismissal was filed on July 7, 2003. If § 1441(e) were interpreted to require consent for a removal, should the action be refiled in state court, the *Kinan* plaintiffs could effectively prevent removal of their action by first serving either Jeffrey or Michael Derderian, with the expectation that they would not consent to an attempted removal by a later-served defendant. Such a result would eviscerate the MMTJA and frustrate Congressional intent to consolidate cases in federal court.

**B. Where Consent Is Required, Only Defendants Served at the Time of the Removal Need to Consent**

Even assuming that consent were required under § 1441(e), removal of the action was proper because it is well settled that the only defendants who must consent to a removal are those defendants who were properly joined and served at the time of the filing of the Notice of Removal. *Gorman v. Abbott Laboratories, Inc.*, 629 F. Supp.1196, 1199 (D.R.I. 1986); *Benitez-Bithorn v. Rossello-Gonzalez*, 200 F. Supp. 2d 26, 32 (D.P.R. 2002). The Derderians cite to and selectively quote from *Gorman v. Abbott Laboratories, Inc.* for the proposition that it is "'beyond peradventure,' that Section 1446(a) requires that all defendants join in a petition for removal." *See* Derderians' Memorandum at p.16. But

what *Gorman* actually says is that it is "established beyond peradventure by virtue of a fair reading of 28 U.S.C. § 1446(a), [that] all defendants *who have been served* and who are eligible to join the removal petition must so join." *Gorman*, 629 F. Supp. at 1199 (emphasis added). In fact, the court goes on to note that one of the exceptions to the consent rule is that "defendants who have not yet been served with process at the time of the petition for removal are not required to conjoin." *See also Benitez-Bithorn,* 200 F. Supp. 2d at 32 (noting that rule of consent "suffers an important exception of inapplica-bility when the co-defendants were not served in the state proceedings"). The Derderians' reliance on *Sansone v. Morton Machine Works, Inc.*, 188 F. Supp. 2d 182 (D.R.I. 2002) is similarly misplaced because in that case both defendants had been served prior to removal and the issue before the court was whether the non-moving (but served) defendant had sufficiently manifested its consent to the removal. *See id.* at 183.

Since none of the defendants had been served at the time of the filing of the Notice of Removal, their consent was not required and the motion to remand should be denied.

**CONCLUSION**

As the jurisdictional requirements of § 1369(a) are clearly met, this Court has jurisdiction over this action. Abstention Defendants have not met, and cannot meet their burden of establishing that § 1369(b) requires abstention. Accordingly, Anheuser-Busch respectfully requests that this Court deny all remand motions, exercise its jurisdiction, and adjudicate this case.

Dated: August 14, 2003

Respectfully submitted,

Joseph V. Cavanagh, Jr. #1139
Kristin E. Rodgers #4842
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Telecopier: (401) 751-7542

Counsel for Defendant Anheuser-Busch, Inc.

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
SKADDEN, ARPS, SLATE, MEAGHER & FLOM (Illinois)
333 West Wacker Drive
Chicago, IL 60606

Pro Hac Vice on behalf of
Defendant Anheuser-Busch, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of August, 2003, I caused a copy of the within document to be mailed, postage prepaid, to the following counsel of record:

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Ronald J. Resmini, Esq.
155 South Main Street
Providence, RI 02903

Anthony F. DeMarco, Esq.
Reynolds Demarco & Boland
170 Westminster Street, Suite 200
Providence, RI 02903

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street
P.O. Box 2563
Providence, RI 02903-2563

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh Spinella & Angelone
One Turks Head Place
Providence, RI 02903

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Fred A. Kelly, Jr., Esq.
Randall L. Souza, Esq.
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

[signature]

RECEIVED
AUG 14 2003
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RONALD KINGSLEY :
Plaintiff :
:
vs. : C.A. No. 03-208-L
:
JEFFREY DERDERIAN, et al. :
Defendants :

APPENDIX IN SUPPORT OF
DEFENDANT ANHEUSER-BUSCH, INC.'S MOTION IN SUPPORT OF
REMOVAL AND IN OPPOSITION TO MOTIONS TO REMAND OF
AMERICAN FOAM CORPORATION AND DERDERIAN DEFENDANTS

ANHEUSER-BUSCH, INC.
By its Attorneys,

Joseph V. Cavanagh, Jr. (by ken) Kristin E. Rodgers

Joseph V. Cavanagh, Jr. #1139
Kristin E. Rodgers #4842
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Telecopier: (401) 751-7542

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM (Illinois)
333 West Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Telecopier: (312) 407-0411

BLISH & CAVANAGH
COUNSELLORS AT LAW
COMMERCE CENTER
30 EXCHANGE TERRACE
PROVIDENCE, RI 02903-1765
(401) 831-8900
FAX (401) 751-7542

31

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2003, I served a true copy of the within Appendix via first class mail, postage prepaid to the following counsel of record:

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Ronald J. Resmini, Esq.
155 South Main Street
Providence, RI 02903

Anthony F. DeMarco, Esq.
Reynolds Demarco & Boland
170 Westminster Street, Suite 200
Providence, RI 02903

Marc DeSisto, Esq.
DeSisto Law Offices
211 Angell Street; P.O. Box 2563
Providence, RI 02903-2563

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

William P. Robinson, III, Esq.
Edwards & Angell LLP
2800 Financial Plaza
Providence, RI 02903

Andrew J. Trevelise, Esq.
Reed Smith LLP
2500 One Liberty Place
Philadelphia, PA 19103-7301

Thomas C. Angelone, Esq.
Hodosh Spinella & Angelone
One Turks Head Place
Providence, RI 02903

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Fred A. Kelly, Jr., Esq.
Randall L. Souza, Esq.
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

W. Thomas McGough, Jr., Esq.
James J. Restivo, Jr., Esq.
Reed Smith LLP
345 Sixth Avenue
Pittsburgh, PA 15219

James T. Murphy, Esq.
Hanson Curran, LLP
146 Westminster Street
Providence, RI 02903

Scott J. Tucker, Esq.
Tucker Heifetz & Saltzman LLP
Three School Street
Boston, MA 02108

Faith LaSalle, Esq.
Zizik Lasalle & Powers, PC
40 Westminster Avenue
Providence, RI 02903

[signature]

Citation | Found Document | Rank 1 of 1 | Database
H.R. CONF. REP. 107-685 LH
H.R. Conf. Rep. No. 685, 107TH Cong., 2ND Sess. 2002,
2002 WL 31163881 (Leg.Hist.)
**(Cite as: H.R. CONF. REP. 107-685, 2003 U.S.C.C.A.N. 1120)**

****1120** P.L. 107-273, ***1** 21ST CENTURY DEPARTMENT OF JUSTICE APPROPRIATIONS AUTHORIZATION ACT

DATES OF CONSIDERATION AND PASSAGE

House: July 23, 2001
Senate: December 20, 2001
Cong. Record Vol. 148 (200)

House Conference Report
No. 107-685m September 25, 2002
[To accompany H.R. 2215]

HOUSE CONFERENCE REPORT NO. 107-685
September 25, 2002

Mr. Sensenbrenner, from the committee of conference, submitted the following

CONFERENCE REPORT

[To accompany H.R. 2215]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H.R. 2215), to authorize appropriations for the Department of Justice for fiscal year 2002, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the House recede from its disagreement to the amendment of the Senate and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the Senate amendment, insert the following:

SECTION 1. SHORT TITLE; TABLE OF CONTENTS.

(a) Short Title.-This Act may be cited as the "21st Century Department of Justice Appropriations Authorization Act".

(b) Table of Contents.-The table of contents of this Act is as follows:

DIVISION A-21ST CENTURY DEPARTMENT OF JUSTICE APPROPRIATIONS AUTHORIZATION ACT

TITLE I-AUTHORIZATION OF APPROPRIATIONS FOR FISCAL YEARS 2002 AND 2003

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sec. 101. Specific sums authorized to be appropriated for fiscal year 2002.
Sec. 102. Specific sums authorized to be appropriated for fiscal year 2003.
Sec. 103. Appointment of additional assistant United States attorneys; reduction of certain litigation positions.
Sec. 104. Authorization for additional assistant United States attorneys for project safe neighborhoods.

TITLE II-PERMANENT ENABLING PROVISIONS

Sec. 201. Permanent authority.
***2** Sec. 202. Permanent authority relating to enforcement of laws.
Sec. 203. Miscellaneous uses of funds; technical amendments.
Sec. 204. Technical and miscellaneous amendments to Department of Justice authorities; authority to transfer property of marginal value; recordkeeping; protection of the Attorney General.
Sec. 205. Oversight; waste, fraud, and abuse within the Department of Justice.
Sec. 206. Enforcement of Federal criminal laws by Attorney General.
Sec. 207. Strengthening law enforcement in United States territories, commonwealths, and possessions.

TITLE III-MISCELLANEOUS

Sec. 301. Repealers.
Sec. 302. Technical amendments to title 18 of the United States Code.
Sec. 303. Required submission of proposed authorization of appropriations for the Department of Justice for fiscal years 2004 and 2005.
Sec. 304. Study of untested rape examination kits.
Sec. 305. Reports on use of DCS 1000 (Carnivore).
Sec. 306. Study of allocation of litigating attorneys.
Sec. 307. Use of truth-in-sentencing and violent offender incarceration grants.
Sec. 308. Authority of the Department of Justice Inspector General.
Sec. 309. Review of the Department of Justice.
Sec. 310. Authorization of appropriations.
Sec. 311. Report on threats and assaults against Federal law enforcement officers, United States judges, United States officials and their families.
Sec. 312. Additional Federal judgeships.

TITLE IV-VIOLENCE AGAINST WOMEN

Sec. 401. Short title.
Sec. 402. Establishment of Violence Against Women Office.
Sec. 403. Effective date.

DIVISION B-MISCELLANEOUS DIVISION

TITLE I-BOYS AND GIRLS CLUBS OF AMERICA

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sec. 1101. Boys and Girls Clubs of America.

TITLE II-DRUG ABUSE EDUCATION, PREVENTION, AND TREATMENT ACT OF 2002

Sec. 2001. Short title.

Subtitle A-Drug-Free Prisons and Jails

Sec. 2101. Use of residential substance abuse treatment grants to provide for services during and after incarceration.
Sec. 2102. Jail-based substance abuse treatment programs.
Sec. 2103. Mandatory revocation of probation and supervised release for failing a drug test.

Subtitle B-Treatment and Prevention

Sec. 2201. Report on drug-testing technologies.
Sec. 2202. Drug and substance abuse treatment, prevention, education, and research study.
Sec. 2203. Drug abuse and addiction research.

Subtitle C-Drug Courts

Sec. 2301. Drug courts.
Sec. 2302. Authorization of appropriations.
Sec. 2303. Study by the General Accounting Office.

Subtitle D-Program for Successful Reentry of Criminal Offenders Into Local Communities

CHAPTER 1-Post Incarceration Vocational and Remedial Educational Opportunities for Inmates

Sec. 2411. Post incarceration vocational and remedial educational opportunities for inmates.

CHAPTER 2-State Reentry Grant Programs

Sec. 2421. Amendments to the Omnibus Crime Control and Safe Streets Act of 1968.

***3** Subtitle E-Other Matters

Sec. 2501. Amendment to Controlled Substances Act.
Sec. 2502. Study of methamphetamine treatment.
Sec. 2503. Authorization of funds for DEA police training in South and Central Asia.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sec. 2504. United States-Thailand drug prosecutor exchange program.

TITLE III-SAFEGUARDING THE INTEGRITY OF THE CRIMINAL JUSTICE SYSTEM

Sec. 3001. Increasing the penalty for using physical force to tamper with witnesses, victims, or informants.
Sec. 3002. Correction of aberrant statutes to permit imposition of both a fine and imprisonment.
Sec. 3003. Reinstatement of counts dismissed pursuant to a plea agreement.
Sec. 3004. Appeals from certain dismissals.
Sec. 3005. Clarification of length of supervised release terms in controlled substance cases.
Sec. 3006. Authority of court to impose a sentence of probation or supervised release when reducing a sentence of imprisonment in certain cases.
Sec. 3007. Clarification that making restitution is a proper condition of supervised release.

TITLE IV-CRIMINAL LAW TECHNICAL AMENDMENTS ACT OF 2002

Sec. 4001. Short title.
Sec. 4002. Technical amendments relating to criminal law and procedure.
Sec. 4003. Additional technicals.
Sec. 4004. Repeal of outmoded provisions.
Sec. 4005. Amendments resulting from Public Law 107-56.
Sec. 4006. Cross reference correction.

TITLE V-PAUL COVERDELL FORENSIC SCIENCES IMPROVEMENT GRANTS

Sec. 5001. Paul Coverdell Forensic Sciences Improvement Grants.
Sec. 5002. Authorization of appropriations.

DIVISION C-IMPROVEMENTS TO CRIMINAL JUSTICE, CIVIL JUSTICE, IMMIGRATION, JUVENILE JUSTICE, AND INTELLECTUAL PROPERTY AND ANTITRUST LAWS

TITLE I-CRIMINAL JUSTICE, CIVIL JUSTICE, AND IMMIGRATION

Subtitle A-General Improvements

Sec. 11001. Law Enforcement Tribute Act.
Sec. 11002. Disclosure of grand jury matters relating to money laundering offenses.
Sec. 11003. Grant program for State and local domestic preparedness support.
Sec. 11004. United States Sentencing Commission access to NCIC terminal.
Sec. 11005. Danger pay for FBI agents.
Sec. 11006. Police corps.
Sec. 11007. Radiation exposure compensation technical amendments.
Sec. 11008. Federal Judiciary Protection Act of 2002.
Sec. 11009. James Guelff and Chris McCurley Body Armor Act of 2002.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sec. 11010. Persons authorized to serve search warrant.
Sec. 11011. Study on reentry, mental illness, and public safety.
Sec. 11012. Technical amendment to Omnibus Crime Control Act.
Sec. 11013. Debt collection improvement.
Sec. 11014. SCAAP authorization.
Sec. 11015. Use of annuity brokers in structured settlements.
Sec. 11016. INS processing fees.
Sec. 11017. United States Parole Commission extension.
Sec. 11018. Waiver of foreign country residence requirement with respect to international medical graduates.
Sec. 11019. Pretrial disclosure of expert testimony relating to defendant's mental condition.
Sec. 11020. Multiparty, Multiforum Trial Jurisdiction Act of 2002.
Sec. 11021. Additional place of holding court in the southern district of Ohio.
Sec. 11022. Direct shipment of wine.
Sec. 11023. Webster Commission implementation report.
Sec. 11024. FBI police.
Sec. 11025. Report on FBI information management and technology.
***4** Sec. 11026. GAO report on crime statistics reporting.
Sec. 11027. Crime-free rural States grants.
Sec. 11028. Motor vehicle franchise contract dispute resolution process.
Sec. 11029. Holding court for the southern district of Iowa.
Sec. 11030. Posthumous citizenship restoration.
Sec. 11030A. Extension of H-1B status for aliens with lengthy adjudications.
Sec. 11030B. Application for naturalization by alternative applicant if citizen parent has died.

Subtitle B-EB-5 Amendments

CHAPTER 1-Immigration Benefits

Sec. 11031. Removal of conditional basis of permanent resident status for certain alien entrepreneurs, spouses, and children.
Sec. 11032. Conditional permanent resident status for certain alien entrepreneurs, spouses, and children.
Sec. 11033. Regulations.
Sec. 11034. Definitions.

CHAPTER 2-Amendments to Other Laws

Sec. 11035. Definition of "full-time employment".
Sec. 11036. Eliminating enterprise establishment requirement for alien entrepreneurs.
Sec. 11037. Amendments to pilot immigration program for regional centers to promote economic growth.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Subtitle C-Judicial Improvements Act of 2002

Sec. 11041. Short title.
Sec. 11042. Judicial discipline procedures.
Sec. 11043. Technical amendments.
Sec. 11044. Severability.

Subtitle D-Antitrust Modernization Commission Act of 2002

Sec. 11051. Short title.
Sec. 11052. Establishment.
Sec. 11053. Duties of the Commission.
Sec. 11054. Membership.
Sec. 11055. Compensation of the Commission.
Sec. 11056. Staff of Commission; experts and consultants.
Sec. 11057. Powers of the Commission.
Sec. 11058. Report.
Sec. 11059. Termination of Commission.
Sec. 11060. Authorization of appropriations.

TITLE II-JUVENILE JUSTICE

Subtitle A-Juvenile Offender Accountability

Sec. 12101. Short title.
Sec. 12102. Juvenile offender accountability.

Subtitle B-Juvenile Justice and Delinquency Prevention Act of 2002

Sec. 12201. Short title.
Sec. 12202. Findings.
Sec. 12203. Purpose.
Sec. 12204. Definitions.
Sec. 12205. Concentration of Federal effort.
Sec. 12206. Coordinating Council on Juvenile Justice and Delinquency Prevention.
Sec. 12207. Annual report.
Sec. 12208. Allocation.
Sec. 12209. State plans.
Sec. 12210. Juvenile delinquency prevention block grant program.
Sec. 12211. Research; evaluation; technical assistance; training.
Sec. 12212. Demonstration projects.
Sec. 12213. Authorization of appropriations.
Sec. 12214. Administrative authority.
Sec. 12215. Use of funds.
Sec. 12216. Limitations on use of funds.
Sec. 12217. Rules of construction.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

***5** Sec. 12218. Leasing surplus Federal property.
Sec. 12219. Issuance of rules.
Sec. 12220. Content of materials.
Sec. 12221. Technical and conforming amendments.
Sec. 12222. Incentive grants for local delinquency prevention programs.
Sec. 12223. Effective date; application of amendments.

Subtitle C-Juvenile Disposition Hearing

Sec. 12301. Juvenile disposition hearing.

TITLE III-INTELLECTUAL PROPERTY

Subtitle A-Patent and Trademark Office Authorization

Sec. 13101. Short title.
Sec. 13102. Authorization of amounts available to the Patent and Trademark Office.
Sec. 13103. Electronic filing and processing of patent and trademark applications.
Sec. 13104. Strategic plan.
Sec. 13105. Determination of substantial new question of patentability in reexamination proceedings.
Sec. 13106. Appeals in inter partes reexamination proceedings.

Subtitle B-Intellectual Property and High Technology Technical Amendments

Sec. 13201. Short title.
Sec. 13202. Clarification of Reexamination Procedure Act of 1999; technical amendments.
Sec. 13203. Patent and Trademark Efficiency Act amendments.
Sec. 13204. Domestic publication of foreign filed Patent Applications Act of 1999 amendments.
Sec. 13205. Domestic publication of patent applications published abroad.
Sec. 13206. Miscellaneous clerical amendments.
Sec. 13207. Technical corrections in trademark law.
Sec. 13208. Patent and trademark fee clerical amendment.
Sec. 13209. Copyright related corrections to 1999 Omnibus Reform Act.
Sec. 13210. Amendments to title 17, United States Code.
Sec. 13211. Other copyright related technical amendments.

Subtitle C-Educational Use Copyright Exemption

Sec. 13301. Educational use copyright exemption.

Subtitle D-Madrid Protocol Implementation

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Sec. 13401. Short title.
Sec. 13402. Provisions to implement the protocol relating to the Madrid Agreement concerning the international registration of marks.
Sec. 13403. Effective date.

TITLE IV-ANTITRUST TECHNICAL CORRECTIONS ACT OF 2002

Sec. 14101. Short title.
Sec. 14102. Amendments.
Sec. 14103. Effective date; application of amendments.

DIVISION A-21ST CENTURY DEPARTMENT OF JUSTICE APPROPRIATIONS AUTHORIZATION ACT

TITLE I-AUTHORIZATION OF APPROPRIATIONS FOR FISCAL YEARS 2002 AND 2003

SEC. 101. SPECIFIC SUMS AUTHORIZED TO BE APPROPRIATED FOR FISCAL YEAR 2002.

There are authorized to be appropriated for fiscal year 2002, to carry out the activities of the Department of Justice (including any ***6** bureau, office, board, division, commission, subdivision, unit, or other component thereof), the following sums:

(1) General administration.-For General Administration: $92,668,000.

(2) Administrative review and appeals.-For Administrative Review and Appeals: $173,647,000 for administration of pardon and clemency petitions and for immigration-related activities.

(3) Office of inspector general.-For the Office of Inspector General: $50,735,000, which shall include for each such fiscal year, not to exceed $10,000 to meet unforeseen emergencies of a confidential character.

(4) General legal activities.-For General Legal Activities: $549,176,000, which shall include for each such fiscal year-

(A) not less than $4,000,000 for the investigation and prosecution of denaturalization and deportation cases involving alleged Nazi war criminals; and

(B) not to exceed $20,000 to meet unforeseen emergencies of a confidential character.

(5) Antitrust division.-For the Antitrust Division: $130,791,000.

(6) United states attorneys.-For United States Attorneys: $1,353,968,000, which shall include not less than $10,000,000 for the investigation and prosecution of intellectual property crimes, including software counterfeiting crimes and crimes identified in the No Electronic Theft (NET) Act (Public Law 105-147): Provided, That such amounts in the appropriations account "General Legal Services" as may be expended for such investigations or prosecutions shall count towards this minimum as though expended from this appropriations account.

(7) Federal bureau of investigation.-For the Federal Bureau of Investigation: $3,524,864,000, which shall include for each such fiscal year-

(A) not to exceed $33,791,000 for construction, to remain available until expended; and

(B) not to exceed $70,000 to meet unforeseen emergencies of a confidential

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Bush Administration in its FY 2002 and 2003 budget submissions.

Sec. 11017. United States Parole Commission extension

Section 11017 extends the United States Parole Commission, scheduled to cease operations later this year, for an additional three years. There are numerous offenders who remain under the supervision of the Parole Commission, which is responsible for administering the supervised release of District of Columbia offenders. This section also allows current Commissioners to extend their service on the Commission, and asks the Attorney General to conduct a study on whether the Parole Commission is the appropriate entity to administer supervised release for D.C. offenders.

***199 **1151** Sec. 11018. Waiver of foreign country residence requirement with respect to international medical graduates

Section 11018 extends until 2004 the program authorizing visas for foreign medical graduates wishing to serve in the United States, and raises the number of visas available per State from 20 to 30.

Sec. 11019. Pretrial disclosure of expert testimony relating to defendant's mental condition

Section 11019 restores two provisions of Rule 16 of the Federal Rules of Criminal Procedure that were inadvertently omitted when the Supreme Court transmitted a revision of the Rules to Congress on April 29, 2002. The omitted provisions impose reciprocal obligations on the government and defendant, requiring each to disclose their expert witnesses' testimony on the defendant's mental condition bearing on the issue of guilt. The version of the Rules transmitted by the Supreme Court take effect on December 1, 2002, unless Congress acts to modify them. This section simply ensures that the sections that were omitted are not thus deleted from the Rules.

Sec. 11020. Multiparty, Multiforum Trial Jurisdiction Act of 2002

Section 11020 would streamline the process by which multidistrict litigation governing disasters are adjudicated. This section would save litigants time and money, but would not interfere with jury verdicts or compensation rates for attorneys.

The genesis of S 11020 of the conference report took place during oversight hearings conducted in the 95th Congress by the House Subcommittee on Courts, Civil Liberties and the Administration of Justice (now Courts, the Internet and Intellectual Property). These efforts were joined by those of the Carter Administration to improve judicial machinery by abolishing diversity of citizenship jurisdiction and to delineate the jurisdictional responsibilities of state and federal courts. Following Senate opposition to such expansive change, the Subcommittee narrowed its focus and began to concentrate on the problem of

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

dispersed complex litigation arising out of a single accident resulting in multiple deaths or injuries. [FN2]

Legislation on this more specific issue was first introduced in both the 98th and 99th Congresses. The House of Representatives subsequently approved legislation highly similar to S 11020 of the conference report in the 101st and 102nd Congresses; and the full House Committee on the Judiciary favorably reported this language in the 103rd Congress as well. Moreover, S 11020 of the conference report is highly similar to that set forth in S 10 of the Subcommittee substitute to H.R. 1252, the "Judicial Reform Act," from the 105th Congress, which the House passed in amended form with S 10 fully intact. In addition, during the 106th Congress the House of Representatives passed the precursor to S 11020 of the conference report, H.R. 2112, by voice vote under suspension of the rules. Section 11020 of the conference report is now largely culled ***200 **1152** from S 3 of H.R. 860, which the House passed under suspension of the rules on March 14, 2001. No hearings on H.R. 860 were held in the 107th Congress given the ample legislative history that preceded it from the 95th Congress through the 106th. The Judicial Conference and the Department of Justice have also supported these previous legislative initiatives.

The need for enactment of S 11020 of the conference report was articulated by an attorney who testified on behalf of a major airline manufacturer at the June 16, 1999, hearing on H.R. 2112. [FN3] It is common after a serious accident to have many lawsuits filed in several states, in both state and federal courts, with many different sets of plaintiffs' lawyers and several different defendants. Despite this multiplicity of suits, the principal issue that must be resolved first in each lawsuit is virtually identical: Is one or more of the defendants liable? Indeed, in lawsuits arising out of major aviation disasters, it is common for the liability questions to be bifurcated and resolved first, in advance of any trial on individual damage issues. The waste of judicial resources-and the costs to both plaintiffs and defendants-of litigating the same liability question several times over in separate lawsuits can be extreme.

Different expert consultants and witnesses may be retained by the different plaintiffs' lawyers handling each case. The court in each lawsuit can issue its own subpoenas for records and for depositions of witnesses, potentially conflicting with the discovery scheduled in other lawsuits. Critical witnesses may be deposed for one suit and then redeposed by a different set of lawyers in a separate lawsuit. Identical questions of evidence and other points of law can arise in each of the separate suits, meaning that the parties in each case may have to brief and argue-and each court may have to resolve-the same issues that are being briefed, argued, and resolved in other cases, sometimes with results that conflict.

Current efforts to consolidate all state and federal cases related to a common disaster are incomplete because current federal statutes restrict the ways in which consolidation can occur-apparently without any intention to limit consolidation. For example, plaintiffs who reside in the same state as any one of the defendants cannot file their cases in federal court because of a lack of complete diversity of citizenship, even if all parties to the lawsuit want the case consolidated. For those cases that cannot be brought into the federal

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

system, no legal mechanism exists by which they can be consolidated, as state courts cannot transfer cases across state lines. In sum, full consolidation cannot occur in the absence of federal legislative redress.

The changes set forth in S 11020 of the conference report speak directly to these problems. The revisions should reduce litigation costs as well as the likelihood of forum-shopping in airline accident cases; and an effective one-time determination of punitive damages would eliminate multiple or inconsistent awards arising from multiforum litigation.

****1153** Sec. 11020. Multiparty, Multiforum Jurisdiction of District Courts. Section 11020 of the conference report would bestow original***201** jurisdiction on federal district courts in civil actions involving minimal diversity jurisdiction among adverse parties based on a single accident where at least 75 persons have died. The district court in which such cases are consolidated would retain those cases for determination of liability and punitive damages.

More specifically, subsection 11020 of the conference report creates a new S 1369 of Title 28 of the U.S. Code which confers original jurisdiction upon the federal district courts of any civil action involving minimal diversity between adverse parties that arise from a single accident and where at least 75 people have died in the accident if (a) a defendant resides in a state and a substantial part of the accident occurred in another state or other location (regardless of whether the defendant is also a resident of the state where a substantial part of the accident occurred); any two defendants reside in different states (regardless of whether such defendants are also residents of the same state or states); or (c) substantial parts of the accident occurred in different states.

Subsection (b) of new S 1369 creates an exception to the minimum diversity rule. In brief, a U.S. district court may not hear any case in which a "substantial majority" of plaintiffs and the "primary" defendants are all citizens of the same state; and in which the claims asserted are governed "primarily" by the laws of that same state. In other words, only state courts may hear such cases. (This feature was one of three changes proffered to the Senate in an effort to develop greater support for H.R. 2112 in the waning days of the 106th Congress.

Subsection (c) of new S 1369 sets forth certain "special rules" and definitions. They include the following:

(1) Minimal Diversity. Exists between adverse parties if any party is a citizen of a state and any adverse party is a citizen of another state, a citizen/subject of a foreign state, or a foreign state.

(2) Corporation. Deemed to be a citizen of any state, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business; and is deemed to be a resident of any state in which it is incorporated or licensed to do business.

(3) Injury. Physical harm to a person, and physical damage or destruction of tangible property, but only if physical harm exists.

(4) Accident. A sudden accident, or a natural event culminating in an accident, that results in death or injury incurred at a discrete location by at least 75 natural persons.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

(5) State. Includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

Subsection (d) of new S 1369 permits any person with a claim arising from an accident as defined by the terms of the bill to intervene as a party plaintiff, even if that person could not have brought an action in district court as an original matter.

Pursuant to subsection (e) of new S 1369, a federal district court in which an action is pending under the terms of the bill must promptly notify the Multidistrict Litigation Panel ****1154** (MDLP) [FN4] of the pendency.

***202** Section 11020(b) of the conference report amends the general federal venue statute [FN5] by permitting any action under the bill to be brought in any district court in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.

Section 11020(c) of the conference report permits a defendant in a civil action in state court to remove to the appropriate federal district court under 28 U.S.C. S 1441 if:

(A) the action could have been brought under the terms of S 1369, or

(B) The defendant is a party to an action which is or could have been brought pursuant to the terms of the bill in a federal district court and arises from the same accident as the state court action.

New S 1441(e)(2)-(5), as created by S 11020(c) of the conference report, also sets forth the procedure for removal, along with the terms by which an action is remanded back to state court for determination of damages, including appellate procedures governing liability. Any decision under S 1441(e) concerning remand for the determination of damages is not reviewable by appeal or otherwise under new paragraph (6).

Finally, S 11020(d) of the conference report establishes service-of-process authority (new S 1697) for actions brought under its terms.

The amendments made by S 11020 of the conference report shall apply to a civil action if the accident giving rise to the cause of action occurred on or after the 90th day after the date of enactment of the Act.

Sec. 11021. Additional place of holding court in the Southern District of Ohio

This section authorizes judges in the Southern District of Ohio to hold court in St. Clairsville, Ohio.

Sec. 11022. Direct shipment of wine

This section states that during any period that the Federal Aviation Administration has in effect restrictions on airline passengers to ensure their safety, a person who purchases wine while visiting a winery can ship wine to another state provided that the purchaser could have carried or brought the wine into the state to which the wine is shipped. Further, the purchaser must be of legal age to purchase alcohol, the shipment must require an adult signature upon delivery and the wine must be for personal use only and not for resale. Within two years of the date of enactment, and at two-year intervals thereafter, the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*1 MULTIPARTY, MULTIFORUM JURISDICTION ACT OF 1991

HOUSE REPORT NO. 102-373
November 25, 1991
[To accompany H.R. 2450]

The Committee on the Judiciary, to whom was referred the bill (H.R. 2450) to amend title 28, United States Code, to provide for Federal jurisdiction of certain multiparty, multiform civil actions, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.
The amendment is as follows:
Strike out all after the enacting clause and insert in lieu thereof the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "Multiparty, Multiforum Jurisdiction Act of 1991".

SEC. 2. JURISDICTION OF DISTRICT COURTS.

(a) Basis of Jurisdiction.-Chapter 85 of title 28, United States Code, is amended by adding at the end of the following new section:

"S 1368. Multiparty, multiforum jurisdiction

"(a) The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 25 natural persons have either died or incurred injury in the accident at a discrete location and, in the case of injury, the injury has resulted in damages which exceed $50,000 per person, exclusive of interest and costs, if-

"(1) a defendant resides in a State and a substantial part of the accident took place in another State or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

"(2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

"(3) substantial parts of the accident took place in different States.

"(b) For purposes of this section-

"(1) minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State, a citizen or subject *2 of a foreign state, or a foreign state as defined in section 1603(a) of this title;

"(2) a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business, and is deemed to be a resident of any State in which it is incorporated or licensed to do business or is doing business;

"(3) the term 'injury' means-

"(A) physical harm to a natural person; and

"(B) physical damage to or destruction of tangible property, but only if physical harm described in subparagraph (A) exists;

"(4) the term 'accident' means a sudden accident, or a natural event culminating in an accident, that results in death or injury incurred at a discrete location by at least 25 natural persons; and

"(5) the term 'State' includes the District of Columbia, the Commonwealth of Puerto Rico, and the territories or possessions of the United States.

"(c) In any action in a district court which is or could have been brought, in whole, or in part, under this section, any person with a claim arising from the accident described in subsection (a) shall be permitted to intervene as a party plaintiff in the action, even if that person could not have brought an action in a district court

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

as an original matter.

"(d) A district court in which an action under this section is pending shall promptly notify the judicial panel on multidistrict litigation of the pendency of the action.".

"(b) A Conforming Amendment.-The table of sections at the beginning of chapter 85 of title 28, United States Code, is amended by adding at the end the following new item: "1368. Multiparty, multiforum jurisdiction.".

SEC. 3. VENUE.

Section 1391 of title 28, United States Code, is amended by adding at the end the following:

"(g) A civil action in which jurisdiction of the district court is based upon section 1368 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.".

SEC. 4. MULTIDISTRICT LITIGATION.

Section 1407 of title 28, United States Code, is amended by adding at the end the following:

"(i)(1) In actions transferred under this section when jurisdiction is or could have been based, in whole or in part, on section 1368 of this title, the transferee district court may, notwithstanding any other provision of htis section, retain actions so transferred for the determination of liability and punitive damages. An action retained for the determination of liability shall be remanded to the district court from which the action was transferred, or to the State court from which the action was removed, for the determination of damges, other than punitive damages, unless the court finds, for the convenience of parties and witnesses and in the interest of justice, that the action should be retained for the determination of damages.

"(2) Any remand under paragraph (1) shall not be effective until 60 days after the transferee court has issued an order determining liability and has certified its intention to remand some or all of the transferred actions for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the transferee court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the transferee court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

"(3) An appeal with respect to a determination of punitive damages by the transferee court may be taken, during the 60-day period beginning on the date the order making the determination is issued, to the court of appeals with jurisdiction over the transferee court.

"(4) Any decision under this subsection concerning remand for the determinaton of damages shall not be reviewable by appeal or otherwise.

"(5) Nothing in this subsection shall restrict the authority of the transferee court to transfer or dismiss an action on the ground of inconvenient forum.".

SEC. 5. REMOVAL OF ACTIONS.

Section 1441 of title 28, United States Code, is amended-

***3** (1) in subsection (e) by striking out "(e) The court to which such civil action is removed" and inserting in lieu thereof "(f) The court to which a civil action is removed under this section"; and

(2) by inserting after subsection (d) the following new subsection:

"(e)(1) Notwithstanding the provisions of subsection (b) of this section, a defendent in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if-

"(A) the action could have been brought in a United States district court under section 1368 of this title, or

"(B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1368 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1368 in a United States district court that arises from the same accident as the action in State court, or at a later time with leave of the district court.

"(2) Whenever an action is removed under this subsection and the district court to which it is removed or transferred under section 1407(i) has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it had been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

"(3) Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand the removed action for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

"(4) Any decision under this subsection concerning remand for the determinaton of damages shall not be reviewable by appeal or otherwise.

"(5) An action removed under this subsection shall be deemed to be an action under section 1368 and an action in which jurisdiction is based on section 1368 of this title for purposes of this section and sections 1407, 1659, 1697, and 1785 of this title.

"(6) Nothing in this subsection shall restrict the authority of the district court to transfer or dismiss an action on the ground of inconvenient forum.".

SEC. 6. CHOICE OF LAW.

(a) Determination by the Court.-Chapter 111 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1659. Choice of law in multiparty, multiforum actions

"(a) In an action which is or could have been brought, in whole or in part, under section 1368 of this title, the district court in which the action is brought or to which it is removed shall determine the source of the applicable substantive law, except that if an action is transferred to another district court, the transferee court shall determine the source of the applicable substantive law. In making this determination, a district court shall not be bound by the choice of law rules of any State, and the factors that the court may consider in choosing the appicable law include-

"(1) the place of the injury;

"(2) the place of the conduct causing the injury;

"(3) the principal places of business or domociles of the parties;

"(4) the danger of creating unnecessary incentives for forum shopping; and

"(5) whether the choice of law would be reasonably foreseeable to the parties. The factors set forth in paragraph (1) through (5) shall be evaluated according to their relative importance with respect to the particular action. If good cause is shown in exceptional cases, including constitutional reasons, the court may allow the law of more than one State to be applied with respect to a party, claim, or other element of an action.

***4** "(b) The district court making the determination under subsection (a) shall enter an order designating the single jurisdiction whose substantive law is to be applied in all other actions under section 1368 arising from the same accident as that giving rise to the action in which the determination is made. The substantive law of the designated jurisdiction shall be applied to the parties and claims in all such actions before the court, and to all other elements of each action, except where Federal law applies or the order specifically provides for the application of the law of another jurisdiction with respect to a party, claim, or other element of an action.

"(c) In an action remanded to another district court or a State court under section 1407(i)(1) or 1441(e)(2) of this title, the district court's choice of law under subsection (b) shall continue to apply.".

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

(b) Conforming Amendment.-The table of sections at the beginning of chapter 111 of title 28, United States Code, is amended by adding at the end the following new item:

"1659. Choice of law in multiparty, multiforum actions.".

SEC. 7. SERVICE OF PROCESS.

(a) Other Than Subpoenas.-Chapter 113 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1697. Service in multiparty, multiforum actions

"When the jurisdiction of the district court is based in whole or in part upon section 1368 of this title, process, other than subpoenas, may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.".

(2) The table of sections at the beginning of chapter 113 of title 28, United States Code, is amended by adding at the end the following new item:

"1697. Service in multiparty, multiforum actions.".

(b) Service of Subpoenas.-(1) Chapter 117 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1785. Subpoenas in multiparty, multiforum actions

"When the jurisdiction of the district court is based in whole or in part upon section 1368 of this title, a subpoena for attendance at a hearing or trial may, if authorized by the court upon motion for good cause shown, and upon such terms and conditions as the court may impose, be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.".

(2) The table of sections at the beginning of chapter 117 of title 28, United States Code, is amended by adding at the end the following new item:

"1785. Subpoenas in multiparty, multiforum actions.".

The amendments made by this Act shall apply to a civil action if the accident giving rise to the cause of action occurred on or after the 90th day after the date of the enactment of this Act.

## EXPLANATION OF AMENDMENT

Inasmuch as H.R. 2450 was ordered reported with a single amendment in the nature of a substitute, the contents of this report constitute an explanation of that amendment.

## SUMMARY AND PURPOSE

The purpose of H.R. 2450-the Multiparty, Multiforum Jurisdiction Act of 1991- is to improve the efficiency with which Federal Courts are able to handle certain complex, multidistrict litigation. This bill would amend several portions of the Judicial Code, creating Federal court jurisdiction to deal with problems of dispersed and complex litigation arising out of airline accidents, hotel fires and other disasters in which many people are killed or seriously injured in a single accident.

Accidents of this nature can give rise to a multitude of suits in Federal and State courts. Under existing law, a variety of impediments *5 exist to effective consolidation of these closely related cases. As a consequence, identical issues of liability must, in some cases, be tried by a number of courts, thereby wasting judicial

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

resources, increasing litigation costs, heightening the risk of inconsistent results, and delaying the dispensation of justice. This bill removes certain impediments to consolidation of these cases, and in so doing improves the fairness and efficiency of the process by which these cases are resolved.

## LEGISLATIVE HISTORY

In the past several years, the Committee-acting initially through the Subcommittee on Courts, Intellectual Property, and the Administration of Justice and in this Congress, through the Subcommittee on Intellectual Property and Judicial Administration-has devoted considerable time and resources to legislation designed to improve civil case consolidation procedures. Legislation comparable to H.R. 2450 was introduced in the House in the 98th, 99th, 100th and 101st Congresses. In the 100th Congress, such legislation passed the House as Title III, subtitle A of H.R. 4807, the Judicial Improvements and Access to Justice Act of 1988. Title III, subtitle A had no counterpart in the Senate bill, and was ultimately deleted at Joint Conference. In the 101st Congress it passed as H.R. 3406 on June 5, 1990.

H.R. 2450 was introduced by Subcommittee Chairman William J. Hughes for himself and Carlos Moorhead in the 102nd Congress on May 23, 1991, and was identical to H.R. 32406.

## HEARINGS

H.R. 2450 was the subject of hearings before the Subcommittee on Intellectural Property and Judicial Administration on June 19, 1991, with testimony received from the U.S. Judicial Conference (Senior Judge Thomas M. Reavley), the U.S. Department of Justice (Mr. Seven Bransdorfer, Deputy Assistant Attorney General), Professor Maurice Rosenberg from Columbia University School of Law, Mr. Douglas P. Beighle, Senior Vice President at the Boeing Corporation, and Mr. Alfred Cortese, representing the Lawyers for Civil Justice.

## COMMITTEE VOTE

On November 19, 1991, a reporting quorum being present, the Committee on the Judiciary reported H.R. 2450 by voice vote.

## DISCUSSION

### BACKGROUND

Under existing law, an array of barriers prevent consolidation of related litigation in either the State or the Federal courts. In the case of State court systems, the main impediments to effective consolidation are constitutional in nature. The due process clause of the Fourteenth Amendment has been construed to require a minimum threshold of contact between a person and a State, before the courts of that State may properly assert personal jurisdiction over ***6** the person in question. Consequently, in any given case, there may be no single State forum in which the contacts with all relevant parties are sufficient to permit consolidation of all related litigation.

Federal courts, on the other hand, can constitutionally exercise broader personal jurisdiction, and therefore can, if authorized, bring scattered parties together in one forum when that is desirable. At present, though, several statutory impediments often make such consolidation impossible. The requirement of complete diversity among the parties [FN1] will frequently prevent all parties from getting into Federal court. Among the cases that can be filed in Federal court, venue restrictions further limit efforts to gather related litigation together in a single forum. And even to the extent consolidation in a single forum is possible, existing multidistrict litigation procedures limit the authority of the court to which cases have been transferred, to resolving pretrial matters only. The Federal courts therefore are unable to perform as well as they might a valuable function for which the Federal judicial forum would be uniquely suited. The problems presented by scattered, related litigation prompted the American Bar Association and the American Law Institute, among others, to undertake studies of the procedures for consolidation of related proceedings in mass tort cases.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

H.R. 2450 would remove the barriers that impede consolidation or related litigation in the Federal court system, in the limited context of cases arising out of single accidents in which many people are killed or injured. The bill takes its inspiration from a proposal first made by the Department of Justice in 1979. [FN2] It would create a new Federal court jurisdication over cases in which 25 or more people are killed or incur injury in a single accident, based on minimal diversity of citizenship of parties as authorized by Article III of the Constitution.

Earlier incarnations of the bill in previous Congresses were drafted so as to apply not only to multiple suits arising out of single accidents, such as airplane crashes or bridge collapses, but also to multiple suits arising out of multiple events, such as repeated exposures to toxic substances or a series of incidents in which people are injured by defectively designed or manufactured products. The Department of Justice, the Judicial Conference and others, in the past have expressed concern over application of the consolidation procedures provided for in this bill, to products liability or toxic exposure cases. Their concersn were at least three-fold: first, that enlarging Federal jurisdication to include products liability or toxic exposure litigation could cause too dramatic a rise in Federal court caseload, given that the total volume of such cases in *7 State and Federal courts far exceeds that for single accident cases; second, that consolidation of thousands of suits in a single forum-which would not be unusual in products liability of toxic exposure cases-could give rise to serious case management problems both for judges, who may have an unwieldy number of cases to resolve, and for litigants, particularly plaintiffs, who may lose too much control over their individual suits; and third, that products liability or toxic exposure cases, which typically concern injuries occurring in separate incidients, can give rise to multiple issues of fact requiring case-by-case resolution, thereby diminishing the efficiencies created by consolidation. [FN3] Accordingly, H.R. 2450, following the lead of H.R. 3406 in the last Congress, is limited to suits arising out of single accidents.

At first glance, a bill that expands the jurisdiction of the Federal courts over a subset diversity of citizenship actions would appear at odds with the ongoing efforts of this Committee to relieve Federal court congestion generally and to better accommodate dramatic increases in caseload resulting from heightened efforts to prosecute drug related crimes. As both the Judicial Conference, which represents the judges burdened by Federal caseload pressures, and the Department of Justice, which prosecutes the increasing number of criminal cases, testified, however, the proposal would be unlikely to have a significant effect on Federal court caseload. First, as noted above, the expanded jurisdiction is limited to suits arising out of single accidents. Second, in most cases, the new jurisdiction would not bring entirely new, large actions before the Federal courts, but rather would simply permit consolidation in a single Federal forum of scattered litigation, part of which was already in or destined for Federal court. Third, whatever increase in new actions might occur would be offset by efficiencies created by the consolidation of multiple State and Federal courts.

Under the present rules, cases arising from a single-event mass disaster that are filed or removed to different Federal district courts may be consolidated for purposes of pretrial proceedings but then are returned to the district court from which they came. In cases arising from single-event mass disasters, the interest of efficiency and fairness dicate that liability for compensatory and punitive damages be determined in a single, consolidated trail. Such consolidated treatment would avoid both inconsistent results and the possiblity that multiple punitive damages awards would be assessed againt a defendant for the same conduct.

This bill is not an invasion of a domain of State courts, but rather is a narrowly focused use of the Federal judicial forum to employ its unique capabilities to deal with dispersed, related actions. The proposal rests squarely on the constitutional authorization of minimal diversity jurisdiction in Article III and meets a need that State court systems are constitutionally unable to fulfill. The limited new jurisdiction creates no Federal substantive law and can be invoked only at the initiative of litigants. Moreover, it *8 establishes a presumption in favor of a novel measure-remand for damage determinations from Federal to State courts-when a claim was originally filed in State court but then removed to Federal court under the new jurisdiction, and a decision reached upholding liability. The proposal is, in short, in the best tradition of a cooperative and voluntary federalism, respecting State authority in a Federal jurisdication that should improve economy and uniformity in the administration of the law.

SECTION-BY-SECTION ANALYSIS

Section 1. Short Title

Section 1 of the bill identifies the short title as the "Multiparty, Multiforum Jurisdiction Act of 1991".

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Section 2. Jurisdiction of the District Courts

Section 2 of the bill establishes the proposed special jurisdiction by adding a new section 1368 at the end of the existing Federal district court jurisdictional provisions of title 28 of the United States Code. Its subsection (a) defines the basic requirements for the jurisdiction: (1) Minimal diversity of citizenship among adversaries; (2) at least 25 persons have suffered substantial injury or death in a single accident; and (3) dispersion of events or defendants.

The first requirement is constitutionally required under Article III for Federal court jurisdiction based on citizenship of the parties. The second requirement limits the availability of the jurisdiction to mass torts in which substantial injuries to a significant number of persons are caused in a single accident. The third requirement isolates the circumstances in which geographically scattered litigation can arise, making the jurisdiction necessary.

Section 1368 does not directly address claims in the alternative. For example, in the case of a train accident, passengers may allege that their injuries were caused by the accident, by medical malpractice afterward, or both. While it would not be desirable to clog the Federal courts with large numbers of satellite claims, neither would it be desirable to fragment such litigation when plaintiffs otherwise could have used Rule 20 of the Federal Rules of Civil Procedures, [FN4] or a State counterpart, to avoid pursuing such claims separately. While the legislation does not directly address this complex issue, it is not intended to limit the court's development and use of discretionary pendent claim and party jurisdiction to deal with such alternative claims. [FN5]

Subsection (b) of section 1368 contains definitions, for purposes of this section, of minimal diversity, corporate citizenship and residence, injury, and accident.

"Accident": As defined in this section, "accident" must be sudden in nature, may include natural events culminating in accidents, and must occur in a discrete location. Thus, the bill is intended ***9** to apply to those events in which 25 or more persons are killed or injured together in a single, catastrophic accident, such as a hotel fire, a railroad, airplane or bus accident, or a bridge collapse. The reference to natural events is inserted to ensure that an accident such as a bridge collapse qualifies as an accident within the scope of the bill, notwithstanding that the collapse was caused by long-term flooding, foundation shifting or other natural events that precipitate a sudden accident, but arguably are not "sudden" in and of themselves.

Given this definition of accident, the bill does not apply to ordinary product liability actions, including failure to warn actions and design defect cases involving multiple, identically manufactured units, because the injuries in such actions do not usually occur in a large number together in a single accident. Therefore, the term "accident" does not include the act of or a decision relating to designing, manufacturing, labeling, packaging, testing or filing reports with Federal agencies with respect to any product. Of course, defectively manufactured, designed or labeled products may cause an "accident" within the meaning of the bill. For example, a defectively designed sprinkler system may fail to put out a hotel fire. To that limited extent the bill would reach suits raising product liability issues. The Committee has, however, strived to limit the scope of this bill so that it could be interpreted to apply to ordinary product liability actions, and believes that language of the bill is now sufficiently clear in that regard.

"Injury": The bill defines injury to mean bodily injury, as well as injury to property provided that property injury is accompanied by some bodily injury. Accordingly, at least 25 people must have sustained some bodily injury before the Federal jurisdiction created by this bill would apply. The bill is structured, however, so that as long as at least 25 people have sustained some bodily injury, the jurisdiction created would be available to others who have sustained only property damage in the same accident, as in the case of hotel guests who escape a hotel fire but lose their belongings.

In order to make the new mass tort jurisdiction broadly available, the definition of corporate citizenship, for purposes of section 1368, is drawn from current law.

Subsection (c) of section 1368 furthers the policy of allowing joinder of related matters by permitting someone not a party to the action as originally filed in or removed to Federal court to intervene, whether or not that person could have invoked the new Federal jurisdiction as an original matter. Thus, if a prospective plaintiff with no claim under Federal law was a citizen of the same State as all defendants, such a party could not sue on his or her own in Federal court as an original matter for lack of the constitutionally required minimal diversity; but if others brought a section 1368 suit in or removed it to a Federal court, it would defeat the action-consolidating purposes of the jurisdiction if the outsider could not now join the litigation. For cases within the jurisdiction, this subsection

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

also provides the requirement of existing law that each plaintiff in most Federal actions to which a jurisdictional amount requirement applies must have a claim for the needed ***10** amount in controversy. [FN6] Again, if the action is large enought for the jurisdiction to be invoked under subsection (b), it would defeat the purpose of the jurisdiction if parties with related but smaller claims could not join.

Subsection (d) of section 1368, facilitates coordination of related actions by requiring that any district court in which an action under section 1368 is pending promptly notify the Judicial Panel on Multidistrict Litigation.

Section 3. Venue

Section 3 of the bill amends section 1391 of title 28 of the United States Code, by adding a new subsection (g), which provides a venue provision for cases brought under section 1368. Venue is authorized in any judicial district where any defendant resides or where a substantial part of the accident occurred. In the words of the 1979 Justice Department commentary:

This provision is similar to, but slightly broader than, the current venue provision for actions not founded on diversity of citizenship in section 1391(b) of title 28, United States Code. They differ mainly in that existing section 1391(b) creates venue where "all defendants" reside. The broader venue scope that the language "any defendant" provides, along with nationwide service of process provision (see section [7], infra), will allow potential defendants not living in the State where the action is filed to be brought in at the action's inception, thus avoiding a multiplicity of suits in different States. [FN7]

The provision authorizing venue in any district where a "substantial part" of an accident occurred (as opposed to the district where the accident occurred) is intended to address only the unusual circumstance in which an accident covered by the legislation would occur in more than one district, such as a mid-air plane collision that occurs above the border of two States. The language is not intended to expand the meaning of the term "accident".

Section 4. Multidistrict Litigation

For cases within the new jurisdiction, section 4 of the bill amends section 1407 of title 28, United States Code, to expand present district court authority over transferred actions, which formally covers pretrial proceedings, to permits joint trial of liability issues. In the words of the 1979 Justice Department explanation:

The existing provision of the multidistrict litigation statute, section 1407 of title 28, United States Code, permits consolidation and transfer of cases pending in different judicial districts in which there are common questions of fact. Transfer is currently authorized for pretrial proceedings only. This amendment would add a new subsection, (i), to section 1407 *** which would apply only to cases ***11** transferred involving multi-person injuries *** Expanding the power of the transferee judge to include conducting a trial on the merits is preferable in several respects to the current requirement of a remand to the transferor court following pre-trial proceedings. First, having presided over complicated and protracted discovery proceedings and pretrial motions and transferee judge has already attained a degree of expertise in a complex matter that is wasteful to disregard.

Second, experience has shown that many transferee judges currently manage to retain actions for trial by transferring the cases to themselves at the conclusion of pre-trial proceedings through the change of venue provision in section 1404(a) of title 28, United States Code. This provision, however, restricts transfer to a district where the action could originally have been brought. By allowing the transferee judge to retain multiperson injury actions for trial, we merely codify current practice and eliminate the restrictions imposed by the 1404(a) transfer device. [FN8]

For similar reasons, the bill permits joint trial of punitive damage issues. Whereas case-to-case variations in facts relevant to resolving compensatory damage issues will ordinarily be such that there is no net gain to having those issues tried by a single court, that is not the case with punitive damage issues; moreover, by consolidating punitive damage determinations, the risk of inappropriate, multiple punitive damage awards is reduced.

Revised section 1407 calls for remand, however, of damage determinations (other than punitive damages), including the possibility of remand to State courts in which actions were originally filed, unless the Federal court finds that it would serve the convenience of parties and witnesses and the interests of justice to retain the damages phase as well. That section also provides that if the Federal transferee court is sending cases back for damage determinations, a party may appeal the courts' liability determination (and its choice of law determination) before

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the remand. Once all such appeals have been disposed of (or if no such appeal is taken), the section provides that the liability determination and the choice of law determination shall not be subject to further review (either in remanded or retained proceedings), and the remand shall take effect. In addition, the section bars appellate review of the decision whether or not to remand for the determination of damages.

Section 5. Removal of actions

Section 5 of the bill redesignates subsection (e) of 28 U.S.C. 1441 as subsection (f), and adds a new subsection (e) to those general removal provisions. New subsection (e) would permit removal both to invoke the proposed jurisdiction (as by a defendant sued on related matters in the courts of two or more States) and to join actions within the jurisdiction pending in the Federal court (as by a defendant sued in State court after the filing in Federal court of a section 1368 action). Any defendant meeting the requirements of ***12** subsection (e)(1) may effect the removal, whether or not any of the defendants is a citizen of the State in which the action is brought. Thus, the general all-defendants requirement for removal contained in subsection (a) of section 1441, and the instate defendant limitation in subsection (b), would not apply to the removal of such actions.

To avoid making actions unremovable from State court when joinder to a later- filed Federal section 1368 action is sought, subsection (e) authorizes removal before trial within thirty days of a defendant's becoming a party to a section 1368 suit, or at a later time with leave of the district court. [FN9] The additional 30-day period reflects the fact that removal may be impossible for jurisdictional reasons within the normal removal period of section 1446. For example, if the initial suits brought in State court against a defendant all involved nondiverse plaintiffs, it might not be able to remove them until some other plaintiff initiated a section 1368 suit against it in State court. The subsection also allows removal beyond the extended time period with leave of the district court because consolidated adjudication of mass tort cases may further important systemic interests, even if a defendant does not consider it in its self-interest to remove the State actions against it at an early point in the litigation.

The new subsection (e) also establishes a presumption in favor of discretionary remand to State courts, or "reverse removal," for damages determinations after rulings on liability. This provision both respects State adjudication and limits the burden from the new jurisdiction on the Federal judiciary. If the Federal district court is sending cases back for damage determinations, a party may appeal the court's liability determination (and its choice of law determination) before the remand. Once all such appeals have been disposed of (or if no such appeal is taken), the section provides that the liability choice of law determinations shall not be subject to further review (either in remanded or retained proceedings, and the remand shall take effect. In addition, the subsection bars appellate review of the decision whether or not to remand for the determination of damages.

Paragraph (5) of subsection (e) makes clear that an action removed pursuant to that subsection is to be considered a section 1368 suit for such purposes as intervention (section 1368(c)), notification of the multidistrict litigation panel (section 1368(d), transfer and consolidation (section 1407(i)), removal of related action in State court (section 1441(e)), choice of law (section 1659), and service of process and subpoenas (sections 1697, 1785).

Nothing in subsection (e) is intended to restrict the district court's ability, at any time, to transfer an action under section 1404(a) or dismiss an action under the doctrine of forum on conveniens.

Section 6. Choice of Law

Section 6(a) & (b) of the bill add a new section 1658 of title 28 of the United States Code, to address the problems of choice of law ***13** determinations in actions within the proposed jurisdiction. Because the jurisdiction is for multiparty, multiforum actions, the substantive law of several States and even foreign nations will often be potentially applicable to different aspects of the litigation before the Federal court. In general, Federal courts in State law cases are bound by the choice of law rules of the State in which they sit. [FN10] That rule, however, is extremely hard to defend for actions such as those within the proposed jurisdiction, in which a Federal court would not be largely acting as a surrogate State court but rather serving a nationwide function that often could not have been served by any State court. When the purpose of the jurisdiction is to use the Federal courts to do what no State court may be able to do, it makes no sense to have a Federal court bound by the conflicts laws of a single State. (The Federal court may, of course, end up following the same conflicts rules or substantive law that would have governed in the courts of the forum State; but it should not invariably be required to do so.)

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Section 1659, accordingly, specifically provides that the district court in which the section 1368 action is pending is not bound by the choice of law rules of any State. The section does not dictate any particular rule for choosing the jurisdiction whose substantive law will be applied in a section 1368 action. Rather, it requires in subsection (b) that the responsible district court enter an order designating the jurisdiction whose law would be applied in all section 1368 actions before the court arising from the same incident. This section identifies various factors that may be relevant in such choice of law determinations but does not attempt to legislate a single governing law or methodology, leaving this complex matter to judicial development. The Federal courts' discretion on this point is limited to choosing the jurisdiction whose substantive law will apply; the section does not authorize the creation of Federal substantive common law for mass torts.

At the Subcommittee on Intellectual Property and Judicial Administration markup on H.R. 2450, a shortened list of five factors was substituted for the existing 10 factors in subsection (a) of H.R. 2450 as introduced. These five factors the court "may consider" in choosing a single jurisdiction's applicable substantive law to cover the consolidated action. In so doing, the Subcommittee decided on ore objective factors derived from a recent draft choice of law proposal from the American Law Institute and added two factors concerning forum shopping and foreseeability. This provision maintains the presumption for the designation of one jurisdiction's substantive law but, if good cause is shown, allows the court to designate the law of more than one State to be applied.

Subsection (c) provides that when cases are consolidated in a transferee court under section 1407, the transferee court's choice of law continue to apply in proceedings following renamed to other district courts or State courts. Similarly, when a case is removed from State court to Federal court without subsequent transfer, the Federal court's choice of law continues to apply following a remand to State court. This approach facilitates settlement by fixing the ***14** applicable substantive law at an early stage in the litigation. It also avoids creating an incentive for litigation concerning remands based on a party's expectations that the court to which the proceedings are to be remanded might apply a more or less favorable body of law.

Section 7. Service of process

Section 7 of the bill contains two provisions that facilitate the jurisdiction's function of providing a consolidated adjudication of liability in mass tort cases involving dispersed parties. It authorizes nationwide service of process and, upon a showing of good cause, nationwide service of subpoenas as otherwise permitted by law.

Section 8. Effective date

Section 8 provides that the Act will apply to accidents occurring at least 90 days after the date of enactment.

## COMMITTEE OVERSIGHT FINDINGS

In compliance with clause 2(l)(3)(A) of rule XI of the Rules of the House of Representatives, the Committee reports that the findings and recommendations of the Committee, based on oversight activities under clause 2(b)(1) of rule X of the Rules of the House of Representatives, are incorporated in the descriptive portions of this report.

## COMMITTEE ON GOVERNMENT OPERATIONS OVERSIGHT FINDINGS

No findings or recommendations of the Committee on Government Operations were received as referred to in clause 2(l)(3)(D) of rule XI of The Rules of the House of Representatives.

## NEW BUDGET AUTHORITY AND TAX EXPENDITURES

Clause 2(l)(3)(B) of House Rule XI is inapplicable because this legislation does not provide new budgetary authority or increased tax expenditures.

## CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

In compliance with clause 2(l)(C)(3) of rule XI of the Rules of the House of Representatives, the Committee sets forth, with respect to the bill H.R. 2450, the following estimate and comparison prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974:

U.S. Congress

Congressional Budget Office

Washington, DC, November 22, 1991.

Hon. Jack Brooks,
Chairman, Committee on the Judiciary,
House of Representatives, Washington, DC.

Dear Mr. Chairman: The Congressional Budget Office has reviewed H.R. 2450, the Multiparty, Multiforum Jurisdiction Act of 1991, as ordered reported by the House Committee on the Judiciary on November 19, 1991.

***15** H.R. 2450 would provide a federal forum to facilitate the consolidation of litigation arising out of single accidents in which at least 25 people were killed or injured. Such consolidation of litigation would result in some savings to the federal government. While we cannot estimate the amount of such savings, they would be relatively small because there would be few cases affected. No costs to state or local governments would result from enactment of this bill.

Enactment of H.R. 2450 would not affect direct spending or receipts. Therefore, pay-as-you-go procedures would not apply to the bill.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mitchell Rosenfeld, who can be reached at 226- 2860.

Sincerely,

Robert D. Reischauer, Director.

INFLATIONARY IMPACT STATEMENT

Pursuant to clause 2(l)(4) of rule XI of the Rules of the House of Representatives, the Committee estimates that H.R. 2450 will have no significant inflationary impact on prices and costs in the national economy.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman);

TITLE 28, UNITED STATES CODE

* * * * * * *

PART IV-JURISDICTION AND VENUE

* * * * * * *

CHAPTER 85-DISTRICT COURTS; JURISDICTION

Sec.

1330. Actions against foreign states.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

* * * * * * *

1368. Multiparty, multiforum jurisdiction.

* * * * * * *

S 1368. Multiparty, multiforum jurisdiction

(a) The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from single accident, where at least 25 natural persons have either died or incurred injury in the accident at a discrete location and, in the case of injury, the injury has resulted in damages which exceed $50,000 per person, exclusive of interest and costs. if-

***16** (1) a defendant resides in a State and a substantial part of the accident took place in another State or other location regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

(2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

(3) substantial parts of the accident took place in different States.

(b) for purposes of this section-

(1) minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State, a citizen or subject of a foreign state, or a foreign state as defined in section 1603(a) of this title;

(2) a corporation is deemed to be a citizen of any state, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business, and is deemed to be a resident of any State in which it is incorporated or licensed to do business or is doing business;

(3) the term "injury" means-

(A) physical harm to a natural person; and

(B) physical damage to or destruction of tangible property, but only if physical harm described in subparagraph (A) exists;

(4) the term "accident" means a sudden accident, or a natural event culminating in an accident, that results in death or injury incurred at a discrete location by at least 25 natural persons; and

(5) the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and the territories or possessions of the United States.

(c) In any action in a district court which is or could have been brought, in whole or in part, under this section, any person with a claim arising from the accident described in subsection (a) shall be permitted to intervene as a party plaintiff in the action, even if that person could not have brought an action in a district court as an original matter.

(d) A district court in which an action under this section is pending shall promptly notify the judicial panel on multidistrict litigation of the pendency of the action.

CHAPTER 87-DISTRICT COURTS; VENUE

* * * * * * *

S 1391. Venue generally

(a)***

* * * * * * *

(g) A civil action in which jurisdiction of the district court is based upon section 1368 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the action took place.

* * * * * * *

***17** S 1407. Multidistrict litigation

(a)***

* * * * * * *

(i)(1) In actions transferred under this section when jurisdiction is or could have been based, in whole or in part, on section 1368 of this title, the transferee district court may, notwithstanding any other provision of this section, retain actions so transferred for the determination of liability and punitive damages. An action retained for the determination of liability shall be remanded to the district court from which the action was transferred, or to the State court from which the action was removed, for the determination of damages, other than punitive damages, unless the court finds, for the convenience of parties and witnesses and in the interest of justice, that the action should be retained for the determination of damages.

(2) Any remand under paragraph (1) shall not be effective until 60 days after the transferee court has issued an order determining liability and has certified its intention to remand some or all of the transferred actions for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the transferee court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the transferee court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

(3) An appeal with respect to a determination of punitive damages by the transferee court may be taken, during the 60-day period beginning on the date the order making the determination is issued, to the court of appeals with jurisdiction over the transferee court.

(4) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

(5) Nothing in this subsection shall restrict the authority of the transferee court to transfer or dismiss an action on the ground of inconvenient forum.

* * * * * * *

CHAPTER 89-DISTRICT COURTS; REMOVAL OF CASES FROM STATE COURTS

* * * * * * *

S 1441. Actions removable generally

(a)***

* * * * * * *

(e)(1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if-

***18** (A) the action could have been brought in a United States district court under section 1368 of this title, or

(B) the defendant is a party to an action which is or could have been brought, in whole or in part, under section 1368 in a United States district court and arises from the same accident as the action in State court, even if the action to be removed could not have been brought in a district court as an original matter.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1368 in a United States district court that arises from the same accident as the action in State court, or at a later time with leave of the district court.

(2) Whenever an action is removed under this subsection and the district court to which it is removed or transferred under section 1407(i) has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it had been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

(3) Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand the removed action for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

(4) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

(5) An action removed under this subsection shall be deemed to be an action under section 1368 and an action in which jurisdiction is based on section 1368 of this title for purposes of this section and sections 1407, 1659, 1697, and 1785 of this title.

(6) Nothing in this subsection shall restrict the authority of the district court to transfer or dismiss an action on the ground of inconvenient forum.

[(e) The court to which such civil action is removed]

(f) The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

* * * * * * *

***19** PART V-PROCEDURE

* * * * * * *

CHAPTER 111-GENERAL PROVISIONS

Sec.

S 1651. Writs.

* * * * * * *

1659. Choice of law in multiparty, multiforum actions.

* * * * * * *

S 1659. Choice of law in multiparty, multiforum actions

(a) In an action which is or could have been brought, in whole or in part, under section 1368 of this title, the district court in which the action is brought or to which it is removed shall determine the source of the applicable substantive law, except that if an action is transferred to another district court, the transferee court shall determine the source of the applicable substantive law. In making this determination, a district court shall not be bound by the choice of law rules of any State, and the factors that the court may consider in choosing the applicable law

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

include-

(1) the place of the injury;
(2) the place of the conduct causing the injury;
(3) the principal places of business or domociles of the parties;
(4) the danger of creating unnecessary incentives for forum shopping; and
(5) whether the choice of law would be reasonably foreseeable to the parties.

The factors set forth in paragraphs (1) through (5) shall be evaluated according to their relative importance with respect to the particular action. If good cause is shown in exceptional cases, including constitutional reasons the court may allow the law of more than one State to be applied with respect to a party, claim, or other element of an action.

(b) The district court making the determination under subsection (a) shall enter an order designating the single jurisdiction whose substantive law is to be applied in all other actions under section 1368 arising from the same accident as that giving rise to the action in which the determination is made. The substantive law of the designated jurisdiction shall be applied to the parties and claims in all such actions before the court, and to all other elements of each action, except where Federal law applies or the order specifically provides for the application of the law of another jurisdiction with respect to a party, claim, or other element of an action.

(c) In an action remanded to another district court or a State court under section 1407(i)(1) or 1441(e)(2) of this title, the district court's choice of law under subsection (b) shall continue to apply.

CHAPTER 113-PROCESS

Sec.

1691. Seal and test of process.

* * * * * * *

1697. Service in multiparty, multiforum actions.

* * * * * * *

***20** S 1697. Service in multiparty, multiforum actions

When the jurisdiction of the district court is based in whole or in part upon section 1368 of this title, process, other than subpoenas, may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

* * * * * * *

CHAPTER 117-EVIDENCE; DEPOSITIONS

Sec.

1781. Transmittal of letter rogatory or request.

* * * * * * *

1785. Subpoenas in multiparty, multiforum actions.

* * * * * * *

S 1785. Subpoenas in multiparty, multiforum actions

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

When the jurisdiction of the district court is based in whole or in part upon section 1368 of this title, a subpoena for attendance at a hearing or trial may, if authorized by the court upon motion for good cause shown, and upon such terms and conditions as the court may impose, be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

* * * * * * *

FN1 Article III of the United States Constitution permits, but does not mandate, Federal court jurisdiction based on "controversies between citizens of different States" and "between a State, or the citizens thereof, and foreign states, citizens or subjects." The legislation establishing diversity jurisdiction has long been construed to require "complete" diversity, meaning that the jurisdiction is available only in suits where no plaintiff and no defendant are citizens of the same State. "Minimal" diversity, in constrast, would make diversity jurisdiction available whenever and defendant and any plaintiff are citizens of different States.

FN2 The Department of Justice's proposal was more fully developed in a 1986 article by Professor Thomas Rowe and Mr. Kenneth Sibley, publihsed in the University of Pennsylvania Law Review. See, Rowe & Sibley, "Beyond Diversity: Federal Multiparty, Multiform Jurisdiction," 135 U. Pa. L. Rev. 7 (1986).

FN3 Such cases commonly turn on conditions that are unique to the injured person's own conduct and life history. Such issues are less frequent in an airplane crash or hotel fire. Given concerns relating to plaintiff-specific issues, as well as the other concerns identified above, products liability and toxic exposure cases are excluded from the scope of the bill.

FN4 Rule 20 of the Federal Rules of Civil Procedure permits parties in civil suits to "join" or bring other persons into the suit, when the party seeking joinder asserts a right to relief against the person to be joined, that is based upon transactions or occurrences that are already at issue in the preexisting suit.

FN5 See UMW v. Gibbs, 383 U.S. 715 (1966); 13B c. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure S 3567.2 at 145-61 (1984).

FN6 See Zahn v. International Paper Co., 414 U.S. 291 (1973).

FN7 Hearings on Diversity of Citizenship/Magistrate Reform-1979, before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary, 95th Cong., 1st Sess. 161 (1979).

FN8 Id.

FN9 Cf. 28 U.S.C. 1446(c)(1) (generally similar removal procedure for criminal cases).

FN10 Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3(1975).

H.R. REP. 102-373, H.R. Rep. No. 373, 102ND Cong., 1ST Sess. 1991, 1991 WL 255971 (Leg.Hist.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

H.R. REP. 101-515
H.R. Rep. No. 515, 101ST Cong., 2ND Sess. 1990, 1990 WL 258819 (Leg.Hist.)
**(Publication page references are not available for this document.)**

MULTIPARTY, MULTIFORUM JURISDICTION ACT OF 1990

HOUSE REPORT NO. 101-515
June 1, 1990
[To accompany H.R. 3406]

The Committee on the Judiciary, to whom was referred the bill (H.R. 3406) to amend title 28, United States Code, to provide for Federal jurisdiction of certain multiparty, multiforum civil actions, having considered the same, report favorably thereon with an amendment and recommend that the bill as amended do pass.

The amendment is as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

SECTION 1. SHORT TITLE.

This Act may be cited as the "Multiparty, Multiforum Jurisdiction Act of 1990".

SEC. 2. JURISDICTION OF DISTRICT COURTS.

(a) Basis of Jurisdiction.-Chapter 85 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1367. Multiparty, multiforum jurisdiction

"(a) The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 25 natural persons have either died or incurred injury in the accident at a discrete location and that, in the case of injury, the injury has resulted in damages which exceed $50,000 per person, exclusive of interest and costs, if-

"(1) a defendant resides in a State and a substantial part of the accident took place in another State, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

"(2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

"(3) substantial parts of the accident took place in different States.

"(b) For purposes of this section-

"(1) minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State, a citizen or subject of a foreign state, or a foreign state as defined in section 1603(a) of this title;

"(2) a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business, and is deemed to be a resident of any State in which it is incorporated or licensed to do business or is doing business;

"(3) the term 'injury' means-

"(A) physical harm to a natural person; and

"(B) physical damage to or destruction of tangible property, but only if physical harm described in paragraph (A) exists; and

"(4) the term 'accident' means a sudden accident, or a natural event culminating in an accident, that results in death or injury incurred at a discrete location by at least 25 natural persons.

"(c) In any action in a district court under this section, any person with a claim arising from the accident described in subsection (a) shall be permitted to intervene as a party plaintiff in the action, even if that person could not have brought an action in a district court as an original matter.

"(d) A district court in which an action under this section is pending shall promptly notify the judicial panel on multidistrict litigation of the pendency of the action.".

(b) Conforming Amendment.-The table of sections at the beginning of chapter 85 of title 28, United States Code,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

is amended by adding at the end the following new item:

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

SEC. 3. VENUE.

Section 1391 of title 28, United States Code, is amended by adding at the end the following:

"(g) A civil action in which jurisdiction of the district court is based upon section 1367 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.".

SEC. 4. MULTIDISTRICT LITIGATION.

Section 1407 of title 28, United States Code, is amended by adding at the end the following:

"(i)(1) In actions transferred under this section when jurisdiction is based in whole or in part on section 1367 of this title, the transferee district court may, notwithstanding any other provision of this section, retain actions so transferred for the determination of liability and punitive damages. An action retained for the determination of liability shall be remanded to the district court from which the action was transferred, or to the State court from which the action was removed, for the determination of damages, other than punitive damages, unless the court finds, for the convenience of parties and witnesses and in the interest of justice, that the action should be retained for the determination of damages.

"(2) Any remand under paragraph (1) shall not be effective until 60 days after the transferee court has issued an order determining liability and has certified its intention to remand some or all of the transferred actions for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the transferee court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the transferee court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

"(3) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.".

SEC. 5. REMOVAL OF ACTIONS.

Section 1441 of title 28, United States Code, is amended-

(1) in subsection (e) by striking out "(e) The court to which such civil action is removed" and inserting in lieu thereof "(f) The court to which a civil action is removed under this section"; and

(2) by inserting after subsection (d) the following new subsection:

"(e)(1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action is a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if-

"(A) the action could have been brought in a United States district court under section 1336 of this title, or

"(B) the defendant is a party to an action under section 1367 in a United States district court arising from the same accident as the action in State court.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title, except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1367 in a United States district court arising from the same accident, or at a later time with leave of the district court.

"(2) Whenever an action is removed under this subsection and the district court to which it was removed has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it has been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

"(3) Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand some or all of the removed actions for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

"(4) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

"(5) An action removed under this subsection shall be deemed to be an action under section 1367 and an action in which jurisdiction is based on section 1367 of this title for purposes of this section and sections 1367, 1407, 1658, 1697, and 1785 of this title.".

SEC. 6. CHOICE OF LAW.

(a) Determination by the Court.-Chapter 111 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1658. Choice of law in multiparty, multiforum actions

"(a) In an action under section 1367 of this title, the district court in which the action is brought or to which it is removed shall determine the source of the applicable substantive law, except that if an action is transferred to another district court, the transferee court shall determine the source of the applicable substantive law. In making this determination, a district court shall not be bound by the choice of law rules of any State, and the factors that the court may consider in choosing the applicable law include-

"(1) the law that might have governed if the jurisdiction created by section 1367 of this title did not exist;

"(2) the forums in which the claims were or might have been brought;

"(3) the location of the accident on which the action is based and the location of related transactions among the parties;

"(4) the place where the parties reside or do business;

"(5) the desirability of applying uniform law to some or all aspects of the action;

"(6) whether a change in applicable law in connection with removal or transfer of the action would cause unfairness;

"(7) the danger of creating unnecessary incentives for forum shopping;

"(8) the interest of any jurisdiction in having its law apply;

"(9) any reasonable expectation of a party or parties that the law of a particular jurisdiction would apply or would not apply;

"(10) any agreement or stipulation of the parties concerning the applicable law; and

"(11) whether a change in applicable law in connection with removal or transfer of the action would cause unfairness.

"(b) The district court making the determination under subsection (a) shall enter an order designating the single jurisdiction whose substantive law is to be applied in all other actions under section 1367 arising from the same accident as that giving rise to the action in which the determination is made. The substantive law of the designated jurisdiction shall be applied to the parties and claims in all such actions before the court, and to all other elements of each action, except where Federal law applies or the order specifically provides for the application of the law of another jurisdiction with respect to a party, claim, or other element of an action.

"(c) In an action remanded to another district court or a State court under section 1407 or 1441(e)(2) of this title, the district court's choice of law under subsection (b) shall continue to apply.".

(b) Conforming Amendment.-The table of sections at the beginning of chapter 111 of title 28, United States Code, is amended by adding at the end the following new item:

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

SEC. 7. SERVICE OF PROCESS.

(a) Other Than Subpoenas.-(1) Chapter 113 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1697. Service in multiparty, multiforum actions

"When the jurisdiction of the district court is based in whole or in part upon section 1367 of this title, process, other than subpoenas, may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.".

(2) The table of sections at the beginning of chapter 113 of title 28, United States Code, is amended by adding at the end the following new item:

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

(b) Service of Subpoenas.-(1) Chapter 117 of title 28, United States Code, is amended by adding at the end the following new section:

"S 1785. Subpoenas in multiparty, multiforum actions

"When the jurisdiction of the district court is based in whole or in part upon section 1367 of this title, a subpoena for attendance at a hearing or trial may, if authorized by the court upon motion for good cause shown, and upon such terms and conditions as the court may impose, be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.".

(2) The table of sections at the beginning of chapter 117 of title 28, United States Code, is amended by adding at the end the following new item:

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

SEC. 8. EFFECTIVE DATE.

The amendments made by this Act shall apply to a civil action if the accident giving rise to the cause of action occurred on or after the 90th day after the date of the enactment of this Act.

## I. PURPOSE OF THE LEGISLATION

The purpose of H.R. 3406-the Multiparty, Multiforum Jurisdiction Act of 1990- is to improve the efficiency with which Federal Courts are able to handle certain complex, multidistrict litigation. This bill would amend several portions of the Judicial Code, creating Federal court jurisdiction to deal with problems of dispersed and complex litigation arising out of airline accidents, earthquakes, hotel fires and other disasters in which many people are killed or seriously injured in a single accident.

Accidents of this nature can give rise to a multitude of suits in Federal and State courts. Under existing law, a variety of impediments exist to effective consolidation of these closely related cases. As a consequence, identical issues of liability must, in some cases, be tried by a number of courts, thereby wasting judicial resources, increasing litigation costs, heightening the risk of inconsistent results, and delaying the dispensation of justice. This bill removes certain impediments to consolidation of these cases, and in so doing improves the fairness and efficiency of the process by which these cases are resolved.

## II. STATEMENT OF LEGISLATIVE HISTORY

In the past several years, the Committee-acting through the Subcommittee on Courts, Intellectual Property, and the Administration of Justice-has devoted considerable time and resources to legislation designed to improve civil case consolidation procedures. Legislation comparable to H.R. 3406 was introduced in the House in the 98th,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

99th, and 100th Congresses. In the 100th Congress, such legislation passed the House as title III, subtitle A of H.R. 4807, the Judicial Improvements and Access to Justice Act of 1988. Title III, subtitle A had no counterpart in the Senate Bill, and was ultimately deleted at Joint Conference.

During the 101st Congress, on October 4, 1989, Subcommittee Chairman Robert W. Kastenmeier introduced H.R. 3406. The proposed legislation, as introduced, was identical to the bill that passed the House during the 100th Congress in the form of title III subtitle A of the Judicial Improvements and Access to Justice Act of 1988. On November 15, 1989, a hearing was held with testimony received from the United States Department of Justice (Mr. Steven Bransdorfer), the Judicial Conference (Judge William Schwarzer), a member of the American Bar Association's Mass Tort Commission (Ms. Barbara Wrubel); and Lawyers for Civil Justice (Mr. James Dixon).

On February 28, 1990, the Subcommittee ordered H.R. 3406 reported unanimously by voice vote with an amendment in the nature of a substitute. The amendment revised the bill in a number of respects, in light of suggestions and comments received from witnesses at the hearing, as well as others from public interest organizations, industry, the practicing bar and academia. Inasmuch as H.R. 3406 was ordered reported with an amendment in the nature of a substitute the contents of this report constitute an explanation of the amendment.

On March 28, 1990, the full Committee on the Judiciary reported H.R. 3406 favorably by voice vote.

## III. BACKGROUND AND SECTIONAL ANALYSIS

### A. BACKGROUND

Under existing law, an array of barriers prevent the consolidation of related litigation in either the State or the Federal courts. In the case of state court systems, the main impediments to effective consolidation are constitutional in nature. The due process clause of the Fourteenth Amendment has been construed to require a minimum threshhold of contact between a person and a state, before the courts of that State may properly assert personal jurisdiction over the person in question. Consequently, in any given case, there may be no single state forum in which the contacts with all relevant parties are sufficient to permit consolidation of all related litigation.

Federal Courts, on the other hand, can constitutionally exercise broader personal jurisdiction, and therefore can, if authorized, bring scattered parties together in one forum when that is desirable. At present, though, several statutory impediments often make such consolidation impossible. The requirement of complete diversity among the parties [FN1] will frequently prevent all parties from getting into Federal court. Among the cases that can be filed in Federal court, venue restrictions further limit efforts to gather related litigation together in a single forum. And even to the extent consolidation in a single forum is possible, existing multidistrict litigation procedures limit the authority of the court to which cases have been transferred, to resolving pretrial matters only. The Federal courts therefore are unable to perform as well as they might a valuable function for which the Federal judicial forum would be uniquely suited. The problems presented by scattered, related litigation have prompted the American Bar Association and the American Law Institute, among others, to undertake studies of the procedures for consolidation of related proceedings in mass tort cases.

H.R. 3406 would remove the barriers that impede consolidation of related litigation in the Federal court system, in the limited context of cases arising out of single accidents in which many people are killed or injured. The bill takes its inspiration from a proposal first made by the Department of Justice in 1979. [FN2] It would create a new Federal court jurisdiction over cases in which 25 or more people are killed or incur injury in a single accident, based on minimal diversity of citizenship of parties as authorized by Article III of the Constitution.

Earlier incarnations of the bill in previous Congresses were drafted so as to apply not only to multiple suits arising out of single accidents, such as airplane crashes or bridge collapses, but also to multiple suits arising out of multiple events, such as repeated exposures to toxic substances or a series of incidents in which people are injured by defectively designed or manufactured products. The Department of Justice, the Judicial Conference and others, however, have expressed concern over application of the consolidation procedures provided for in this bill, to products liability or toxic exposure cases. Their concerns are at least three-fold: first, that enlarging Federal jurisdiction to include products liability or toxic exposure litigation could cause too dramatic a rise in Federal court caseload, given that the total volume of such cases in state and Federal courts far exceeds that for single accident cases; second, that consolidation of thousands of suits in a single forum-which would not be unusual in products liability or toxic exposure cases- could give rise to serious case management problems both for judges,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

who may have an unwieldly number of cases to resolve, and for litigants, particularly plaintiffs, who may lose too much control over their individual suits; and third, that products liability or toxic exposure cases, which typically concern injuries occurring in separate incidents, can give rise to multiple issues of fact requiring case by case resolution, thereby diminishing the efficiencies created by consolitation. [FN3] Accordingly, this bill is limited to suits arising out of single accidents.

At first glance, a bill that expands the jurisdiction of the Federal courts over a subset of diversity of citizenship actions would appear at odds with the ongoing efforts of this Committee to relieve Federal court congestion generally and to better accommodate dramatic increases in caseload resulting from heightened efforts to prosecute drug related crimes. As both the Judicial Conference, which represents the judges burdened by Federal caseload pressures, and the Department of Justice, which prosecutes the increasing number of criminal cases, testified, however, the proposal would be unlikely to have a significant effect on Federal court caseload. First, as noted above, the expanded jurisdiction is limited to suits arising out of single accidents. Second, in most cases, the new jurisdiction would not bring entirely new, large actions before the Federal courts, but rather would simply permit consolidation in a single Federal forum of scattered litigation, part of which was already in or destined for Federal court. Third, whatever increase in new actions might occur would be offset by efficiencies created by the consolidation multiple State and Federal courts.

Under the present rules, cases arising from a single-event mass disaster that are filed in or removed to different Federal district courts may be consolidated for purposes of pretrial proceedings but then are returned to the district court from which they came. In cases arising from single-event mass disasters, the interests of efficiency and fairness dictate that liability for compensatory and punitive damages be determined in a single, consolidated trial. Such consolidated treatment would avoid both inconsistent results and the possibility that multiple punitive damages awards would be assessed against a defendant for the same conduct.

This bill is not an invasion of the domain of State courts, but rather is a narrowly focused use of the Federal judicial forum to employ its unique capabilities to deal with dispersed, related actions. The proposal rests squarely on the constitutional authorization of minimal diversity jurisdiction in Article III and meets a need that State court systems are constitutionally unable to fulfill. The limited new jurisdiction creates no Federal substantive law and can be invokved only at the initiative of litigants. Moreover, it establishes a presumption in favor of a novel measure-remand for damage determinations from Federal to State courts-when a claim was originally filed in State court but then removed to Federal court under the new jurisdiction, and a decision reached upholding liability. The proposal is, in short, in the best tradition of a cooperative and voluntary federalism, respecting State authority in matters of substantive law and facilitating its enforcement through a Federal jurisdiction that should improve economy and uniformity in the administration of the law.

## B. SECTION-BY-SECTION ANALYSIS

### Section 1. Short title

Section 1 of the bill identifies the short title as the "Multiparty, Multiforum Jurisdiction Act of 1990".

### Section 2. Jurisdiction of the district courts

Section 2 of the bill establishes the proposed special jurisdiction by adding a new section 1367 at the end of the existing Federal district court jurisdictional provisions of title 28 of the United States Code. Its subsection (a) defines the basic requirements for the jurisdiction: (1) Minimal diversity of citizenshp among adversaries; (2) at least 25 persons have suffered substantial injury or death in a single accident; and (3) dispersion of events or defendants.

The first requirement is constitutionally required under Article III for Federal court jurisdiction based on citizenship of the parties. The second requirement limits the availability of the jurisdiction to mass torts in which substantial injuries to a significant number of persons are caused in a single accident. The third requirement isolates the circumstances in which geographically scattered litigation can arise, making the jurisdiction necessary.

Section 1367 does not directly address claims in the alternative. For example, in the case of a train accident, passengers may allege that their injuries were caused by the accident, by medical malpractice afterward, or both.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

While it would not be desirable to clog the Federal courts with large numbers of satellite claims, neither would it be desirable to fragment such litigation when plaintiffs otherwise could have used Rule 20 of the Federal Rules of Civil Procedure, [FN4] or a State counterpart, to avoid pursuing such claims separately. While the legislation does not directly address this complex issue, it is not intended to limit the court's development and use of discretionary pendent claim and party jurisdiction to deal with such alternative claims. [FN5]

Subsection (b) of section 1367 contains definitions, for purposes of this section, of minimal diversity, corporate citizenship and residence, injury, and accident.

"Accident": As defined in this section, an "accident" must be sudden in nature, may include natural events culminating in accidents, and must occur in a discrete location. Thus, the bill is intended to apply to those events in which 25 or more persons are killed or injured together in a single, catastrophic accident, such as a hotel fire, a railroad, airplane or bus accident, or a bridge collapse. The reference to natural events is inserted to ensure that an accident such as a bridge collapse qualifies as an accident within the scope of the bill, notwithstanding that the collapse was caused by long-term flooding, foundation shifting or other natural events that precipitate a sudden accident, but arguably are not "sudden" in and of themselves.

Given this definition of accident, the bill does not apply to ordinary product liability actions, including failure to warn actions and design defect cases involving multiple, identically manufactured units, because the injuries in such actions do not usually occur in a large number together in a single accident. Therefore, the term "accident" does not include the act of or a decision relating to designing, manufacturing, labeling, packaging, testing or filing reports with Federal agencies with respect to any product. Of course, defectively manufactured, designed or labeled products may cause an "accident" within the meaning of the bill. For example, a defectively manufactured airplane part may precipitate a crash, or a defectively designed sprinkler system may fail to put out a hotel fire. To that limited extent the bill would reach suits raising product liability issues. The Committee has, however, strived over the past two Congresses to limit the scope of this bill so that it could not be interpreted to apply to ordinary product liability actions, and believes that language of the bill is now sufficiently clear in that regard.

"Injury": The bill defines injury to mean bodily injury, as well as injury to property provided that property injury is accompanied by some bodily injury. Accordingly, at least 25 people must have sustained some bodily injury before the Federal jurisdiction created by this bill would apply. The bill is structured, however, so that as long as at least 25 people have sustained some bodily injury, the jurisdiction created would be available to others who have sustained only property damage in the same accident, as in the case of hotel guests who escape a hotel fire but lose their belongings.

In order to make the new mass tort jurisdiction broadly available, the definition of corporate citizenship, for purposes of section 1367, is drawn from current law.

Subsection (c) of section 1367 furthers the policy of allowing joinder of related matters by permitting someone not a party to the action as originally filed in or removed to Federal court to intervene, whether or not that person could have invoked the new Federal jurisdiction as an original matter. Thus, if a prospective plaintiff with no claim under Federal law was a citizen of the same state as all defendants, such a party could not sue on his or her own in Federal court as an original matter for lack of the constitutionally required minimal diversity; but if others brought a section 1367 suit in or removed it to a Federal court, it would defeat the action-consolidating purposes of the jurisdiction if the outsider could not now join the litigation. For cases within the jurisdiction, this subsection also avoids the requirement of existing law that each plaintiff in most Federal actions to which a jurisdictional amount requirement applies must have a claim for the needed amount in controversy.56 Again, if the action is large enough for the jurisdiction to be invoked under subsection (b), it would defeat the purpose of the jurisdiction if parties with related but smaller claims could not join.

Subsection (d) of section 1367, to facilitate coordination of related actions, requires that any district court in which an action under section 1367 is pending promptly notify the Judicial Panel on Multidistrict Litigation. As the Justice Department's commentary on its 1979 proposal explained:

It is expected that thereafter all cases pending in the district court based upon the jurisdictional grant provided by this section will be consolidated pursuant to the provision of section 1407 of title 28.57

Section 3. Venue

Section 3 of the bill amends section 1391 of title 28 of the United States Code, by adding a new subsection (g),

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

which provides a venue provision for cases brought under section 1367. Venue is authorized in any judicial district where any defendant resides or where a substantial part of the accident occurred. In the words of the 1979 Justice Department commentary:

This provision is similar to, but slightly broader than, the current venue provision for actions not founded on diversity of citizenship in section 1391(b) of title 28, United States Code. They differ mainly in that existing section 1391(b) creates venue where "all defendants" reside, whereas this section creates venue where "any defendant" reside. The broader venue scope that the language "any defendant" provides, along with the nationwide service of process provision (see section [7], infra), will allow potential defendants not living in the state where the action is filed to be brought in at the action's inception, thus avoiding a multiplicity of suits in different states.58

The provision authorizing venue in any district where a "substantial part" of an accident occurred (as opposed to the district where the accident occurred) is intended to address only the unusual circumstance in which an accident covered by the legislation would occur in more than one district, such as a mid-air plane collision that occurs above the border of two states. The language is not intended to expand the meaning of the term "accident."

Section 4. Multidistrict litigation

For cases within the new jurisdiction, section 4 of the bill amends section 1407 of title 28 of the United States Code, to expand present district court authority over transferred actions, which formally covers only pretrial proceedings, to permit joint trial of liability issues. In the words of the 1979 Justice Department explanation:

The existing provision of the multidistrict litigation statute, section 1407 of title 28, United States Code, permits consolidation and transfer of cases pending in different judicial districts in which there are common questions of fact. Transfer is currently authorized for pre-trial proceedings only. This amendment would add a new subsection, (i), to section 1407 *** which would apply only cases transferred involving multi-person injuries. *** Expanding the power of the transferee judge to include conducting a trial on the merits is preferable in several respects to the current requirement of a remand to the transferor court following pre-trial proceedings. First, having presided over complicated and protracted discovery proceedings and pre-trial motions the transferee judge has already attained a degree of expertise in a complex matter that is wasteful to disregard.

Second, experience has shown that many transferee judges currently manage to retain actions for trial by transferring the cases to themselves at the conclusion of pre-trial proceedings through the change of venue provision in section 1404(a) of title 28, United States Code. This provision, however, restricts transfer to a district where the action could originally have been brought. By allowing the transferee judge to retain multiperson injury actions for trial, we merely codify current practice and eliminate the restrictions imposed by the 1404(a) transfer device. [FN9]

For similar reasons, the bill permits joint trial of punitive damage issues. Whereas case-to-case variations in facts relevant to resolving compensatory damage issues will ordinarily be such that there is no net gain to having those issues tried by a single court, that is not the case with punitive damage issues; moreover, by consolidating punitive damage determinations, the risk of inappropriate, multiple punitive damage awards is reduced.

Revised section 1407 calls for remand, however, of damage determinations (other than punitive damages), including the possibility of remand to State courts in which actions were originally filed, unless the Federal court finds that it would serve the convenience of parties and witnesses and the interests of justice to retain the damages phase as well. That section also provides that if the Federal transferee court is sending cases back for damage determinations, a party may appeal the courts' liability determination (and its choice of law determination) before the remand. Once all such appeals have been disposed of (or if no such appeal is taken), the section provides that the liability determination and the choice of law determination shall not be subject to further review (either in remanded or retained proceedings), and the remand shall take effect. In addition, the section bars appellate review of the decision whether or not to remand for the determination of damages.

Nothing in this section is intended to affect the transferee court's ability, at any time, to transfer an action under section 1404(a) or dismiss an action under the doctrine of forum non conveniens.

Section 5. Removal of actions

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Section 5 of the bill redesignates subsection (e) of 28 U.S.C. 1441 as subsection (f), and adds a new subsection (e) to those general removal provisions. New subsection (e) would permit removal both to invoke the proposed jurisdiction (as by a defendant sued on related matters in the courts of two or more States) and to join actions within the jurisdiction pending the Federal court (as by a defendant sued in State court after the filing in Federal court of a section 1367 action). Any defendant meeting the requirements of subsection (e)(1) may effect the removal, whether or not any of the defendants is a citizen of the State in which the action is brought. Thus, the general all-defendants requirement for removal contained in subsection (a) of section 1441, and the instate defendant limitation in subsection (b), would not apply to the removal of such actions.

To avoid making actions unremovable from State court when joinder to a later-filed Federal section 1367 action is sought, subsection (e) authorizes removal before trial within thirty days of a defendant's becoming a party to a section 1367 suit, or at a later time with leave of the district court. [FN10] The additional 30-day period reflects the fact that removal may be impossible for jurisdictional reasons within the normal removal period of section 1446. For example, if the initial suits brought in State court against a defendant all involved nondiverse plaintiffs, it might not be able to remove them until some other plaintiff initiated a section 1367 suit against it in State court. The subsection also allows removal beyond the extended time period with leave of the district court because consolidated adjudication of mass tort cases may further important systemic interests, even if a defendant does not consider it in its self-interest to remove the State actions against it at an early point in the litigation.

The new subsection (e) also establishes a presumption in favor of discretionary remand to State courts, or "reverse removal," for damages determinations after rulings on liability. This provision both respects State adjudication and limits the burden from the new jurisdiction on the Federal judiciary. If the Federal district court is sending cases back for damage determinations, a party may appeal the court's liability determination (and its choice of law determination) before the remand. Once all such appeals have been disposed of (or if no such appeal is taken), the section provides that the liability choice of law determinations shall not be subject to further review (either in remanded or retained proceedings), and the remand shall take effect. In addition, the subsection bars appellate review of the decision whether or not to remand for the determination of damages.

Paragraph (5) of subsection (e) makes clear that an action removed pursuant to that subsection is to be considered a section 1367 suit for such purposes as intervention (section 1367(c)), notification of the multidistrict litigation panel (section 1367(d)), transfer and consolidation (section 1407(i)), removal of related actions in state court (section 1441(e)), choice of law (section 1658), and service of process and subpoenas (sections 1697, 1785).

Nothing in subsection (e) is intended to restrict the district court's ability, at any time, to transfer an action under section 1404(a) or dismiss an action under the doctrine of forum on conveniens.

*Section 6. Choice of law*

Section 6 of the bill adds a new section 1658 of title 28 of the United States Code, to address the problems of choice of law determinations in actions within the proposed jurisdiction. Because the jurisdiction is for multiparty, multiforum actions, the substantive law of several States and even foreign nations will often be potentially applicable to different aspects of the litigation before the Federal court. In general, Federal courts in State law cases are bound by the choice of law rules of the state in which they sit. [FN1] [FN1] That rule, however, is extremely hard to defend for actions such as those within the proposed jurisdiction, in which a Federal court would not be largely acting as a surrogate State court but rather serving a nationwide function that often could not have been served by any State court. When the purpose of the jurisdiction is to use the Federal courts to do what no State court may be able to do, it makes no sense to have a Federal court bound by the conflicts laws of a single State. (The Federal court may, of course, end up following the same conflicts rules or substantive law that would have governed in the courts of the forum State; but it should not invariably be required to do so.)

Section 1658, accordingly, specifically provides that the district court in which the section 1367 action is pending is not bound by the choice of law rules of any State. The section does not dictate any particular rule for choosing the jurisdiction whose substantive law will be applied in a section 1367 action. Rather, it requires in subsection (b) that the responsible district court enter an order designating the jurisdiction whose law would be applied in all section 1367 actions before the court arising from the same incident. This section identifies various factors that may be relevant in such choice of law determinations but does not attempt to legislate a single governing law or methodology, leaving this complex matter to judicial development. The Federal courts' discretion on this point is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

limited to choosing the jurisdiction whose substantive law will apply; the section does not authorize the creation of Federal substative common law for mass torts.

Subsection (c) provides that when cases are consolidated in a transferee court under section 1407, the transferee court's choice of law continues to apply in procedings following remand to other district courts or State courts. Similarly, when a case is removed from State court to Federal court without subsequent transfer, the Federal court's choice of law continues to apply following a remand to State court. This approach facilitates settlement by fixing the applicable substantive law at an early stage in the litigation. It also avoids creating an incentive for litigation concerning remands based on a party's expectations that the court to which the proceedings are to be remanded might apply a more or less favorable body of law.

Section 7. Service of process

Section 7 of the bill contains two provisions that facilitate the jurisdiction's function of providing a consolidated adjudication of liability in mass tort cases involving dispersed parties. It authorizes nationwide service of process and, upon a showing of good cause, nationwide service of subpoenas. It also authorizes international service of process and subpoenas as otherwise permitted by law.

Section 8. Effective date

Section 8 provides that the Act will apply to accidents occurring at least 90 days after the date of enactment.

## IV. OVERSIGHT FINDINGS

Pursuant to House Rule XI 2(l)(3)(A), the Committee makes no specific oversight findings with respect to this legislation. H.R. 3406, however, is a product of the Committee's continuing oversight, through the Subcommittee on Courts, Intellectual Property, and the Administration of Justice, of the efficiency of operations of the Federal court system.

## V. STATEMENT OF THE COMMITTEE ON GOVERNMENT OPERATIONS

Pursuant to clause 2(l)(3)(D) of rule XI of the Rules of the House of Representatives, no oversight findings have been submitted to the Committee by the Committee on Government Operations.

## VI. NEW BUDGET AUTHORITY

Pursuant to clause 2(l)(3)(B) of rule XI of the Rules of the House of Representatives, the bill creates no new budget authority or increased tax expenditures for the Federal Government.

## VII. INFLATIONARY IMPACT STATEMENT

Pursuant to clause 2(l)(4) of rule XI of the House of Representatives, the Committee believes that the bill will not have a foreseeable inflationary impact on prices or costs in the operation of the national economy.

## VIII. FEDERAL ADVISORY COMMITTEE ACT OF 1972

The Committee finds that this legislation does not create any new advisory committee within the meaning of the Federal Advisory Committee Act of 1972, 5 U.S.C. Appendix.

## IX. COST ESTIMATE

Pursuant to clause 7 of rule XIII of the Rules of the House of Representatives, the Committee agrees with the cost estimate submitted by the Congressional Budget Office.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

X. CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

Pursuant to House Rule XI 2(l)(3)(C), the Congressional Budget Office cost estimate follows:

U.S. Congress,

Congressional Budget Office,

Washington, DC, April 4, 1990.

Hon. Jack Brooks,
Chairman, Committee on the Judiciary,
House of Representatives, Washington, DC.

Dear Mr. Chairman: The Congressional Budget Office has reviewed H.R. 3406, the Multiparty, Multiforum Jurisdiction Act of 1990, as ordered reported by the House Committee on the Judiciary, March 28, 1990.

H.R. 3406 would provide a Federal forum facilitating the consolidation of litigation arising out of single accidents in which at least 25 people are killed or injured. Such consolidation of litigation would result in some savings to the Federal Government. While we cannot estimate the amount of such savings, they would be relatively small because there would be few cases affected. No costs to State or local governments would result from enactment of this bill.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is Mitchell Rosenfeld, who can be reached at 226- 2860.

Sincerely,

Robert D. Reischauer,

Director.

XI. COMMITTEE VOTE

On March 28, 1990, a quorum of members being present, the Committee reported the bill favorably by a voice vote, no objections being heard.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

TITLE 28, UNITED STATES CODE

* * * * * * *

PART IV-JURISDICTION AND VENUE

* * * * * * *

CHAPTER 85-DISTRICT COURTS; JURISDICTION

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

* * * * * * *

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

S 1367. Multiparty, multiforum jurisdiction

(a) The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 25 natural persons have either died or incurred injury in the accident at a discrete location and that, in the case of injury, the injury has resulted in damages which exceed $50,000 per person, exclusive of interest and costs, if-

(1) a defendant resides in a State and a substantial part of the accident took place in another State, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;

(2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or

(3) substantial parts of the accident took place in different States.

(b) For purposes of this section-

(1) minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State, a citizen or subject of a foreign state, or a foreign state as defined in section 1603(a) of this title;

(2) a corporation is deemed to be a citizen of any State, and a citizen or subject of any foreign state, in which it is incorporated or has its principal place of business, and is deemed to be a resident of a State in which it is incorporated or licensed to do business or is doing business;

(3) the term "injury" means-

(A) physical harm to a natural person; and

(B) physical damage to or destruction of tangible property, but only if physical harm described in subparagraph (A) exists; and

(4) the term "accident" means a sudden accident, or a natural event culminating in an accident, that results in death or injury incurred at a discrete location by at least 25 natural persons.

(c) In any action in a district court under this section, any person with a claim arising from the accident described in subsection (a) shall be permitted to intervene as a party plaintiff in the action, even if that person could not have brought an action in a district court as an original matter.

(d) A district court in which an action under this section is pending shall promptly notify the judicial panel on multidistrict litigation of the pendency of the action.

CHAPTER 87-DISTRICT COURTS; VENUE

* * * * * * *

S 1391. Venue generally

(a)***

* * * * * * *

(g) A civil action in which jurisdiction of the district court is based upon section 1367 of this title may be brought in any district in which any defendant resides or in which a substantial part of the accident giving rise to the action took place.

* * * * * * *

S 1407. Multidistrict litigation

(a)***

* * * * * * *

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

(i)(1) In actions transferred under this section when jurisdiction is based in whole or in part on section 1367 of this title, the transferee district court may, notwithstanding any other provision of this section, retain actions so transferred for the determination of liability and punitive damages. An action retained for the determination of liability shall be remanded to the district court from which the action was transferred, or to the State court from which the action was removed, for the determination of damages, other than punitive damages, unless the court finds, for the convenience of parties and witnesses and in the interest of justice, that the action should be retained for the determination of damages.

(2) Any remand under paragraph (1) shall not be effective until 60 days after the transferee court has issued an order determining liability and has certified its intention to remand some or all of the transferred actions for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the transferee court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the transferee court. In the event a party files such an appeal, the remand shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

(3) Any decision under this subsection concerning remand for the determination of damages shall not be reviewable by appeal or otherwise.

* * * * * * *

CHAPTER 89-DISTRICT COURTS; REMOVAL OF CASES FROM STATE COURTS

* * * * * * *

S 1441. Actions removable generally

(a) ***

* * * * * * *

(e)(1) Notwithstanding the provisions of subsection (b) of this section, a defendant in a civil action in a State court may remove the action to the district court of the United States for the district and division embracing the place where the action is pending if-

(A) the action could have been brought in a United States district court under section 1367 of this title, or

(B) the defendant is a party to an action under section 1367 in a United States district court arising from the same accident as the action in State court.

The removal of an action under this subsection shall be made in accordance with section 1446 of this title, except that a notice of removal may also be filed before trial of the action in State court within 30 days after the date on which the defendant first becomes a party to an action under section 1367 in a United States district court arising from the same accident, or at a later time with leave of the district court.

(2) Whenever an action is removed under this subsection and the district court to which it was removed has made a liability determination requiring further proceedings as to damages, the district court shall remand the action to the State court from which it had been removed for the determination of damages, unless the court finds that, for the convenience of parties and witnesses and in the interest of justice, the action should be retained for the determination of damages.

(3) Any remand under paragraph (2) shall not be effective until 60 days after the district court has issued an order determining liability and has certified its intention to remand some or all of the removed actions for the determination of damages. An appeal with respect to the liability determination and the choice of law determination of the district court may be taken during that 60-day period to the court of appeals with appellate jurisdiction over the district court. In the event a party files such an appeal, the reman shall not be effective until the appeal has been finally disposed of. Once the remand has become effective, the liability determination and the choice of law determination shall not be subject to further review by appeal or otherwise.

(4) Any decision under this subsection concerning remand for the determination of damages shall not be

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

reviewable by appeal or otherwise.

(5) An action removed under this subsection shall be deemed to be an action under section 1367 and an action in which jurisdiction is based on section 1367 of this title for purposes of this section and sections 1367, 1407, 1658, 1697, and 1785 of this title.

[(e) The court to which such civil action is removed] (f) The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.

* * * * * * *

PART V-PROCEDURE

* * * * * * *

CHAPTER III-GENERAL PROVISIONS

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

S 1658. Choice of law in multiparty, multiforum actions

(a) In an action under section 1367 of this title, the district court in which the action is brought or to which it is removed shall determine the source of the applicable substantive law, except that if an action is transferred to another district court, the transferee court shall determine the source of the applicable substantive law. In making this determination, a district court shall not be bound by the choice of law rules of any State, and the factors that the court may consider in choosing the applicable law include-

(1) the law that might have governed if the jurisdiction created by section 1367 of this title did not exist;

(2) the forums in which the claims were or might have been brought;

(3) the location of the accident on which the action is based and the location of related transactions among the parties;

(4) the place where the parties reside or do business;

(5) the desirability of applying uniform law to some or all aspects of the action;

(6) whether a change in applicable law in connection with removal or transfer of the action would cause unfairness;

(7) the danger of creating unnecessary incentives for forum shopping;

(8) the interest of any jurisdiction in having its law apply;

(9) any reasonable expectation of a party or parties that the law of a particular jurisdiction would apply or would not apply;

(10) any agreement or stipulation of the parties concerning the applicable law; and

(11) whether a change in applicable law in connection with removal or transfer of the action would cause unfairness.

(b) The district court making the determination under subsection (a) shall enter an order designating the single jurisdiction whose substantive law is to be applied in all other actions under section 1367 arising from the same accident as that giving rise to the action in which the determination is made. The substantive law of the designated jurisdiction shall be applied to the parties and claims in all such actions before the court, and to all other elements of each action, except where Federal law applies or the order specifically provides for the application of the law of another jurisdiction with respect to a party, claim, or other element of an action.

(c) In an action remanded to another district court or a State court under section 1407 of 1441(e)(2) of this title, the district court's choice of law under subsection (b) shall continue to apply.

CHAPTER 113-PROCESS

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

S 1697. Service in multiparty, multiforum actions

When the jurisdiction of the district court is based in whole or in part upon section 1367 of this title, process, other than subpoenas, may be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

* * * * * * *

CHAPTER 117-EVIDENCE; DEPOSITIONS

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

S 1785. Subpoenas in multiparty, multiforum actions

When the jurisdiction of the district court is based in whole or in part upon section 1367 of this title, a subpoena for attendance at a hearing or trial may, if authorized by the court upon motion for good cause shown, and upon such terms and conditions as the court may impose, be served at any place within the United States, or anywhere outside the United States if otherwise permitted by law.

* * * * * * *

FN1 Article III of the United States Constitution permits, but does not mandate, Federal court jurisdiction based on "controversies between citizens of different States" and "between a State, or the citizens thereof, and foreign states, citizens or subjects." The legislation establishing diversity jurisdiction has long been construed to require "complete" diversity, meaning that the jurisdiction is available only in suits where no plaintiff and no defendant are citizens of the same State. "Minimal" diversity, in contrast, would make diversity jurisdiction available whenever any defendant and any plaintiff are citizens of different States.

FN2 The Department of Justice's proposal was more fully developed in a 1986 article by Professor Thomas Rowe and Mr. Kenneth Sibley, published in the University of Pennsylvania Law Review. See, Rowe & Sibley, "Beyond Diversity: Federal Multiparty, Multiform Jurisdiction," 135 U. Pa. L. Rev. 7 (1986).

FN3 Such cases commonly turn on conditions that are unique to the injured person, including the injured person's own conduct and life history. Such issues are less frequent in an airplane crash or hotel fire. Given concerns relating to plaintiff-specific issues, as well as the other concerns identified above, products liability and toxic exposure cases are excluded from the scope of the bill.

FN4 Rule 20 of the Federal Rules of Civil Procedure permits parties in civil suits to "join" or bring other persons into the suit, when the party seeking joinder asserts a right to relief against the person to be joined, that is based upon transactions or occurrences that are already at issue in the preexisting suit.

FN5 See UMW v. Gibbs, 383 U.S. 715 (1966); 13B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure S 3567.2, at 145-61 (1984).

FN56See Zahn v. International Paper Co., 414 U.S. 291 (1973).

FN57Hearings on Diversity of Citizenship/Magistrate Reform-1979, before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary, 95th Cong., 1st Sess. 161 (1979).

FN58Id.

FN9 Id.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

FN10 Cf. 28 U.S.C. 1446(c)(1) (generally similar removal procedure for criminal cases).

FN11 Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941); Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3(1975). Challoner, 424 U.S. 3 (1975).

H.R. REP. 101-515, H.R. Rep. No. 515, 101ST Cong., 2ND Sess. 1990, 1990 WL 258819 (Leg.Hist.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*1 CLASS ACTION FAIRNESS ACT OF 2002

HOUSE REPORT NO. 107-370
March 12, 2002

Mr. Sensenbrenner, from the Committee on the Judiciary, submitted the following

REPORT

[To accompany H.R. 2341]

The Committee on the Judiciary, to whom was referred the bill (H.R. 2341) to amend the procedures that apply to consideration of interstate class actions to assure fairer outcomes for class members and defendants, to outlaw certain practices that provide inadequate settlements for class members, to assure that attorneys do not receive a disproportionate amount of settlements at the expense of class members, to provide for clearer and simpler information in class action settlement notices, to assure prompt consideration of interstate class actions, to amend title 28, United States Code, to allow the application of the principles of Federal diversity jurisdiction to interstate class actions, and for other purposes, having considered the same, reports favorably thereon with an amendment and recommends that the bill as amended do pass.

CONTENTS

| | Page |
|---|---|
| The Amendment | 2 |
| Purpose and Summary | 6 |
| Background and Need for the Legislation | 7 |
| Hearings | 22 |
| Committee Consideration | 22 |
| Vote of the Committee | 22 |
| Committee Oversight Findings | 26 |
| Performance Goals and Objectives | 26 |
| New Budget Authority and Tax Expenditures | 26 |
| Congressional Budget Office Cost Estimate | 27 |
| Constitutional Authority Statement | 28 |
| Section-by-Section Analysis and Discussion | 28 |
| Agency Views | 36 |
| Changes in Existing Law Made by the Bill, as Reported | 38 |
| Markup Transcript | 45 |
| Additional Views | 121 |
| Dissenting Views | 123 |

*2 The amendment is as follows:
Strike all after the enacting clause and insert the following:

SECTION 1. SHORT TITLE; REFERENCE; TABLE OF CONTENTS.

(a) Short Title.-This Act may be cited as the "Class Action Fairness Act of 2002".
(b) Reference.-Whenever in this Act reference is made to an amendment to, or repeal of, a section or other provision, the reference shall be considered to be made to a section or other provision of title 28, United States Code.
(c) Table of Contents.-The table of contents for this Act is as follows:
Sec. 1. Short title; reference; table of contents.
Sec. 2. Findings and purposes.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

was approved by Peter H. Fontaine, Deputy Assistant Director for Budget Analysis.

## CONSTITUTIONAL AUTHORITY STATEMENT

Pursuant to clause 3(d)(1) of rule XIII of the Rules of the House of Representatives, the Committee finds the authority for this legislation in article III, section one of the Constitution.

## SECTION-BY-SECTION ANALYSIS AND DISCUSSION

Section 1-Section 1 sets forth the short title of the bill-the "Class Action Fairness Act of 2002"-and specifies that any reference to an amendment or repeal of existing law shall be to a section of title 28, of the United States Code.

Section 2-Section 2 contains the findings of the Congress in support of the bill.

Section 3-Section 3 establishes a "Consumer Class Action Bill of Rights" as part of a new chapter 114 in title 28 of the United States Code. These provisions are as follows:

S 1711. Judicial scrutiny of coupon and other noncash settlements-requires the court to conduct a hearing to determine whether a coupon or noncash settlement is fair, reasonable, and adequate for class members.

S 1712. Protection against loss by class members-requires the court to make a written finding that non-monetary benefits to class members outweigh the monetary loss in any proposed settlement where a class member is obligated to pay sums to class counsel that would result in a net loss to the class member.

S 1713. Protection against discrimination based on geographic location-prohibits settlements providing greater awards to class *29 members on the basis that they are in closer geographic proximity to the court.

S 1714. Prohibition on the payment of bounties-prohibits settlements providing additional awards to certain class representatives other than awards approved by the court for reasonable time or costs associated with the class member's obligation as a class representative.

S 1715. Clearer and simpler settlement information-establishes a new "Plain English" requirement for any written and broadcast notices concerning a proposed class action settlement. The new sections of 28 U.S.C. S 1713(c)(A)- (D) mandates that each notice to the class explain in "plain, easily understood language," the subject matter of the class action and the legal consequences of being ia member of the class. If the notice concerns a proposed settlement, according to new 28 U.S.C. S 1713(c)(1)(C), then the notice must also explain in "plain easily understood language," the benefits of settlement to the class, the rights that class members will lose through the settlement, the obligations of defendants under the proposed settlement, the dollar amount class counsel are seeking in attorneys' fees (or, if not possible, a good-faith estimate of the fees that the class counsel will request), and an explanation of how attorneys' fees will be calculated. The notice must also include any other material information regarding the class action. Such "material mater" would include any other information a reasonable person would want to know before deciding whether the participate in a class action or proposed settlement.

The proper test for determining if class notice is written in "plain, easily understood language" is reasonableness-i.e., whether a reasonable person would find the language in the notice to be "plain, easily understood language." The Committee intends that class counsel bears the burden of proving that a reasonable person would find that the notice includes all of the requirements listed in this section in "plain, easily understood language."

S 1716. Definitions-establishes definitions for class action, class counsel, class members, plaintiff class action, proposed settlement, and contains a technical and conforming amendment.

Section 4-Section 4 amends 28 U.S.C. S 1332 to re-designate section 1332(d) as section 1332(e). The bill creates a new subsection (d) which gives the Federal courts original jurisdiction over class action lawsuits in which the matter in controversy exceeds the sum or value of $2 million, exclusive of interest and costs, and either (a) any member of the plaintiff class is a citizen of a State different than any defendant; (b) any member of the plaintiff class is a foreign state and any defendant is a citizen of a State; or (c) any member of the plaintiff class is a citizen of a State and any defendant is a citizen or subject of a foreign state. For purposes of this new section, the term "foreign state" is defined as in 28 U.S.C. S 1603(a).

Pursuant to section 1332(d)(3), the Federal district courts are directed not to exercise diversity jurisdiction over class actions where (A) the substantial majority of the members of the proposed plaintiff class and the primary

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

defendants are citizens of the State in which the action was originally filed and the claims asserted will be governed primarily by the law of that same State ("intrastate" case); (B) the primary defendants are States, State officials, or *30 other governmental entities against whom the district court may be foreclosed from ordering relief ("state action" case); or (C) the number of members of all proposed plaintiff classes in the aggregate is fewer than 100 ("limited scope" case).

Pursuant to new section 1332(d)(4), the claims of the individual class members in any class action shall be aggregated to determine whether the amount in controversy exceeds the sum of value of $2 million (exclusive of interest and costs). The Committee intends this section to be interpreted expansively. If a purported class action is removed, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). If a Federal court is uncertain as to whether the matter in controversy in a purported class action exceed the sum or value of $2 million, the court should err in favor of exercising jurisdiction over the case.

Overall, the new section 1332(d) is intended to expand substantially Federal court jurisdiction over class actions. For that reason, its provisions should be read expansively; they should be read as stating a strong preference that interstate class actions be heard in a Federal court if so desired by any purported class member or any defendant.

Consistent with this overriding intent, the provisions of the new section 1332(d)(3)(A) should be read narrowly. A purported class action should be deemed a case that falls outside Federal jurisdiction only if virtually all members of all proposed classes are residents of a single State of which all "primary defendants" are also citizens. For example, a case in which a proposed class of 1000 persons sues a North Carolina citizen corporation presumably would fit this exception if 997 of those persons were North Carolina citizens.

For the purposes of the section 1132(d)(3)(A) carve out, the only parties that should be considered "primary defendants" are those who are the real "targets" of the suit; that is, the parties that would be expected to incur most of the loss if liability is found. For example, an executive of a corporate defendant who, in the interest of completeness, is named as a co- defendant in a class action against his employer normally should not be deemed a "primary defendant." In most instances, the executive would not be the real "target" of the purported class action; his employer company would be. Moreover, no defendant should be considered a "primary defendant" for purposes of this analysis unless it is the subject of legitimate claims by all class members. To illustrate, if named as a defendant, a dealer, agent, or sales representative of a corporate defendant should not be deemed a "primary defendant" unless that dealer, agent, or sales representative is alleged to have actually participated in the purported wrongdoing with respect to all class members (e.g., the defendant is alleged to have sold a purportedly defective product to all class members). Merely alleging that a defendant conspired with other class members to commit wrongdoing will not be sufficient to cause a person to be a "primary defendant."

Similarly, the language in section 1332(d)(2) should also be interpreted narrowly. For example, if a court is uncertain as to whether "all matters in controversy" in a purported class action do not in the aggregate exceed the sum or value of $2 million, the court should err in favor of exercising jurisdiction over the matter. Pursuant *31 to section 1332(d)(3) (C), the same is true in cases in which it is unclear whether the number of a proposed plaintiff class members is less than 100. Further, Federal courts should be cautious to decline Federal jurisdiction under section 1332(d)(3)(B) only where it is relatively clear that States, State officials, or other governmental entities are primary defendants against whom the court may be foreclosed from ordering relief. In assessing that issue, courts should apply the same guidance regarding the term "primary defendants" discussed above with regard to intrastate actions.

It is the Committee's intention with regard to each of these exceptions that the party opposing Federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. For example, if a plaintiff seeks to have a purported class action remanded for lack of Federal diversity jurisdiction under section 1332(d)(3)(C), that plaintiff should have the burden of demonstrating that "the number of proposed class members is less than 100."

New section 1332(d)(5) clarifies that the diversity jurisdiction provisions of this section shall apply to any class action before or after the entry of a class certification order by the court. This allows Federal jurisdiction to apply when changes are made to the pleading which bring the case within Federal court jurisdiction.

New section 1332(d)(6) details the procedures governing cases removed to Federal court on the sole basis of new section 1332(d) jurisdiction. Pursuant to new section 1332(d)(6)(A), the district courts are directed to dismiss any civil action subject to Federal jurisdiction if it is determined that the civil action may not proceed as a class action

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works