IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RONALD KINGSLEY, Plaintiff, | ) | |
| V. | ) | C.A: CV 03-208-L |
| JEFFREY DERDERIAN, et al., Defendants | ) | |

**ANHEUSER-BUSCH, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF REMOVAL AND IN OPPOSITION TO MOTIONS TO REMAND OF AMERICAN FOAM CORPORATION AND DERDERIAN DEFENDANTS**

On August 14, 2003, Anheuser-Busch, Inc. ("Anheuser-Busch") filed its Memorandum of Law in Support of Removal and in Opposition to Motions to Remand of American Foam Corporation and Derderian Defendants. Since that filing, and pursuant to this Court's August 15, 2003 scheduling order, there have been additional filings relating to the issue of this Court's jurisdiction over the pending actions arising out of The Station fire under the Multiparty, Multiforum Trial Jurisdiction Act of 2002 ("MMTJA"). Accordingly, Anheuser-Busch hereby submits this brief supplemental memorandum in further support of this Court's jurisdiction under the MMTJA.[1]

---

1 In addition, Anheuser-Busch adopts by reference the arguments related to the
(continued...)

BLISH & CAVANAGH
COUNSELLORS AT LAW
COMMERCE CENTER
30 EXCHANGE TERRACE
PROVIDENCE, RI 02903-1765
(401) 831-8900
FAX (401) 751-7542

37

## I. Section 1369(b) Provides the Exclusive Basis for Abstention

Any contention that this Court can consider abstention on grounds other than § 1369(b), such as general principles of comity and federalism, is without merit and contrary to the plain language of § 1369(b) and Congressional intent. In enacting the MMTJA, Congress specifically set forth the circumstances under which a court should abstain from exercising its § 1369(a) jurisdiction. Those circumstances – as set forth in § 1369(b) – are the only circumstances under which the Court should abstain. Given the MMTJA's express abstention provision, common law principles of comity and federalism have already been accounted for in § 1369(b) and they do not provide a second bite at the abstention apple. Moreover, the possibility that appellate review may result in the delay of the litigation at the trial court

---

[1] (...continued)
Court's jurisdiction under the MMTJA contained in the following documents filed on September 22, 2003: (a) Anheuser-Busch, Inc.'s Memorandum of Law In Support of Removal and in Opposition to Jeffrey Derderian, Michael Derderian and DERCO d/b/a the Station's Motion to Remand filed in *Alves, et al. v. McLaughlin & Moran, et al.*, M.C. 03-70-L and *O'Brien, et al. v. McLaughlin & Moran, et al.*, M.C. 03-71-L (captioned in this Court as *In Re: The Station Fire in West Warwick, Rhode Island, on February 20, 2003*); (b) Defendant Anheuser-Busch, Inc.'s Memorandum of Law in Opposition to Derderian Defendants' Motion to Dismiss filed in *Guindon, et al. v. American Foam Corporation, et al.*, C.A. No. 03-335-L; and (c) Anheuser-Busch, Inc.'s Objection to *Amicus Curiae* Plaintiffs' Steering Committee's (1) Notice of Objection to Removal of State Court Miscellaneous Petitions and Request to Remand and (2) Memorandum of Law in Opposition to the Jurisdiction of the Court filed in *Alves, et al. v. McLaughlin & Moran, et al.*, M.C. 03-70-L and *O'Brien, et al. v. McLaughlin & Moran, et al.*, M.C. 03-71-L (captioned in this Court as *In Re: The Station Fire in West Warwick, Rhode Island, on February 20, 2003*).

level, as argued by Plaintiffs' Steering Committee, provides no basis for abstention here, in light of § 1369(b)'s explicit and exclusive criteria.[2]

## II. Comments By Plaintiffs' Steering Committee Support Anheuser-Busch's Contention that Primary Defendants Must Include Those Defendants Likely to Be Pursued as Primary Sources of Recovery

In its August 14, 2003 filing, Anheuser-Busch contended that because the most culpable defendants - which at a minimum include the Great White Defendants and the Derderian Defendants - were unlikely to have resources necessary to satisfy judgments likely to be entered against them in fire-related litigation, the phrase "primary defendants" must also include those defendants likely to be pursued as primary sources of recovery. This lack of available resources from the most culpable defendants has also been raised in the state court proceedings by Interim Lead Counsel Max Wistow as a justification for pre-suit discovery to identify additional defendants.

On May 1, 2003, Mr. Wistow advised Judge Gibney that it was "perfectly obvious, perfectly obvious that there is inadequate funds available from the obvious defendants." *See In re: The Station Fire in West Warwick, Rhode Island*

---

2 In the event the Court determines that any of the common law abstention doctrines are applicable to an action under § 1369, Anheuser-Busch contends that (1) the burden falls on the party seeking to invoke such doctrine; and (2) the Derderian Defendants have failed to meet their burden of establishing that any such doctrine applies, especially in the absence of "a similar action pending in a state court in which the controversy between the parties could be resolved." *Cioffi v. Federal Deposit Insurance Corp.*, 861 F. Supp. 2, 6 (D.R.I. 1994).

on *February 20, 2003* transcript of May 1, 2003 hearing before Judge Alice B. Gibney at p. 38 ("May 1, 2003 Transcript") (pertinent portions of said transcript are attached hereto as Exhibit A). Those "obvious" defendants, according to Mr. Wistow, include the Great White Defendants, the Derderians, American Foam Corp., Triton Real Estate and the Town of West Warwick. *See id.* at p. 37; *see also In re: The Station Fire in West Warwick, Rhode Island on February 20, 2003* transcript of March 28, 2003 hearing before Judge Alice B. Gibney at pp. 1-2 ("March 28, 2003 Transcript") (pertinent portions of said transcript are attached hereto as Exhibit B) (noting that the obvious defendants were "really are not going to be able to respond in a practical way to the tremendous, tremendous damages that are going to be available in a civil case").

While Anheuser-Busch is unaware of the amount of available funds from these defendants, Mr. Wistow has clearly concluded that whatever the amount, it will be inadequate to compensate those who have claims arising from the fire. According to Mr. Wistow, he expects that the so-called "obvious defendants" have, between them, a "grand total" of ten million dollars of insurance available for the several hundred lawsuits he anticipates will be filed. *See* Ex. A, at p. 38. Accordingly, it is apparent that "Plaintiffs' Steering Committee" has determined that it must look elsewhere for sources of recovery and will likely look to the non-Rhode Island corporations named as defendants herein as primary sources of recovery. Therefore,

those non-Rhode Island corporate defendants should be considered primary defendants for purposes of this Court's abstention analysis under 28 U.S.C. § 1369(b).

**CONCLUSION**

For the reasons set forth in this supplemental filing and in Anheuser-Busch's initial filing on August 14, 2003, in support of removal and in opposition to the motions to remand, this Court should deny the motions to remand, exercise its jurisdiction, and adjudicate this case.

Respectfully submitted,

Joseph V. Cavanagh, Jr. (ker)
Kristin E. Rodgers

Joseph V. Cavanagh, Jr. #1139
Kristin E. Rodgers #4842
BLISH & CAVANAGH LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Telecopier: (401) 751-7542

Counsel for Defendants
Anheuser-Busch, Inc.

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM (Illinois)
333 West Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Telecopier: (312) 407-0411

Pro Hac Vice on behalf of
Defendants Anheuser-Busch, Inc.

Dated: September 22, 2003

## CERTIFICATION

I hereby certify that on the 22nd day of September, 2003, I served a true copy of the within Supplemental Memorandum, via first class mail, postage prepaid to the following counsel of record:

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Anthony F. DeMarco, Esq.
REYNOLDS DEMARCO & BOLAND
170 Westminster Street, Suite 200
Providence, RI 02903

Marc DeSisto, Esq.
DESISTO LAW OFFICES
211 Angell Street
P.O. Box 2563
Providence, RI 02903-2563

Howard A. Merten, Esq.
Eric M. Sommers, Esq.
VETTER & WHITE
20 Washington Place
Providence, RI 02903

Thomas C. Angelone, Esq.
HODOSH SPINELLA & ANGELONE
One Turks Head Place
Providence, RI 02903

Fred A. Kelly, Jr., Esq.
Randall L. Souza, Esq.
NIXON PEABODY, LLP
One Citizens Plaza
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103-3508

Max Wistow, Esq.
WISTOW & BARYLICK, INC.
61 Weybosset Street
Providence, RI 02903

Mark T. Nugent, Esq.
MORRISON MAHONEY & MILLER, LLP
One Providence Washington Plaza
6th Floor
Providence, RI 02903

J. Renn Olenn, Esq.
OLENN & PENZA
530 Greenwich Avenue
Warwick, RI 02886

Stephen E. Breggia, Esq.
BREGGIA BOWEN & GRANDE
395 Smith Street
Providence, RI 02908

Brian R. Cunha, Esq.
904 Broadway
East Providence, RI 02914

James T. Murphy, Esq.
Thomas R. Bender, Esq.
HANSON CURRAN, LLP
146 Westminster Street
Providence, RI 02903

Mark S. Mandell, Esq.
MANDELL SCHWARTZ & BOISCLAIR
One Park Row
Providence, RI 02903

Charles N. Redihan, Jr., Esq.
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903

James Ruggieri, Esq.
HIGGINS, CAVANAGH, & COONEY, LLP
123 Dyer Street
Providence, RI 02903

Curtis R. Diedrick, Esq.
Edward T. Hinchey, Esq.
SLOANE & WALSH
Three Center Plaza
Boston, MA 02108

Joyce A. Faraone, Esq.
400 Reservoir Avenue
Suite 3G
Providence, RI 02907

James Howe, Esq.
215 Broadway
Providence, RI 02903

Patrick T. Jones, Esq.
Cooley Manion Jones, LLP
21 Custom House Street
Boston, MA 02110

Steven A. Minicucci, Esq.
JOHN N. CALVINO LAW ASSOCIATES
373 Elmwood Avenue
Providence, RI 02907-1688

Oleg Nikolyszyn, Esq.
155 South Main Street, Suite 303
Providence, RI 02903

Michael A. St. Pierre, Esq.
REVENS REVENS & ST. PIERRE, P.C.
946 Centerville Road
Warwick, RI 02886

Mark D. Tourgee, Esq.
Timothy Williamson, Esq.
INMAN & TOURGEE
1193 Tiogue Avenue
Coventry, RI 02816

James Reilly, Esq.
KELLY KELLEHER REILLY & SIMPSON
146 Westminster Street
Suite 500
Providence, RI 02903

William A. Filippo, Esq.
373 Elmwood Avenue
Providence, RI 02907

Scott Hubbell, Esq.
SUMMERS LAW OFFICE
P.O. Box 306
Franklin, MA 02038-0306

James Lee, Esq.
DEPARTMENT OF ATTORNEY GENERAL
150 South Main Street
Providence, RI 02903

Ralph J. Monaco, Esq.
CONWAY & LONDREGAN
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Christopher L. Russo, Esq.
888 Reservoir Avenue
Cranston, RI 02910

Eva-Marie Mancuso, Esq.
HAMEL, WAXLER ALLEN &
COLLINS
387 Atwells Avenue
Providence, RI 02909

Faith LaSalle, Esq.
Zizik, LaSalle & Powers, P.C.
40 Westminster Street
Suite 201
Providence, RI 02903

W. Thomas McGough, Jr., Esq.
James J. Restivo, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Donald A. Migliori, Esq.
Ness, Motley, Loadholt, Richardson &
Poole
321 South Main Street, Suite 402
Providence, RI 02903

Ronald J. Resmini, Esq.
155 South Main Street
Providence, RI 02903

William P. Robinson, III, Esq.
Edwards & Angell LLP
2800 Financial Plaza
Providence, RI 02903

Stephen Born, Esq.
Law Office of Donald E. Green
2235 Washington Street
Roxbury, MA 02119

Andrew Trevelis, Esq.
Reed Smith, LLP
259 Liberty Place
Philadelphia, MA 19103-7301

Scott J. Tucker, Esq.
Tucker Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc. SUPERIOR COURT

IN RE: THE STATION FIRE IN WEST WARWICK, RHODE ISLAND ON FEBRUARY 20, 2003

M.P. NO. 03-1326
M.P. NO. 03-1346
M.P. NO. 03-1171
M.P. NO. 03-1084

**HEARD BEFORE THE HONORABLE ALICE BRIDGET GIBNEY ON**

**THURSDAY, MAY 1, 2003**

03-241

**APPEARANCES:**

MARK B. DECOF, ESQUIRE
MARK S. MANDELL, ESQUIRE
MAX WISTOW, ESQUIRE
PATRICK JONES, ESQUIRE
DONALD A. MIGLIORI, ESQUIRE
CHARLES N. REDIHAN, JR., ESQUIRE
STEVEN A. MINICUCCI, ESQUIRE
BRIAN R. CUNHA, ESQUIRE..................FOR PLAINTIFFS

MARC DESISTO, ESQUIRE
ANTHONY F. DEMARCO, ESQUIRE
MARK D. TOURGEE, ESQUIRE
DANIEL P. MCKIERNAN, ESQUIRE.............FOR DEFENDANTS

**ORIGINAL**

MARY M. GUGLIETTI, RPR
CERTIFIED COURT REPORTER

CERTIFICATION

I, Mary M. Guglietti, hereby certify that the succeeding pages, 1 through 64, inclusive, are a true and accurate transcript of my stenographic notes.

MARY M. GUGLIETTI, RPR
Certified Court Reporter

And the entire thrust of what Messrs. Decof, Mandell and I were trying to do in our exercise was to isolate and determine which manufacturers should be sued because we believe, and I think with good reason, that the manufacturers will be the key to this case. And let me explain why that is, Your Honor.

There are certain defendants who just jump out at one, I mean, it's -- the Derderians are so obvious that they needn't be mentioned. The Derderians have one million dollars worth of insurance.

The distributor of the foam, not the manufacturer, the distributor of the foam, American Foam, has five million dollars of insurance.

The band, to the best of our knowledge, at this point is substantially judgment-proof.

Triton Real Estate, the owner of the premises, has no insurance and, in fact, has recently instituted lawsuits against insurance companies claiming that it has insurance and alleging that the insurance companies have said there is no insurance.

The town, West Warwick, has four million dollars worth of insurance. And, indeed, even to get to that four million dollars worth of insurance, if the Public Duty Doctrine is -- I shouldn't say if it's invoked, it will be invoked -- if it's upheld to apply, then the

plaintiffs will have to prove egregious fault on the town.

Assuming it does that, we have a grand total from those defendants of ten million dollars. It's perfectly clear that there's going to be something like 300 lawsuits. That means an average of $33,000 per lawsuit. If you add to that the State of Rhode Island as a defendant with its hundred-thousand-dollar cap, you end up with about $133,000 per lawsuit.

There were 99 deaths. Under Rhode Island law we have a statutory minimum. It is impossible, impossible, if there is negligence found on someone's part, for a recovery to be less than $250,000. And, indeed, that number, 250, will be woefully inadequate in most of the death cases.

On top of that are the horrendous burn cases, any one of which in the extreme are worth many millions of dollars themselves.

So it's perfectly obvious, perfectly obvious that there is inadequate funds available from the obvious defendants.

The promoters, so-called, Clear Channel, Anheuser-Busch, that have been sued in this case, no thorough investigation has taken place at this point. I've seen the complaint in Federal Court. It basically

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc. SUPERIOR COURT

IN RE: THE STATION FIRE IN
WEST WARWICK, RHODE ISLAND
ON FEBRUARY 20, 2003

M.P. NO. 03-1326
M.P. NO. 03-1346
M.P. NO. 03-1431

**HEARD BEFORE THE HONORABLE ALICE BRIDGET GIBNEY ON**

**FRIDAY, MARCH 28, 2003**

**APPEARANCES:**

MAX WISTOW, ESQUIRE
MARK B. DECOF, ESQUIRE
MARK S. MANDELL, ESQUIRE
STEFANIE DIMAIO-LARIVEE, ESQUIRE
JAMES P. HOWE, ESQUIRE
RONALD J. RESMINI, ESQUIRE
STEVEN A. MINICUCCI, ESQUIRE..............FOR PLAINTIFFS

JAMES A. RUGGIERI, ESQUIRE
MARC DESISTO, ESQUIRE
DANIEL P. MCKIERNAN, ESQUIRE..............FOR DEFENDANTS

COPY

MARY M. GUGLIETTI, RPR
CERTIFIED COURT REPORTER

# CERTIFICATION

I, Mary M. Guglietti, hereby certify that the succeeding pages, 1 through 42, inclusive, are a true and accurate transcript of my stenographic notes.

Mary M. Guglietti

MARY M. GUGLIETTI, RPR
Certified Court Reporter

**FRIDAY, MARCH 28, 2003**

**MORNING SESSION**

THE COURT: Good morning.

AUDIENCE: Good morning, Your Honor.

THE COURT: Mr. Decof. Mr. Wistow.

MR. WISTOW: Good morning.

THE COURT: Good morning.

MR. WISTOW: I'd like to report to you what progress we've achieved so far.

As Your Honor knows, having been there this past Wednesday, the day before yesterday, many of the plaintiffs' lawyers, defense lawyers and experts were at the site.

And I can tell you that as a result of the review with our experts of what's there, we're frankly surprised at the wealth of material that remains at the site that needs to be preserved and explored further.

I should say, Your Honor, that no inference should be drawn that the Attorney General hasn't taken everything from the site that he may need for his criminal purposes.

Our purposes are different because in this case the obvious defendants, the ones that we think probably will be the subject of criminal, possible criminal prosecution, really are not going to be able to respond

in a practical way to the tremendous, tremendous damages that are going to be available in a civil case.

So the plaintiffs' lawyers' principal responsibility is to try to see that their clients can be made whole as best that can be in this tragic situation. It's our obligation to explore possible defendants who the AG would not have within his sights for possible criminal prosecution.

The experts that we've been with on the site have encouraged us to believe that there is real reason to spend a great deal of time, effort and money in exploring further the potential liability of the many people that have not yet been named as defendants in any of the two cases that are pending.

We're particularly interested in removing and storing parts of the building, including parts of the structure. We're interested in wall coverings, insulation, parts of the floor, adhesives. And I don't mean to give an inclusive list, but that's the kind of thing that we're looking at.

All we're talking about today, Your Honor, is setting up a system that will preserve and shelter the material. We're not going to propose any kind of testing whatever this morning, destructive or otherwise. All we're talking about is getting the materials off of